UNITED STATES DISTRICT COURT
FOR THE DISTRICT COLUMBIA

HALLINE OVERBY and PAULETTE M. )
OVERBY, 3705 S. George Mason Drive, )
Apt 805 S, Falls Church, VA 22041 )
                                   )
            Plaintiffs,            )
                                   )
    vs.                            )
                                   )
NATIONAL ASSOCIATION OF LETTER     )   Case No. 06 CV-____ (____)
CARRIERS, 100 Indiana Ave., NW,    )
Washington, D.C. 20001, NATIONAL   )
ASSOCIATION OF LETTER CARRIERS     )
ANNUITY TRUST FUND, 100 Indiana Ave., )
NW, Washington, D.C. 20001, WILLIAM H. )
YOUNG, 100 Indiana Ave., NW, Washington, )
D.C. 20001, BOARD OF TRUSTEES of the )
NATIONAL ASSOCIATION OF LETTER     )
CARRIERS ANNUITY TRUST FUND,       )
20547 Waverly Ct., Ashburn, VA 20149, )
                                   )
            Defendants.            )
_____ )

## COMPLAINT

This Complaint concerns a valuable surviving spouse's annuity that was eliminated in violation of ERISA's "anti-cutback" rule. The elimination of the survivor's annuity was also not properly adopted by the Board of Trustees of the Pension Plan or the Executive Council of the NALC and was not disclosed to participants and their spouses as ERISA requires. As a result, unless relief is obtained through this lawsuit, the wife of Plaintiff Halline Overby (who is currently age 86) will not receive any survivor's benefits if he dies.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

2. Venue is proper in this Court under 29 U.S.C. § 1132(e) in that the NALC Annuity Trust Fund may be found in the District of Columbia and because Plaintiff Halline Overby worked and earned pension benefits in this District.

## THE PARTIES

3. Plaintiff Halline Overby resides in Falls Church, Virginia. He was born in 1920 and was first employed as a letter carrier on June 15, 1956. He became President of Local 24 of the National Association of Letter Carriers ("NALC") in Los Angeles in 1969. Mr. Overby was a member of the NALC Board of Trustees and a trustee of the NALC Annuity Trust Fund from 1978 to 1981 and served as the Chairman of the Board of Trustees of the Annuity Trust Fund during his final year. In 1981, he became Assistant-Secretary Treasurer of the NALC and continued in that capacity until 1990. He was a member of the NALC Executive Council from 1978 to 1990. Mr. Overby worked in the District of Columbia for the NALC from January 22, 1979 to October 22, 1990. He is now a retired participant under the NALC Annuity Trust Fund and is currently receiving monthly benefits. Mr. Overby is a "participant" in the NALC Annuity Trust Fund under ERISA Section 3(7), 29 U.S.C. §1002(7).

4.	Plaintiff Paulette Overby married Mr. Overby on May 30, 1991. They have been married for 15 years. Mrs. Overby is a "beneficiary" under the NALC Annuity Trust Fund under ERISA Section 3(8), 29 U.S.C. §1002(8).

5.	Defendant National Association for Letter Carriers ("NALC") is a union of city delivery letter carriers employed by the United States Postal Service. The NALC operates from a national headquarters in the District of Columbia and has over 2,500 branches in the United States. The NALC has approximately 300,000 active and retired members. Defendant NALC is the "plan sponsor" for the NALC Annuity Trust Fund within the meaning of ERISA Section 3(16)(B), 29 U.S.C. §1002(16)(B).

6.	Defendant NALC Annuity Trust Fund (hereafter the "Annuity Trust Fund" or the "Plan") is a retirement plan for the officers and employees of the NALC. The NALC Annuity Trust Fund is an employee benefit plan as defined in ERISA Section 3(3), 29 U.S.C. §1002(3), and an "employee pension benefit plan" as defined in Section 3(2)(A), 29 U.S.C. §1002(2)(A). The NALC Annuity Trust Fund can be found in the District of Columbia because it is administered from the District of Columbia and because NALC members earn and receive benefits in the District of Columbia.

7.	Defendant William H. Young is the current President of the NALC. He also serves as the "Plan administrator" for the NALC Annuity Trust Fund within the meaning of ERISA Section 3(16)(A), 29 U.S.C. §1002(16)(A). As the Plan administrator, Mr. Young is a "fiduciary" within the meaning of ERISA Section 3(21)(A), 29 U.S.C.

§1002(21)(A).

8. The Board of Trustees of the NALC Annuity Trust Fund, and the members thereof, are also "fiduciaries" for the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. §1002(21)(A).

## FACTUAL ALLEGATIONS

9. After 34 years of combined service as a letter carrier and union officer, Plaintiff Halline Overby retired from the NALC on October 22, 1990 and commenced retirement benefits on February 1, 1991.

10. Mr. Overby married Plaintiff Paulette Overby on May 30, 1991.

11. Until at least May 1985, it is undisputed that the NALC Annuity Trust Fund provided that survivor's benefits shall be paid to a spouse who is married to the participant for at least one year prior to death. Article V, Section 1 of the NALC Annuity Trust Fund's Summary Plan Description ("SPD"), as amended through December 16, 1981, provided that a surviving spouse shall receive a survivor annuity if:

> "the spouse is one to whom the Annuitant was married for at least one year immediately preceding the Annuitant's death."

The Plan did not require that the participant be married at the date when retirement benefits commenced so long as the participant and spouse were married for one year prior to death.

12. In 1999, the Plan accepted a form from Mr. Overby designating Mrs. Overby as his beneficiary.

4

13. On or about February 2003, Mr. Overby made an inquiry to confirm Mrs. Overby's eligibility for survivor's benefits. In a letter dated February 7, 2003, William Young, President of the NALC and Plan administrator of the NALC Annuity Trust Fund, told Mr. Overby that Mrs. Overby was not eligible for a survivor annuity.

14. On March 29, 2003, Mr. Overby wrote a letter to Mr. Young requesting review of his denial of survivor's coverage.  Mr. Overby stated that his understanding, and the understanding of other participants of the survivor's annuity rules, was that the participant must be married for at least one year before his death for a surviving spouse to receive benefits and that the marriage did not have to occur before the commencement of retirement benefits.

15. In a letter dated May 7, 2003, Mr. Young again stated that Mrs. Overby was not entitled to a survivor annuity under Article V, Section 1 of the NALC Annuity Trust Fund Retirement Plan Rules and Regulations.

16. Article V, Section 1 of the NALC Annuity Trust Fund Retirement Plan Rules and Regulations, as amended through December 31, 1999, states that a surviving spouse is eligible for a survivor annuity if the spouse and participant are "married for at least the year immediately preceding and ending on the Annuitant's annuity commencement date," or "if the Annuitant and the spouse were married within the year before the annuity commencement date and were married for at least one year ending on or before the Annuitant's death, that spouse shall be paid the Survivor Annuity as if the

5

spouse and the Annuitant had been married for the year ending on the annuity commencement date."

17. Richard LaFollette, the assistant Plan administrator, informed Mr. Overby that the survivor annuity rule in Article V, Section 1, of the Plan document had been amended in 1989 and that new clauses were inserted requiring that the marriage precede the commencement of retirement benefits.

18. Vincent Sombrotto, the former President of the NALC and former Plan administrator of the NALC Trust Fund, told Plaintiff Halline Overby that he (Mr. Sombrotto) adopted the amendment in his capacity as Plan administrator.

19. In a April 26, 2004 response to a request from Plaintiffs' counsel for reconsideration of the Plan administrator's denial of Mrs. Overby's survivor's coverage, counsel for the Defendant Board of Trustees stated that the amendment implementing the current annuity survivor rule was not actually adopted in 1989 or by Mr. Sombrotto, but was instead adopted at an Annuity Trust Fund meeting on April 19, 1985 in Nashville, Tennessee and later approved at an NALC Executive Council meeting on May 14-16, 1985.

20. The minutes from the May 14-16, 1985 meeting state that "The Council unanimously approved a set of amendments to the NALC Annuity Trust Fund."

21. Mr. Overby, who was a member of the Executive Council of the NALC from 1981 to 1990, was present at the NALC Executive Council's May 14-16, 1985

meeting and does not recall voting to approve a change the Annuity Fund's survivor rules.

22. Since the denial of his initial claim in May 2003, Mr. Overby has collected a number of letters from other members of the Executive Council and from the trustees of the NALC Annuity Trust Fund, including all three of the Annuity Trust Fund trustees at that time, George Davis, James Souza and James Worsham, and Robert Buntz, Paul C. Davis, John J. Marco, Eugene McNulty, and Lawrence Hutchins, who were all members of the Executive Council at that time along with Mr. Overby.

23. The letters show that an amendment to the surviving spouse rule was not presented for a vote by the trustees during the Annuity Trust Fund meeting on April 19, 1985, or by the members of the Executive Council in the meeting on May 15-16, 1985.

24. The minutes of the April 19, 1985 meeting in Nashville indicate that to the extent any amendment was presented to the trustees at that meeting, it was presented as a change required by the Retirement Equity Act of 1984 to maintain the Plan's qualified status, and not as an elective reduction in the Plan's survivor's benefits.

25. According to the April 19, 1985 meeting minutes, Ms. Milton, an actuary with the Wyatt Company, and Jani Rachelson, a lawyer with the firm of Cohen, Weiss, and Simon, "discussed the impact on the Plan of the Retirement Equity Act ("REA") and the following changes that would be required." The minutes then state that "under REA the annuity must be payable to the spouse who was married to the Annuitant for the year prior to the annuity starting date" and further state that the plan was amended "to delete

7

the current one year before death rule and to replace it with the REA one year before annuity commencement rule."

26.    Consistent with the statement in the minutes that REA "required" this change, a March 23, 1990 letter attached to the NALC Annuity Trust Fund's Summary Plan Description, as amended through December 31, 1989, represents that "Certain other minor changes have also been made, primarily to enable the plan to remain approved by the Internal Revenue Service." Neither the letter nor the SPD describe any change by the Board or the Executive Council to the Plan's survivor's benefit rules.

27.    If the Plan administrator had disclosed the amendment to the survivor's benefit rule as ERISA requires, Mr. Overby could have (a) married Mrs. Overby before his February 1991 retirement, or (b) delayed his retirement until after their marriage.

28.    Based on the facts recited above, Plaintiffs' counsel requested reconsideration of the denial of the Plaintiffs' claim in a February 8, 2006 letter. Defendants asked for several extensions to respond to that letter, but have not responded to date. Defendants have agreed that any statutes of limitation were tolled from May 1, 2006 until the filing of this Complaint.

## CLAIM ONE

### ELIMINATION OF OPTIONAL FORM OF BENEFIT IN VIOLATION OF ERISA SECTION 204(g)'S ANTI-CUTBACK RULE

29.    The preceding factual allegations are hereby included as if set forth at length.

30.   The 1984 Retirement Equity Act provides that a plan "<u>may provide</u> that a qualified joint and survivor annuity ... will not be provided unless the participant and spouse had been married throughout the 1-year period ending on the earlier of the participant's starting date or the date of the participant's death." ERISA § 205(f), 29 U.S.C. §1055(f), as amended by P.L. 98-297.

31.   REA did not require that retirement plans that offered more generous survivor's benefits be modified to restrict them in this manner. Instead, REA provides that a plan "may provide" a one-year marriage rule. A retirement plan can always offer more than ERISA's minimum standards, as the Annuity Trust Fund did.

32.   Eliminating an optional form of survivor's benefit when the law does not require the change invokes the protections of ERISA § 204(g)(2), 29 U.S.C. §1054(g)(2), which were also enacted by REA and effective for plan amendments made after July 30, 1984.

33.   The Plan's provisions for surviving spouse benefits offer a 60% survivor's benefit with no reduction to the participant's annuity, which is a valuable optional form of benefit.

34.   Under ERISA § 204(g)(2), as amended by REA, this optional form of benefit could not be eliminated, reduced, or restricted with respect to accrued benefits. See Treas. Reg. 1.411(d)-4; *Arakelian v. National Western Life Ins. Co.*, 724 F.Supp. 1033, 1035 (D.D.C. 1989) ("surrender charges" imposed on lump sum distributions

violated ERISA 204(g)); *Counts v. Kissack Water and Oil*, 986 F.2d 1322, 1323-25 (10th Cir. 1993) (amendment eliminating lump sum option violated § 204(g)(2)); *Kiefer v. Ceridian Corp.*, 976 F.Supp. 829, 846-47 (D.Minn. 1997) (change in computational methodology reducing benefits violated anti-cutback rule; plan's "efforts to conform to [Tax Reform Act] does not allow them to violate ERISA itself").

35. This "anti-cutback" protection applies to benefits "payable with respect to a spouse or other beneficiary." See Treas. Reg. 1.411(d)-4, Q&A-2(a)(4) ("benefits may not be eliminated merely because they are payable with respect to a spouse or other beneficiary").

36. Even for "change[s] in statutory requirements," protected benefits can be eliminated or reduced "only to the extent necessary to enable the plan to continue to satisfy the requirements for qualified plans." Treas. Reg. 1.411(d)-4, Q&A-2(b)(2)(i). The elimination or reduction of a protected benefit "will not be treated as necessary if it is possible through other modifications to the plan ... to satisfy the applicable qualification requirement." Id.

37. Thus, even if an amendment was necessary to continue to satisfy the requirements for qualified plans, it cannot reduce the benefits that participants have already accrued. The benefits that Mr. Overby accrued, including the right to survivor's benefits, are protected against reduction. See, e.g., *Nichols v. Asbestos Workers Pension Plan Trustees*, 835 F.2d 881, 890 (D.C. Cir. 1987); *Arakelian v. National Western Life*

10

*Ins.*, 724 F.Supp. 1033, 1035 (D.D.C. 1989).

38.     In a April 26, 2004 letter, Defendants' counsel acknowledged that the survivor's annuity rule cannot be changed for a participant who retired before this amendment was adopted, even though the marriage occurred after it. Defendants' counsel have declined to recognize that the option cannot be eliminated with respect to "accrued benefits" earned before the date of any modification, regardless of the date on which a participant retired.

## CLAIM TWO

## IMPROPER ADOPTION OF AMENDMENT

39.     The preceding factual allegations are hereby included as if set forth at length.

40.     Under ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), all employee benefit plans must be "established and maintained pursuant to a written instrument." The plan must identify the person who has the authority to amend the plan and any amendment must be conducted according to the plan's formal procedures. See ERISA § 402(b)(3), 29 U.S.C. § 1102(b)(3), and *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 85 (1995). An amendment is ineffective if it is inconsistent with those procedures. See, e.g., *Depenbrock v. CIGNA*, 389 F.3d 78, 81-82 (3d Cir. 2004).

41.     Article IX, Section I of the NALC Annuity Trust Fund Plan Rules and Regulations, as amended through December 31, 1999, provides that only the Annuity

Trust Fund's Board of Trustees may amend the Plan, and then only subject to the approval of the NALC Executive Council.

42. Defendants' counsel contends that the amendment implementing the current annuity survivor rule was adopted at the Annuity Trust Fund meeting on April 19, 1985 in Nashville, Tennessee and later approved at the NALC Executive Council meeting on May 14-16, 1985. However, the NALC Annuity Trust Fund trustees and other members of the Executive Council who were present at those meetings, including Plaintiff Halline Overby, state that no amendment to the annuity survivor rule was voted on during the meeting on April 19, 1985, or during the meeting on May 14-16, 1985.

43. Because any amendment to the survivor annuity rule was made without a vote by the Board of Trustees, and without proper approval by the Executive Council, the alleged 1985 amendment to the rule is ineffective.

## CLAIM THREE

## NO DISTRIBUTION OF A SUMMARY OF MATERIAL MODIFICATION

44. The preceding factual allegations are hereby included as if set forth at length.

45. Under ERISA § 102, 29 U.S.C. § 1022, and 29 C.F.R. 2520.104b-3(a), a Summary of a Material Modification ("SMM") to a plan, including a modification that reduces benefits, must be distributed to participants no later than 210 days after the close of the plan year in which the modification is adopted. The SMM must written "in a

manner calculated to be understood by the average plan participant" and must be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."

46. Although the survivor's annuity rule was purportedly amended in May 1985, no "summary of material modification" to address this change was distributed, even by the Defendants' account, until at least July 1990–over five years after the purported change.

## CLAIM FOUR

### UNDISTRIBUTED AND INADEQUATE SUMMARY PLAN DESCRIPTIONS

47. The preceding factual allegations are hereby included as if set forth at length.

48. Under ERISA, a Summary Plan Descriptions ("SPD") must be distributed to participants which discloses the circumstances that may result in reductions, disqualification, denial, loss, or forfeiture of any benefits that a participant might otherwise reasonably expect to receive on the basis of the description of the benefits offered by the plan. See ERISA § 102, 29 U.S.C. § 1022 and 29 C.F.R. 2520.102-3(l). Like an SMM, the SPD must be written in a manner calculated to be understood by the average plan participant. 29 C.F.R. 2520.102-2(a).

49. If material modifications are made to a plan, a SMM must be provided within 210 days after the year in which the amendment is adopted and the SPD must be

updated every five years to disclose any plan amendment within the preceding five-year period.  See ERISA §104(b)(1)(B) and 29 C.F.R. 2520.104b-2(b).

50.     Defendants contend that an SPD describing the rules and regulations of the NALC Annuity Trust Fund, as amended through December 31, 1989, was provided to participants in July 1990.

51.     Mr. Overby did not receive that SPD anytime on or after July 1990. A copy of that SPD was provided to Mr. Overby only after his inquiry about survivor's benefits for his wife in February 2003.   Other Plan participants have indicated that the 1990 SPD was not actually distributed to participants.

52.     The SPD that was purportedly provided in July 1990 states that a spouse is eligible for a survivor annuity equal to 60% of the annuitant's benefit:

> provided that the spouse is one to whom the Annuitant was married for at least the year immediately preceding and ending on the Annuitant's annuity commencement date, or is the parent of issue by such marriage.  Notwithstanding the foregoing, if the Annuitant and the spouse were married within the year before the annuity commencement date and were married for at least one year ending on or before the Annuitant's death, that spouse shall be paid the Survivor Annuity as if the spouse and the Annuitant had been married for the year ending on the annuity commencement date.

53.     The only SPD that Mr. Overby received between May 1985 and the February 2003 date of his inquiry about the survivor's benefits for his wife was an SPD dated December 31, 1999. That version of the SPD states that under the NALC Annuity Trust Fund, as amended through December 31, 1999, a surviving spouse shall receive benefits if the participant has more than five years of credited service, is over age 67, and

14

is currently receiving an annuity. In a note, the SPD states that if an annuitant was married less than a year before the annuity was commenced, the spouse "must be married to you" for "at least a year as of the date of death." Mr. and Mrs. Overby qualify under all elements of this rule.

54. In the absence of the statutorily-required disclosure, a rule that causes benefits to be lost or forfeited may not be enforced. See, e.g., *Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir. 1990).

## CLAIM FIVE

## BREACH OF FIDUCIARY DUTY

55. The preceding factual allegations are hereby included as if set forth at length.

56. The "duty to disclose material information" is at "the core" of an ERISA "fiduciary's responsibility." *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990).

57. On information and belief, no Plan participant, including the three trustees or the members of the Executive Council, including Mr. Overby, understood that the survivor annuity rule had been modified until Mr. Overby inquired about his wife's benefits in early 2003.

58. The Plan administrator's failure to understandably disclose the changes to the survivor annuity rule to Mr. Overby and other Plan participants violates the fiduciary

duty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to provide participants with the information needed to make well-informed employment and retirement decisions.

## **PRAYER FOR RELIEF**

WHEREAS, the Plaintiffs pray that this Court:

A.   Declare that the terms of the Annuity Trust Fund survivor annuity rule, Article V Section I, as amended, violate ERISA § 204(g) because they unlawfully eliminate an optional form of benefit.

B.   Declare that the alleged 1985 amendment to the survivor annuity rule was not adopted in accordance with the Plan's amendment procedures in Article IX, Section I, as amended, and is therefore invalid.

C.   Declare that NALC Annuity Trust Fund's and the Plan administrator's failure to distribute a Summary of Material Modifications and a Summary Plan Description violates the disclosure requirements in ERISA §§ 102 and 104(b)(1), 29 U.S.C. §§ 1022 and 1024(b)(1), and the fiduciary duty to keep beneficiaries informed in ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

D.   Order that NALC prepare an SMM and SPD that fully disclose any change to the survivor's annuity rule and order that NALC continue the previous rule until such notice is provided.

E.   Award such other equitable and remedial relief as the Court deems appropriate to ensure receipt of all retirement benefits required to give effect to the

Court's declarations.

 F. Order the Defendants to pay interest, attorneys' fees and expenses.

**DATED** this 1st day of August, 2006.

Respectfully submitted,

*/s/ Stephen R. Bruce*

Stephen R. Bruce
D.C. Bar No. 289066
805 15th St., NW, Suite 210
Washington, D.C. 20005
(202) 371-8013

Attorney for Plaintiffs
