# Exhibit A

December 8, 2004

To Whom It May Concern:

I have reviewed the minutes of the Trustees meeting of the National Association of Letter Carriers held on April 19, 1985 in Nashville, Tennessee.

I do recall that it was a dinner on the night of April 19, 1985 and a meeting was held the next day in which finances were discussed. To my knowledge, there was no vote taken in Nashville, Tennessee on the NALC Annuity Trust Fund.

During the Executive Council meeting in Washington, D. C. of May 14-16, 1985, there was definitely no vote taken on the Annuity Trust Fund.

This is a true recollection as Chairman of the Board of Trustees in 1985.

Sincerely,

George N. Davis

gnd/

July 1, 2004

To Whom It May Concern:

I hereby certify that I, George N. Davis, Jr. was a member of the Executive Board of the National Association of Letter Carriers from 1978 to 1994. I held the position of Trustee and became Chairman of the Board of Trustees in 1980 and served in that capacity until 1986 when I was elected Director of Safety and Health. I was Director of Safety and Health until 1994 when I retired under the NALC Annuity Trust Fund (ATF).

During that period, the Board of Trustees never discussed any provisions of the NALC Annuity Trust Fund . The Executive Board did discuss two items regarding <u>Vincent Sombrotto</u>, President and <u>Richard O'Connell</u>, Secretary-Treasurer. Vince was allowed to add the years as President of Branch 36 for use as creditable service under the NALC Annuity Trust Fund. Richard O'Connell, who had retired and was receiving a pension from the NALC Annuity Trust Fund was allowed to be reinstated in the ATF with his future service to be used toward his entitlement.

This is the true account of my service.

*[signature: George Davis]*

Notary exp. 5-10-04
*[signature: Yashonna Bowman]* 6-29-04

P 0154

# Exhibit B

December 10, 2004

Halline Overby
3705 S. George Mason Drive
Apartment 805 South
Falls Church, VA 22041

Dear Chug:

In response to your inquiry on the NALC Annuity Trust Fund and the meeting in Nashville, Tennessee on April 19, 1985, I do not recall any discussion or vote on the Annuity Trust Fund.

I have reviewed the documents you sent me regarding the Executive Council meeting held in Washington D.C. on May 14-16, 1985, but I do not recall any vote that had to do with the NALC Annuity Trust Fund or the documents you sent me.

I hope this is of value to you.

Sincerely,

*James E. Worsham*
James E. Worsham
1430 Joyce Drive
Floosmoor, IL 60422

jew/

(Member, Board of Trustees; President of the NALC Branch 11, Chicago; and retired Director of Retired Members, NALC)

# Exhibit C

Minutes of the

NALC Annuity Trust Fund

Held At

Opryland Hotel

Nashville, TN


April 19, 1985


Present:   Vincent R. Sombrotto, President NALC
           George R. Davis, Jr., Chairman Board of Trustees
           James G. Souza, Trustee
           James E. Worsham, Trustee
           Karl Sennewald, Assistant Administrator
           Lynn B. VanDercook, of the Wyatt Company, Actuary
           Tamson Milton, of the Wyatt Company, Actuary
           Robert J. Buntz, Director, NALC Health Benefit Plan
           Harry D. Boteler, Administrator, NALC Health Benefit Plan
           Gary Lake, of The Wyatt Company, Actuary, NALC Health
              Benefit Plan
           Maurice S. Whalen, of Alexander Grant & Company, CPA
           Ronald W. Deener, of Alexander Grant & Company, CPA
           Norman A. Carl, of First American Bank, Investment Adviser
           Donald Turk, of First American Bank, Investment Adviser
           Richard D. Fitzgerald, of First American Bank
           Bruce H. Simon, of Cohen, Weiss & Simon, General Counsel
           Jani K. Rachelson, of Cohen, Weiss & Simon, General Counsel


1. The meeting was called to order at 9:05 a.m.

2.

3.

4.

5.

6.

7. Ms. Milton and Ms. Rachelson discussed the impact on the Plan of the Retirement Equity Act ("REA") and the following changes that would be required.

    a. It was noted that Article V, Section 1(b) of the Plan currently provides that the spouse's survivor annuity is payable upon the Annuitant's death to the spouse at the time of death, while under REA the annuity must be payable to the spouse who was married to the Annuitant for the year prior to the annuity starting date. If the marriage took place within the year before the annuity starting date, however, REA provides for payment to that spouse, provided the spouse and the Annuitant were married at least one year before the Annuitant's death. Accordingly, a motion was approved amending the Plan to delete the current one year before death rule and to replace it with the REA one year before annuity commencement rule, suject to the exception noted above for marriages within that year.

    b. Ms. Milton explained that the current Plan does not provide a survivor's benefit to the spouse of a terminated vested Employee who dies. Under REA, the Plan must provide survivor benefits in this situation, although the statutorily required benefit is less than the survivor annuity now provided by the Plan. Thus, the Plan could provide the spouses of terminated vested employees with 50% survivor benefits (rather than 60% as currently provided under the Plan to spouses of active

-2-

P 0009

employees who die), commencing immediately upon the death of the employee or deferred to when the employee would have reached an eligible retirement age, and the Plan can charge for the additional survivor's benefit by way of an actuarial reduction. The Actuaries advised that the cost of providing the maximum survivor benefit to the terminated vested Employee, _i.e._ 60% commencing immediately, is estimated at .1% of payroll. Accordingly, following discussion, it was agreed to provide the 60% survivor annuity to the spouses of terminated vested employees death with no actuarial reduction.

c.  Ms. Rachelson advised the Trustees that under ERISA, a plan can provide that if the present value of an annuity payable to either a participant or a survivor is equal to $1750, the plan can automatically pay out the lump sum present value without the participant's or the spouse's consent. REA increased the limit to $3500. Following discussion it was agreed to adopt the involuntary $3500 cash out rule.

d.  Ms. Rachelson also noted that, as had previously been explained, REA provides for payments to persons other than the participant or employee pursuant to "qualified domestic relations order" and requires a plan to adopt procedures for handling QDRO's. Accordingly, it is necessary to amend Article VIII, Section 1 of the Plan, which prohibits the assignment or alienation of Plan benefits, to make an exception for Qualified Domestic Relations Order. Ms. Rachelson advised that she is preparing guidelines for adoption, and that pending their adoption, the Assistant Administrator should refer any domestic relations orders to her office.

The foregoing amendments, a copy of which is attached as Exhibit "A", were all adopted subject to approval by the Executive Council on May 15-16, 1985.

8.

P 0010

-3-

9.

10.

11.

12. There being no further business, the meeting was adjourned at 10:55 a.m.

## RESOLUTION

### AMENDMENTS TO NALC ANNUITY TRUST FUND

1. Amend Article IV, Section 2 by substituting 3½% for 3%.

2. Amend the proviso clause of Article V, Section 1(b) to state:

    "provided that the spouse is one to whom the Annuitant was married for at least the year immediately preceding and ending on the Annuitant's annuity commencement date. Notwithstanding the foregoing, if the Annuitant and the spouse were married within the year before the annuity commencement date and were married for at least one year ending on or before the Annuitant's death, that spouse shall be paid the Survivor Annuity as if the spouse and the Annuitant had been married for the year ending on the annuity commencement date."

3. Amend Article V, Section 1 by the addition of a new Subsection (c) to read as follows:

    (c) Upon death of a former Participant with at least five years of Creditable Service who is not an Annuitant the surviving spouse (if any) is eligible for an annuity of 60% of the amount of the Annuity to which the Participant would have been entitled had he or she attained age 62, based on his or her Creditable Service, provided in Article IV.

P 0012

Exhibit A

4.  Amend Article VI, Section 1 by making the current Section 1 subsection (a) and by adding a new subsection (b) as follows:

> (b) In the event the present value of an annuity payable to an Annuitant or a surviving spouse is $3,500 or less, the entire present value may be paid to the Annuitant or Spouse at the Administrator's sole discretion without the consent of the Annuitant or spouse. For this purpose, the present value of the annuity shall be determined as of the date of distribution and by using the interest rate which would be used (as of the date of the distribution) by the Pension Benefit Guarantee Corporation for purposes of determining the present value of a lump sum distribution on plan termination.

5.  Amend Article VIII, Section 1 by the addition of the following sentence:

> Notwithstanding the foregoing, the Plan shall honor Qualified Domestic Relations Orders, as provided in Section 206(d) of the ERISA, as amended by the Retirement Equity Act.

6.  Amend Article VIII, Section 5 to comply with recently issued regulations governing limitations of benefits in case of plan terminations.

# Exhibit D

NATIONAL ASSOCIATION OF LETTER CARRIERS
AFL-CIO

EXECUTIVE COUNCIL MEETING
MINUTES

May 14-16, 1985

Washington, D.C.

Executive Council Minutes
May 15, 1985
PM Session

President Sombrotto called the meeting to order at 2:00 pm. All members of the Executive Council were present.

The Council unanimously approved a set of amendments to the NALC Annuity Trust Fund. Copies of these amendments are set forth in Exhibit A attached hereto.

General Counsel Bruce Simon reported on pending litigation and arbitration matters.

The Counsel unanimously passed a resolution authorizing and ratifying payment by NALC of all expenses incurred in connection with the defense of Hatch Act charges against President Sombrotto.

Director of Health Benefits Robert Buntz reported on his upcoming health benefits seminar in Las Vegas and a recent meeting of the Trustees in Nashville. The members of the Council discussed the potential enlargement of benefits.

Assistant Director of Health Benefits Tony Morrell reported on telephone calls to the Health Benefit Plan.

MBA Director Bill Dunn reported on branch enrollment for MBA's new life insurance coverage. He also discussed recent developments in the uniform program. There was a general discussion of uniforms.

Assistant Secretary-Treasurer Halline Overby reported on recent developments in the EI process and the National Child Search Probram with USPS.

The meeting was adjourned at 4:15 pm.

P 0015

## RESOLUTION

## AMENDMENTS TO NALC ANNUITY TRUST FUND

1. Amend Article IV, Section 2 by substituting 3½% for 3%.

2. Amend the proviso clause of Article V, Section 1(b) to state:

   "provided that the spouse is one to whom the Annuitant was married for at least the year immediately preceding and ending on the Annuitant's annuity commencement date. Notwithstanding the foregoing, if the Annuitant and the spouse were married within the year before the annuity commencement date and were married for at least one year ending on or before the Annuitant's death, that spouse shall be paid the Survivor Annuity as if the spouse and the Annuitant had been married for the year ending on the annuity commencement date."

3. Amend Article V, Section 1 by the addition of a new Subsection (c) to read as follows:

   (c) Upon death of a former Participant with at least five years of Creditable Service who is not an Annuitant the surviving spouse (if any) is eligible for an annuity of 60% of the amount of the Annuity to which the Participant would have been entitled had he or she attained age 62, based on his or her Creditable Service, provided in Article IV.

P 0016

4. Amend Article VI, Section 1 by making the current Section 1 subsection (a) and by adding a new subsection (b) as follows:

> (b) In the event the present value of an annuity payable to an Annuitant or a surviving spouse is $3,500 or less, the entire present value may be paid to the Annuitant or Spouse at the Administrator's sole discretion without the consent of the Annuitant or spouse. For this purpose, the present value of the annuity shall be determined as of the date of distribution and by using the interest rate which would be used (as of the date of the distribution) by the Pension Benefit Guarantee Corporation for purposes of determining the present value of a lump sum distribution on plan termination.

5. Amend Article VIII, Section 1 by the addition of the following sentence:

> Notwithstanding the foregoing, the Plan shall honor Qualified Domestic Relations Orders, as provided in Section 206(d) of the ERISA, as amended by the Retirement Equity Act.

6. Amend Article VIII, Section 5 to comply with recently issued regulations governing limitations of benefits in case of plan terminations.

ADOPTED BY THE NALC EXECUTIVE COUNCIL
Washington, D.C.
May 15, 1985

# Exhibit E

## Bramlette, John

| | |
|---|---|
| From: | Allison Caalim [acaalim@verizon.net] |
| Sent: | Monday, April 23, 2007 6:22 PM |
| To: | Bramlette, John |
| Cc: | stephen.bruce@prodigy.net |
| Subject: | RE: NALC v. Overby |
| Follow Up Flag: | Follow up |
| Flag Status: | Completed |

John,

I am Stephen's associate. He asked me to respond to your email.

Please confirm that Mr. Sennewald will be available to be deposed on Monday, April 30th, at our offices. Unless he has a preference, we can start at 1 pm.

Mr. Overby would also like to begin his deposition at 1 pm on Tuesday, May 1st. This will allow Mrs. Overby to only miss one-half of a day of work.

Aside from whether it would be helpful to depose Mr. Ferris and one of the other members of the Executive Council, we simply do not have the time to do this in the next two weeks because of prior scheduling commitments in other cases.

Thank you,

Allison Caalim

5/4/2007