UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HALLINE and PAULETTE M. OVERBY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> NATIONAL ASSOCIATION OF LETTER ) <br> CARRIERS, NATIONAL ASSOCIATION ) <br> OF LETTER CARRIERS ANNUITY ) <br> TRUST FUND, WILLIAM H. YOUNG, and ) <br> BOARD OF TRUSTEES of the NATIONAL ) <br> ASSOCIATION OF LETTER CARRIERS ) <br> ANNUITY TRUST FUND, ) <br> ) <br> Defendants. ) <br> ) | Case No. 06 CV-1356 (RMC) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE BASED ON DEFENDANTS' REFUSAL TO "FAIRLY RESPOND" TO REQUESTS FOR ADMISSION AND THEIR FAILURE TO PRODUCE CERTAIN DOCUMENTS**

Stephen R. Bruce
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, D.C. 20005
stephen.bruce@prodigy.net
Telephone: (202) 371-8013
Facsimile: (202) 371-0121

Attorneys for Plaintiffs

**Table of Contents**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      The Requests to Which Defendants Did Not "Fairly Respond" Should Be Deemed Admitted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.    Denials With No Explanation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

                1.    Requests Based on Documents Not Produced in Discovery. . . . . . . 3

                2.    Requests Based on Documentary Evidence . . . . . . . . . . . . . . . . . . . 4

        B.    The Requests to Which Defendants' Response Is that the Document "Speaks for Itself" Should Also Be Deemed Admitted. . . . . . . . . . . . . . . . 4

II.     Adverse Inferences Should Be Drawn From Documents Not Produced. . . . . . . . 5

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Introduction**

Plaintiffs submit this motion in limine for rulings that certain requests for admission should be deemed admitted based on pro forma denials and that inferences should be drawn in their favor based on Defendants' failure to produce key documents.

I. **The Requests to Which Defendants Did Not "Fairly Respond" Should Be Deemed Admitted.**

  A. **Denials With No Explanation.**

On February 29, 2008, Plaintiffs served Requests for Admission upon Defendants. Defendants' April 2, 2008 Response to a number of those requests is simply to "Deny," with no explanation of the denial. See Ex. 45.[1] Under F.R.C.P. 36(a)(4), "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter..." Furthermore, "[o]n finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." F.R.C.P. 36(a)(6). See 1970 Advisory Committee Notes (rule "seems to contemplate that defective answers bring about admissions just as effectively as if no answer had been served"); *House v. Giant of Maryland*, 232 F.R.D. 257 (E.D.Va. 2005) ("Gamesmanship in the form of non-responsive answers, vague promises of a future

---

[1] Two copies of the Exhibit binders with the reference to Exhibits will be provided to the Court on May 9, 2008 with the parties' Local Rule 16.5 Joint Pre-Trial Statement. To avoid unnecessary duplication, this motion and memorandum rely on the Exhibits in those binders.

1

response, or quibbling objections can result in the request being deemed admitted").

Requests for Admissions under Rule 36 are "first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." F.R.C.P. 36 1970 Advisory Committee Notes. Parties "may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play." *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936-37 (9th Cir. 1994).

Here, although Plaintiffs' requests were fairly grounded on the documents produced by Defendants in discovery as well as deposition testimony, Defendants denied the requests without further explanation. Defendants' bare bones denials are evasive, unresponsive, and do not "fairly respond to the substance of the matter." Furthermore, Plaintiffs simultaneously served an Interrogatory with the Requests for Admission which specifically asked that Defendants "state all facts in support of each response that is not admitted, identify all documents that support each of those responses, and identify all persons who have personal knowledge of facts in support of each such response." In response to that Interrogatory, Defendants set forth five paragraphs of objections without explaining or addressing the basis for their denials in any respect. Ex. 46.

Plaintiffs outline the requests and Defendants' responses in more detail below:

### 1.   Requests Based on Documents Not Produced in Discovery.

Several of Plaintiffs' requests for admission are based on Defendants' failure to produce documents requested in the Plaintiffs' Second Requests for Production. For instance, Plaintiffs' Second Set of Requests asked that Defendants produce "written" and "administrative" procedures related to the calculation and payment of benefits from the Plan. See Ex. 43, ¶¶3 and 4. Defendants did not produce any documents with procedures explaining the application of the amended survivor annuity rule. Request for Admission No. 5 follows up by asking Defendants to admit that no such written or administrative procedures exist. Yet Defendants's response is to "Deny" with no explanation.

Request No. 6 asks Defendants to admit that "No spouse of a deceased annuitant has been denied payment of survivor annuity benefits based on the application of the modification to the survivor annuity rule." Likewise, Request No. 34 asks Defendants to admit that they "cannot identify any participant in the Annuity Trust Fund who was told by Defendants that the survivor annuity rule had been modified before Mr. Overby was told...in February 2003." Again, Plaintiffs propounded these requests for admissions because of the absence of any documents produced showing that the Plan administrator has ever denied spousal coverage based on this purported modification. Defendants' response, however, is again to simply "deny" without identifying any instance or document in support.

### 2.     Requests Based on Documentary Evidence.

Request No. 10 requests an admission that Ms. Rachelson's handwritten notes of the April 19, 1985 trustees' meeting "do not indicate any vote on an amendment to the survivor annuity rule." Ms. Rachelson's handwritten notes of the April 19th meeting show that she made a presentation about what she believed was a legally-required change to this rule, but they do not show a vote. By contrast, her notes show that three other changes addressed at that same meeting were "approved" or were "ok." Ex. 4. Defendants' response is also to "deny" this request, again without any explanation of how Ms. Rachelson's notes indicate any vote.

Request Nos. 13, 16, 17, and 18 relate to the preparation of amendatory language for a modification to the one-year-at-death rule. The documents produced in discovery show that the language of the amended rule was not even in handwritten form before May 15th. Ex. 9. The typed language for the amendment did not appear until June 1985, when the minutes of the April 19, 1985 were prepared and distributed. Ex. 7. Again, Defendants deny the requests that they admit this chain of events, with no explanation and without citing any contrary evidence or documents.

### B.     The Requests to Which Defendants' Response Is that the Document "Speaks for Itself" Should Also Be Deemed Admitted.

Defendants' response to other requests for admission is to say that the referenced document "speaks for itself" See, e.g., Responses to Request Nos. 3, 11-12, 23-24, and 27-28. This response is plainly insufficient and does not "fairly respond" to the requests.

4

As Magistrate Judge Facciola has recognized, "It is astonishing that the objection that a document speaks for itself, repeated every day in courtrooms across America, has no support whatsoever in the law of evidence." *Miller v. Holzmann*, 240 F.R.D. 1, 4, (D.D.C. 2006). In *Miller*, Judge Facciola overruled the defendants' objections, finding that:

> if the request for admission quotes a document and asks the other party to admit that the document contains the material quoted, it should be admitted if the quotation is accurate and denied if it is not. The tautological 'objection' that the finder of fact can read the document for itself to see if the quote is accurate is not a legitimate objection but an evasion of the responsibility to either admit or deny a request for admission, unless a legitimate objection can be made or the responding party explains in detail why it can neither admit or deny the request. It is also a waste of time, since the 'objection' that the document speaks for itself does not move the ball an inch down the field and defeats the narrowing of issues in dispute that is the purpose of the rule permitting requests for admission.

240 F.R.D. at 4.

## II.    Adverse Inferences Should Be Drawn From Documents Not Produced.

Plaintiffs request that an adverse inference be drawn based on Defendants' failure to produce documents in response to Plaintiffs' Requests for Production. As the prime example, Defendants failed to produce the Form 5500 Annual Return/Report for the April-May 1985 time period. This Form 5500 specifically asks "Does any amendment result in the reduction of the accrued benefit of any participant under the plan?" See Ex. 13 (1984 and 1985 Form 5500's for Hilton Hotels and for the NALC Health Plan, Question 8(b)(*ii*)). The response to this question was required to be made under oath and is obviously highly relevant to this lawsuit since it could narrow the issues in dispute. But

5

Defendants have not produced the document. Under these circumstances, an inference should be drawn that the answer was "Yes" and that Defendants are simply seeking to prolong the obvious. The other possible inferences are almost equally bad, namely, that Defendants falsely swore that the answer was "No", or that they avoided the question by refusing to answer.

"It is a familiar rule of evidence that a party having control of information bearing upon a disputed issue may be given the burden of bringing it forward and suffering an adverse inference from failure to do so." *Townsend v. Washington Metropolitan Area Transit Authority*, 746 F.Supp. 178, 185 (D.D.C. 1990) (quoting *Alabama Power Co. v. Federal Power Com.*, 511 F.2d 383, 391 n.14 (D.C. Cir. 1974)); accord, *Tendler v. Jaffe*, 203 F.2d 14, 19 (D.C. Cir. 1953) ("The omission by a party to produce relevant and important evidence of which he has knowledge, and which is peculiarly within his control, raises the presumption that if produced the evidence would be unfavorable to his cause").[2]  In *Townsend*, supra, 746 F.Supp. at 185, a sex discrimination case, the court found that while defendant had introduced "over one hundred exhibits" into evidence," "it failed to produce evidence–which would be in WMATA's control if it existed," to document how a rating-panel selected another candidate over plaintiff.  The court

---

[2] "[D]iscovery sanctions, including an adverse inference instruction, may be imposed on a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 113 (2d Cir. 2002).

concluded there was "almost no evidence to counter the plaintiff's charge" the panel had "rubberstamped" the chosen candidate "at the plaintiff's expense." Id.

Here, Request No. 1 sought "any and all revisions, replacements, or subsequent versions of the Application for Retirement or Survivor Annuity, Form ATF 13 4/82 and Instructions." The Instructions included in the Application for Retirement or Survivor Annuity, Form ATF 13 4/82, state that a surviving spouse "married to annuitant for at least one year immediately preceding annuitant's death" will be eligible for a survivor's annuity." Ex. 19. Plaintiffs produced another application signed on July 27, 2007, which includes the exact same language in the Instructions. Ex. 37. At his deposition, Defendants' Assistant Plan administrator, Rick LaFollette, admitted that this Application and the Instruction existed in this form until the "middle to latter part of the summer of 2007" when outside counsel to the ATF directed him to remove the Instructions altogether. LaFollette Depo. at 43, line 4 - 50, line 22. The Application was then redacted to remove the Instructions in their entirety. Plaintiffs seek an inference from the failure to produce any revisions that the Application for Retirement and these Instructions did not change from the period of mid-1985 when the "marriage before commencement" rule was purportedly adopted until the "middle to latter part of the summer of 2007."

Request No.11 sought documents "related to any calculations to determine the impact on the NALC Annuity Trust Fund of paying survivor annuities to spouses who were married to annuitants for at least one year before the annuitant's death, including

spouses who were married after the participants' benefits commenced. Relatedly, Request No. 12 sought documents "related to calculations to determine the impact on the NALC Annuity Trust Fund of not paying a survivor annuity to spouses who were married to annuitants for at least one year before the annuitant's death but whose marriage did not take place until after the date the participants' benefits commenced." Article IX, Section I of the 1981 Plan Description in effect at the time of the April 19, 1985 Trustees meeting states that "The provisions of the Plan may be amended at any time by the Board of Trustees provided that the Trustees shall submit such proposed amendments to the Fund's Actuary for an evaluation and estimate of its cost." Ex. 1.

    Defendants have not provided any calculations or documents related to the actuarial evaluation of the modification to the survivor's benefit rule. There are no documents related to the costs of paying survivor's annuities to spouses at the time of death (including those married after benefits commenced), nor any documents related to the cost savings from not paying benefits to such spouses. The documents that Defendants did produce indicate that no such evaluation took place. In particular, the minutes to the December 5, 1985 trustees' meeting state that the actuary "reviewed the actuarial valuation for the fiscal year ending June 30, 1985" and "explained that the valuation recognizes the benefit improvement adopted at the April 19 meeting, as well as the new survivor benefit required by the Retirement Equity Act." Ex. 12 at NALC 701. There is no indication of any evaluation of a change to the existing one-year-at-death rule for

survivor's benefits. Accordingly, the Plaintiffs request an inference from the non-production that the amendment to the survivor's annuity rule was never submitted to the Fund's Actuary for an evaluation or estimate of the costs.

Defendants have also not produced any handwritten notes from the May 15, 1985 Executive Council meeting. Mr. Young testified that it was either the assistant secretary-treasurer's or the outside law firm's responsibility to take notes at Executive Council meetings. Ex. 55 at 71, line 15 - 72, line 21. Plaintiffs seek an inference that the handwritten notes which have not been produced would show that no presentation was made about a modification to the survivor's annuity rule. The minutes state that "the Council unanimously approved a set of amendments to the NALC Annuity Trust Fund. Copies of these amendments are set forth in Exhibit A attached hereto." Ex. 10 at NALC 680. There is no indication of any presentation to the Executive Council about a "marriage before commencement" rule. Plaintiffs seek an order that any notes taken at the May 15-16, 1985 NALC Executive Council meeting shall be produced by May 23, 2008, or else an inference will be drawn that they show that no presentation was made about any modification to the survivor's annuity rule contained in the "set of amendments" approved at the meeting.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that this Court order that Defendants' denials to Plaintiffs' requests for admission be deemed admitted and that

9

inferences be drawn in Plaintiffs' favor based on Defendants' failure to produce documents within their control.

Dated: May 8, 2008

    /s/ Stephen R. Bruce
Stephen R. Bruce
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, D.C. 20005
stephen.bruce@prodigy.net
Telephone: (202) 371-8013
Facsimile: (202) 371-0121

Attorneys for Plaintiffs