## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COLUMBIA

| | |
|---|---|
| HALLINE and PAULETTE M. OVERBY,   ) | |
|    ) | |
| Plaintiffs,   ) | |
| vs.   ) | |
|   ) | |
| NATIONAL ASSOCIATION OF LETTER   ) | Case No. 06 CV-1356 (RMC) |
| CARRIERS, NATIONAL ASSOCIATION   ) | |
| OF LETTER CARRIERS ANNUITY   ) | |
| TRUST FUND, WILLIAM H. YOUNG, and   ) | |
| BOARD OF TRUSTEES of the NATIONAL   ) | |
| ASSOCIATION OF LETTER CARRIERS   ) | |
| ANNUITY TRUST FUND,   ) | |
|   ) | |
| Defendants.   ) | |
| _____ ) | |

### LOCAL RULE 16.5 JOINT PRETRIAL STATEMENT

Pursuant to Local Rule 16.5(b) and this Court's March 4, 2008 Order (dkt.#19), Stephen Bruce and Allison Caalim, counsel for the Plaintiffs, and John Hayes and Emily Hargrove, counsel for the Defendants, respectfully submit the following joint pretrial statement:

1. **Joint Statement of the Case**.

   A. **Nature of the Case.**

The Annuity Trust Fund ("ATF") is a retirement plan which is sponsored by the National Association of Letter Carriers ("NALC"). The ATF covers national union officers, national business agents, certain branch officers, headquarters employees and employees of the NALC's Health Plan. As of the end of 2004, the ATF had

1

approximately 581 active participants and 376 annuitants.

Mr. Halline Overby was a participant in ATF as a result of being elected a national trustee from 1978 to 1981 and being elected the Assistant-Secretary-Treasurer of the NALC from 1981 to 1990. Although Mr. Overby had 34 years of service as a letter carrier, branch president and national union officer, his ATF benefits are based on his 12.5 years of service as a national union officer between 1978 and 1990. Based on that service, his monthly benefit is $2,936.

Mr. Overby resigned his position as Assistant Secretary-Treasurer of the NALC effective in December 1990. He commenced his retirement benefits on February 1, 1991, at age 70. He married Paulette Motayne, his long-time companion, on May 30, 1991. Mr. and Mrs. Overby have now been married for close to 17 years.

One of the benefits the Annuity Trust Fund offers is a surviving spouse benefit equal to 60% of the participant's accrued benefit. The survivor's benefit for Mr. Overby was computed in December 1990 as $1,762 per month.

The parties agree that under the Plan document in effect until May 15, 1985, the surviving spouse was the "one to whom the Annuitant was married for at least one year immediately preceding the Annuitant's death, or is the parent of issue by such marriage." For ease of reference, we refer to this as the "one-year-at-death" rule.

In early 2003, the Plaintiffs inquired about the survivor's benefit and the ATF Plan administrator told Mr. Overby that his wife would not be eligible for the survivor's

2

benefit. The Plan administrator told Mr. Overby that the Annuity Trust Fund's rules had been modified to provide that the survivor's benefit will be paid to a surviving spouse "at the time of death, provided that the spouse is one to whom the Annuitant was married for at least the year immediately preceding and ending on the Annuitant's annuity commencement date, or is the parent of issue by such marriage. Notwithstanding the foregoing, if the Annuitant and the spouse were married within the year before the annuity commencement date and were married for at least one year ending on or before the Annuitant's death, that spouse shall be paid the Survivor Annuity as if the spouse and the Annuitant had been married for the year ending on the annuity commencement date." For ease of reference, we refer to this as the "marriage-at-commencement" rule.

The parties disagree about:

(a)    Whether the elimination of the one-year-at-death rule violates ERISA's "anti-cutback" protection against reductions in accrued benefits,

(b)    Whether the amendment was properly adopted by the ATF's trustees and the NALC's Executive Council,

(c)    Whether Mr. Overby received a Summary of Material Modification about the change in the survivor's annuity rule on a timely basis, or ever received one that was written in a manner calculated to be understood by the average plan participant,

(d)    Whether a Summary Plan Description distributed in 2001 was timely and whether it describes any change in the rule, and

(e)    Whether the Plan administrator fulfilled his fiduciary duty to provide Mr. Overby with notice of the change in the rule before he retired so he could adjust his position to conform, e.g., by marrying Mrs. Overby the day before his benefits commenced.

3

B.    **Identities of the Parties**.

The Plaintiffs are Mr. Halline Overby and his wife, Paulette Overby.  The

Defendants are the NALC, the NALC Annuity Trust Fund, the current NALC President,

Mr. William H. Young, who also serves as Plan administrator, and the Board of Trustees

of the NALC Annuity Trust Fund.  The Plan administrator and the Board of Trustees are

responsible for the administration of the Annuity Trust Fund.

C.    **Jurisdiction.**

This Court has jurisdiction over the subject matter of this action pursuant to the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(e)(1),

and 28 U.S.C. §1331.

2.    **Plaintiffs' Statement of Claims**.

According to the testimony of Mr. Overby and others, the NALC's retirement plan

was one of the drawing cards for union members to move to Washington and serve as

national officers. The ATF's survivor's rule provides for survivor's benefits not only for

people who were married before retirement but for remarriages after the death of a

spouse, remarriages after divorces, and less commonly for persons who marry for the first

time at later ages. The Plan's provision for a 60% survivor's benefit with no reduction to

the participant's annuity is a valuable part of the retirement benefit.  Many national

officers and business agents, including Mr. Overby, are familiar with the rules of the Civil

Service Retirement System ("CSRS") because the CSRS provides retirement benefits for

their years of employment as letter carriers. The CSRS has a similar rule covering

marriages after retirement except that there is an actuarial reduction associated with it.

Plaintiffs will show five grounds for relief under ERISA:

1.    **Claim 1: The Anti-Cutback Rule.** Defendants' refusal to provide

survivor's benefits to Mrs. Overby based on elimination of the one-year-at-death rule

violates the "anti-cutback" protection in ERISA §204(g), 29 U.S.C. §1054(g). Under

ERISA §204(g), an optional form of benefit cannot be eliminated, reduced, or restricted

with respect to accrued benefits.  See Treas. Reg. 1.411(d)-4; *Arakelian v. National*

*Western Life Ins. Co.*, 724 F.Supp. 1033, 1035 (D.D.C. 1989) ("surrender charges"

imposed on lump sum distributions violated ERISA §204(g)); *Counts v. Kissack Water*

*and Oil*, 986 F.2d 1322, 1323-25 (10th Cir. 1993) (amendment eliminated lump sum

violated §204(g)(2)); *Kiefer v. Ceridian Corp.*, 976 F.Supp. 829, 846-47 (D.Minn. 1997)

(change in computational methodology reducing benefits violated anti-cutback rule;

plan's "efforts to conform to [Tax Reform Act] does not allow them to violate ERISA

itself").

Under ERISA, the Treasury Department is delegated the responsibility for

interpreting ERISA's rules related to pension benefits, which are often called "minimum

standards." See *Central Laborers v. Heinz*, 541 U.S. 739, 746-47 (2004). As the Federal

agency charged with interpreting ERISA, the Treasury Department's regulations are

entitled to deference. See, e.g., *Long Island Care at Home v. Coke*, 127 S. Ct. 2339, 2349

(2007).

In this instance, the Treasury Department's regulations specifically provide that the "anti-cutback" protection applies to benefits payable with respect to a spouse or other beneficiary. Treas. Reg. 1.411(d)-4, Q&A-2(a)(4) ("benefits may not be eliminated merely because they are payable with respect to a spouse or other beneficiary"). This is consistent with Congress' strategy of protecting the "subsidized" portions of retirement benefits. *Costantino v. TRW*, 13 F.3d 969, 979-80 (6th Cir. 1994). The Treasury Department's regulations also provide that ERISA §204(g) does not permit the addition of conditions restricting the availability of a benefit with respect to benefits accrued before the date of the amendment. Treas. Reg. 1.411(d)-4, Q&A-7. Even if a modification is made to conform with a "change in statutory requirements," the Treasury regulations provide that accrued benefits can be eliminated or reduced "only to the extent necessary to enable the plan to continue to satisfy the requirements for qualified plans." Treas. Reg. 1.411(d)-4, Q&A-2(b)(2)(i). The elimination or reduction of a protected benefit "will not be treated as necessary if it is possible through other modifications to the plan...to satisfy the applicable qualification requirement."

As background, ERISA originally permitted retirement plans to require one-year of marriage before the date of the participant's death as a condition for survivor's benefits. P.L. 93-406, §205(d). But the Treasury Department issued regulations which allowed plans to require both marriage before the retirement commencement date and one year of

marriage before death. Treas. 1.401(a)-11(d)(3).[1]

One of the primary purposes of the Retirement Equity Act of 1984 ("REA"), P.L. 98-297, was to ensure that survivor's annuities were actually provided in more situations. For example, REA mandated that survivor's benefits can only be waived with the informed, notarized consent of the spouse. REA also took a number of other steps to enhance the rights of spouses, including enacting rules on Qualified Domestic Relations Orders, which are known by the acronym QDRO's. The same REA also expanded the protections of "accrued benefits" under ERISA §204(g), which had been narrowly construed by the Treasury Department and the Courts.

The optional one-year of marriage rule and the related regulations were not a focus of this legislation. REA did not require that a Plan's old rule be eliminated or that a "marriage before commencement" rule be adopted. Instead, REA provides that a plan "may provide that a qualified joint and survivor annuity...will not be provided unless the participant and spouse had been married throughout the 1-year period ending on the earlier of the participant's starting date or the date of the participant's death." ERISA §205(f), 29 U.S.C.§1055(f), as amended by P.L. 98-297 (emph. added). This "is an optional provision, providing that a plan 'may,' not 'shall' or 'must,' incorporate certain requirements governing whether a spouse can receive spousal benefits." *Lewis v. Atlantic*

---

[1] Although these regulations no longer apply, they can still be found in the Code of Federal Regulations.

*Research Corp.*, 1999 WL 701383 *3 (W.D. Va. 1999).

The Court may wonder how the rules for QDRO's interact with the one-year-at-death or marriage-at-commencement rules for survivor's benefits. The answer is that whether a Plan provides survivor's benefits to the spouse who was married to the participant in the year before benefit commencement or in the year before death, a QDRO can override either right--at least insofar as accrued benefits earned during the previous marriage are concerned.

Thus, REA did not require that retirement plans like the ATF that offered survivor's benefits under a "one-year-at-death" rule to be modified to eliminate any benefits in that situation. If a plan was modified to change to a "marriage-at-commencement" rule, the plan could keep the previous rule as a failsafe or minimum. The outside counsel to the ATF at that time, Ms. Jani Rachelson, testified at her deposition that she and her law firm have subsequently reconsidered whether this change was required under the REA, but she refused to state the conclusion of that analysis. Rachelson Depo at 38, line 17 - 40, line 8. Tellingly, Defendants have also not produced the Form 5500 which covers the April-May 1985 time period.  Ex. 41 Request No. 9. One of the questions on the 1984 and 1985 Form 5500's, which must be answered under oath, is "Does any amendment result in the reduction of the accrued benefit of any participant

under the plan?" See Ex. 13.[2]

In summary, under ERISA §204(g) and the Treasury regulations, the benefits that

Mr. Overby accrued since his participation in the ATF began, including the right to

survivor's benefits, had to be protected against reduction.  See, e.g., *Nichols v. Asbestos*

*Workers Pension Plan Trustees*, 835 F.2d 881, 890 (D.C. Cir. 1987); *Arakelian v.*

*National Western Life Ins.*, 724 F.Supp. 1033, 1035 (D.D.C. 1989).  Even if a change in

the one-year-at-death rule had not been optional, the ATF would be required to comply in

a way that does the least damage to participants' existing rights.

2.    **Claim 2: Improper Adoption of Change.** ERISA §402(a)(1), 29 U.S.C.

§1102(a)(1), requires an amendment to the Plan to be made in accordance with the Plan's

stated procedures. *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73, 85 (1995). An

amendment restricting the availability of benefits is ineffective unless it is adopted in

accordance with those procedures. *Depenbrock v. CIGNA*, 389 F.3d 78, 81-82 (3d Cir.

2004). Article IX, Section I, of the NALC Annuity Trust Fund Plan Rules and

Regulations, provides that:

> "The provisions of the Plan may be amended at any time by the Board of Trustees
> provided that the Trustees shall submit such proposed amendments to the Fund's
> Actuary for an evaluation and estimate of its cost, and adoption of amendments by
> the Trustees shall be subject to the approval of the Executive Council of the
> NALC."

---

[2] Based on Defendants' failure to produce this document, Plaintiffs have filed a
motion in limine which asks the Court to infer that the answer was "Yes."

9

Ex. 1.

Defendants contend that the "marriage before commencement" rule was adopted at an April 19, 1985 ATF trustees meeting and then approved at a May 15, 1985 meeting of the NALC's Executive Council. However, all three of the trustees who attended the April 19, 1985 Annuity Trust Fund meeting have testified in depositions or will testify at trial that there was no vote on an amendment to the survivor annuity rule. George Davis, the Chairman of the ATF at that time, was in the middle of a divorce and testified there was "no way" he would have approved such a change. Davis Depo at 20, line 9 - 21, line 17; 66, line 4 - 69, line 17. At his deposition, James Worsham, who served as a trustee of the ATF from 1981 to 1994, testified that during his entire tenure the Board of Trustees did not ever approve anything that was not an improvement to the annuitant or the survivor. Worsham Depo at 32, line 2 - 34, line 22. He testified that he understood the amendments approved in 1985 were all improvements. Id. at 45, line 14 - 47, line 16; 60, lines 2-20. James Souza, the third trustee, will testify at trial that a change to the survivor's rule "never, never came up" and that there was no vote by the trustees.

At the April 19th meeting a "benefit improvement" unrelated to REA which raised the benefit percentage to 3½% of highest average pay was discussed and approved. Ex. 8. In addition, there were three other changes related to REA which the minutes of the meeting record, namely, a new survivor's benefit for deferred vested participants who die before retiring, a new limit on lump sum distributions, and new provisions for QDROs.

Amendments that might be required by new regulations on top-heavy plans and the distribution of assets on plan termination were also discussed. *Id*.

In line with the trustees' testimony, the evidence now indisputably establishes that no plan amendment language related to the one-year-at-death rule existed at the time of the purported change on which the trustees could vote. The plan language at issue was not drafted in handwritten form until May 15, 1985.  Ex. 9.  Thus, it would be chronologically impossible for the three trustees to have approved that language on April 19, 1985.

As indicated above, Article IX, Section I of the Plan further provides that any amendment must be submitted to the Fund's Actuary for an evaluation and estimation of its costs prior to approval. Ex. 1. Defendants also admit that there is no evidence that the Fund's Actuary ever evaluated a modification to the survivor's benefit rule.  Ex. 45. The requirement for an actuarial evaluation and estimation of costs is not a dead letter. The minutes of the December 5, 1985 trustees' meeting describe how the Fund's Actuary evaluated the other changes to the Plan's benefits.  Ex. 12.

To the extent any presentation related to this subject was made to the trustees on April 19, 1985, the minutes of the meeting indicate that Ms. Rachelson, the ATF's outside counsel, informed the trustees that a change "would be required" to comply with the Retirement Equity Act and maintain the Plan's qualified status. See Exs. 4 and 7-8.  A change to the one-year-at-death rule was not presented to the trustees as anything on which they had a vote or any choice. Ms. Rachelson also admitted at her deposition that

11

there were not necessarily votes in such situations, but that trustee approval of changes could be implied from the context, including by the trustees not saying anything after a presentation. Rachelson Depo at 75, line 1 - 77, line 3; 88, line 19 - 92, line 16.

Several other documents from the same time period confirm the evidentiary record that no amendment existed even in draft form on April 19th and the trustees' testimony that there was no vote. Ms. Rachelson's handwritten notes of the April 19th meeting (which Defendants withheld initially as privileged) show that she made a presentation about this rule, but her notes do not record any vote. Ex. 4. By contrast, the same notes show that three related changes were "approved" or were "ok." Id. A May 8, 1985 letter from Ms. Rachelson to the Plan's actuary, Tamsin Milton, also identifies and attaches "three" changes approved at the April 19, 1985 meeting. A change to the one-year-at-death rule is _not_ among them. Ex. 5 at NALC 662-64.  A May 13, 1985 letter from Ms. Rachelson to Vincent Sombrotto, the ATF's Plan administrator and the NALC's then-president, also states that she is enclosing the amendments adopted at the trustees meeting "to comply with the recently enacted Retirement Equity Act." Ex. 6 at NALC 678-680. The amendments enclosed with the letter again do _not_ include any modification to the one-year-at-death requirement for survivor's benefits. Id.

The record further shows that when the ATF trustees were given a vote related to the introduction of a new survivor's benefit for deferred vested employees (which was separately required by ERISA §205(a)(2), as amended by REA), the trustees elected the

12

most generous option. Ex. 8 at P 325-26. This is consistent with Mr. Worsham's testimony that the trustees never approved a benefit reduction. In this instance, the trustees were told that this "REA - new survivor benefit" could be limited to 50% of the participant's annuity and could be subject to an actuarial charge to cover the cost of the benefit. The trustees elected to offer the 60% benefit on an unreduced basis to a new group of surviving spouses. *Id*. at P 326.

With respect to the May 15, 1985 Executive Council meeting, ten members of the Executive Council who attended that meeting, including Mr. Overby, have testified in depositions, will testify at trial, or have stated in writing that they do not recall any discussion of a change to the survivor annuity rule at the May 15, 1985 Executive Council meeting. Ex. 34. Mr. Davis testified that the business accomplished at ATF meetings was not discussed at Executive Council meetings and that the Council did not "vote" on changes approved by the trustees. Davis Depo at 39, line 20 - 45, line 9. Jim Edgemon who will testify at trial was divorced in 1976 and has subsequently remarried. He took "copious" notes at the meetings. He says he would have taken notice of any changes in the rules having to do with marriage and divorce. Other members of the Executive Council who will be witnesses at trial, including Robert Buntz, will testify that the Executive Council meetings were a "dog and pony show" between Vincent Sombrotto, the NALC President, and Bruce Simon, the NALC's outside counsel.

Ms. Rachelson, the outside counsel who was conversant with these issues and who

13

made the presentation at the April 19, 1985 meeting, did not attend the Executive Council

meeting. Rachelson Depo at 51, lines 2-11. Mr. Sombrotto who chaired the meeting

testified at his deposition that he probably would have been the one to talk about any ATF

amendments but he has no recollection of the meeting outside of the minutes. Sombrotto

Depo at 61, line 24 - 64, line 11; 170, line 22 - 172, line 14.

As indicated, the language of the amendment to the existing survivor's benefit was

not even drafted until May 15, 1985. There is no evidence that this handwritten

amendment was typed and rushed into the Executive Council meeting for approval that

day. Another piece of evidence shows that the amendments attached to the minutes of the

May 15 meeting are not even the final version of the change. In the earlier Plan

description, there is an exception for a "parent of issue," i.e., even if the participant and

surviving spouse were not married in the year before death, a "parent of issue" can still

obtain the survivor's benefits. Ex. 1 at P 87. This exception appeared to be stricken by the

amendments attached to the minutes of the May 15 meeting along with the "one-year-at-

death" rule. Ex. 10 at NALC 675-84. But then the same language on the "parent of issue"

resurfaces in the next Plan description without any action by the trustees or the Executive

Council. Ex. 16 at NALC 34, see also Ex. 14 at NALC 183. This shows that someone

other than the trustees and the Executive Council had the authority to make decisions

about the terms of the Plan, including the authority to preserve part of the previous rules.

No reason other than complying with REA has been advanced to justify this

14

change. If the trustees approved the change based on mistaken legal advice, the trustees

have a duty to reconsider and decide whether it is appropriate to deny survivor's benefits

to spouses who are eligible under the rule that was mistakenly eliminated. See *Leckey v.

Stefano*, 501 F.3d 212, 223 (3d Cir. 2007) (trustee may "commit a breach of trust where

he is not personally at fault, as where he acts under a mistake of law or fact").  Any

decision by the trustees after learning of the mistake of law would have to be consistent

with the regulations on notice and the rule in Treas. Reg. 1.411(d)-4, Q&A-2(b)(2)(i)

which provides that protected benefits can be eliminated or reduced "only to the extent

necessary to enable the plan to continue to satisfy the requirements for qualified plans."

Yet, Mr. Young's testimony here is that neither he as the Plan administrator nor the Board

of Trustees has never been informed of the allegations in the Complaint, much less been

told that any previous approval of this change by the Board was based on a mistake of

law. Young Depo at 40, line 19 - 46, line 17; 58, line 6 - 61, line 12; 69, line 4 - 70, line

22.

  The issues related to the effectiveness of this amendment are compounded by the

fact that this amendment appears to have been treated like a "shelf registration" in

securities law, i.e., a change that can be left on the shelf or pulled off it at will. The

actuarial reports prepared for the Form 5500's filed under oath since 1985 never indicated

any change to the surviving spouse rule.  Instead, they state that "If any ... pensioner dies

with 5 or more years of service, his surviving spouse is paid an annuity equal to 60% of

that being paid to the pensioner."  See, e.g., Ex. 23 at NALC 426.

Most importantly, the Application for Retirement or Survivor Annuity, Form ATF 13 4/82, which is provided to each retiree and each surviving spouse, continued from 1985 to mid-2007 to contain the explicit instruction that the surviving spouse is eligible if he or she was "married to annuitant for at least one year immediately preceding annuitant's death."[3]  Exs. 20 and 38. Consistent with this, Karl Sennewald, the Assistant Administrator for the ATF from the time of these events through 1996, testified at his deposition that he was not aware that there had been any change to the rule. Sennewald Depo at 65, line 4 - 67, line 6.

Tellingly, Defendants cannot identify a single participant in the Annuity Trust Fund who was told that the survivor annuity rule had been modified before Mr. Overby was told in February 2003. Ex. 43 (Request Nos. 6 and 7) and 45 (Request Nos. 6, 31, and 34-35). The Assistant Administrator, Mr. Sennewald, testified at this deposition that he does not recall a single survivor's annuity application being denied during his tenure. Sennewald Depo at 58, line 4 - 59, line 12. Out of 76 survivor's benefit applications since 1985, only two instances were uncovered in discovery in which a survivor's benefit was denied: An April 2000 fax from Meryl Solimini-Beck, who was the Assistant

---

[3] After this Instruction was discussed in this lawsuit, the current Assistant Administrator, Rick LaFollette, redacted it at the direction of one of Defendants' outside counsel in the summer of 2007. LaFollette Depo at 43, line 4 - 50, line 22; p. 94, line 9 - 96, line 2.

Administrator for the ATF from 1996 to 2002, states that the spouse of Mr. Edward Downs "receives no survivor benefits" because "[h]is wife and he were married less than a year." Ex. 25 at NALC 1140.  That denial appears to have been based on the old rule. In October 2001, the second wife of Gustav Johnson was initially denied a survivor's benefit based on the "marriage-before-commencement" rule. But that denial was reversed in a document which Defendants assert is privileged. Ex. 42.

Since Mr. Overby was told in 2003 that his wife would be ineligible, only two other participants, George Davis (the former Chair of the ATF Board of Trustees) and Leonard Driscoll, have been told by Defendants that their spouses would not be eligible for a survivor's benefit because of the modified survivor annuity rule.  They were told on October 19, 2004 and December 20, 2004, respectively. Exs. 36 and 37.

3.    **Claim 3: Ineffective Amendment Without Summary of Material Modification.** Even if the amendment was not prohibited by ERISA §204(g) and was properly approved, it is undisputed that Defendants did not distribute a Summary of Material Modification ("SMM") within 210 days after the end of the plan year as required by ERISA §102, 29 U.S.C. §1022. Two-hundred and ten days after the June 30th close of the plan year in which this change was purportedly adopted would have been the end of January 1986. ERISA requires the SMM to describe any material changes to the Plan, including a modification to reduce benefits, "in a manner calculated to be understood by the average plan participant" and must be "sufficiently accurate and comprehensive to

17

reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."

Ms. Rachelson's handwritten notes from the April 19, 1985 meeting of the Board of Trustees have a note to "Prepare notice to people." Ex. 4. But by Defendants' own admission, no SMM or other notice about this change was distributed to people anywhere close to the requisite time period. Ex. 45. Ms. Rachelson the outside counsel who made this note left her job at the end of December 1985. Rachelson Depo at 86, lines 3-22; 122, line 8 - 123, line 12.

Thus, Defendants admit that nothing like a summary of material modification of the modified rule was distributed until at least July 1990–over five years after the purported amendment. Ex. 45. In the absence of a statutorily-required disclosure, a rule that causes benefits to be lost or forfeited is ineffective. See, e.g., *Frommert v. Conkright,* 433 F.3d 254, 268 (2d Cir. 2006) ("Without such proper notice to Plan participants, the amendment was ineffective as to them"); *Custer v. Murphy Oil*, 503 F.3d 415, 424 (5th Cir. 2007); *Washington v. Murphy Oil*, 497 F.3d 453, 458-59 (5th Cir. 2007); *Burstein v. Retirement Account Plan for Allegheny Health, Ed. and Res. Fdn*., 334 F.3d 365, 380-82 (3d Cir. 2003); *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136-37 (6th Cir. 1998); *Production & Maintenance Employees' Local 504 v. Roadmaster Corp*., 954 F.2d 1397, 1404 (7th Cir. 1992). Here, virtually all of Mr. Overby's benefits are based on his years of service before July 1990. Mr. Overby's last day of work was January 31, 1991,

less than seven months thereafter.

Even if the booklets which were purportedly distributed in 1990, namely, an "Annuity Trust Fund Plan Description" and a "Certificate of Participation," had been timely, they would not constitute the SMM the ERISA requires because they are not reasonably calculated to bring the change in the survivor's annuity rule to the attention of the average plan participant. An SMM must highlight relevant changes; it cannot lead participants away from a change, e.g., by obscuring, minimizing or otherwise making the change appear unimportant. 29 C.F.R. 2520.102-2(b) and 29 C.F.R. 2520.104b-3. Here, to spot any change, a participant would have to locate his or her previous Plan Description and do a side-by-side comparison. Neither the 1990 Plan Description nor the Certificate provides sufficient information standing alone for a participant to spot the change. See Exs. 15 and 16.

The March 23, 1990 and July 2, 1990 cover letters attached to the booklets do not give any indication of the change, nor do they suggest that a side-by-side comparison would be useful. See Ex. 17.  Those letters describe how benefit improvements have been to the Plan "since 1983." The only reference that could potentially cover a negative change is a reference to "minor changes...to enable the plan to remain approved by the Internal Revenue Service."  Telling participants that "minor changes" have been made "to remain approved by the Internal Revenue Service" leads participants away from any concern that their benefits are being eliminated because the law does not ordinarily

require that. The author of the letter, Karl Sennewald, said that he did not know what the "minor changes" were and that the letter was, in fact, written by the NALC's outside counsel. Sennewald Depo at 72, line 10 - 73, line 21.

Not only were the 1990 booklets untimely and inadequate, but Defendants failed to actually distribute them. Mr. and Mrs. Overby, Mr. Davis and Mr. Worsham have each testified under oath that the July 1990 Annuity Trust Fund Plan Description was not distributed to them. Halline Overby Depo at 48, line 20 - 50 , line 9; Paulette Overby Depo at 31, line 7 - 32, line 11; Davis Depo at 79, line 17 - 83, line 17 and Worsham Depo at 55, line 19 - 56, line 19. Messrs. Souza, Marco and McNulty will also  testify to that at trial. Letters from Charles Miller and William Heintz which were presented to Defendants with Mr. Overby's claim also state that they did not receive the booklets. Ex. 34.  In October 2003 asked for copies of these booklets because he didn't have them. Mr. Davis testified about a memorable incident in which John Marco asked Vincent Sombrotto, the NALC President, about receiving the booklets on the Plan and Mr. Sombrotto responded "what, are you getting ready to retire or something?" Davis Depo at 83, line 8 - 85, line 12.

    4.    **Claim 4: The Untimely and Misleading Summary Plan Description.**

ERISA §102 and §104, 29 U.S.C. §1022 and §1024, require that an updated Summary Plan Description ("SPD") be distributed every 5 years when material modifications have been made to the Plan. An SPD must "clearly identify" all the circumstances that may

result in reductions, disqualification, denial, loss, or forfeiture of any benefits that a participant might otherwise reasonably expect to receive on the basis of the description of the benefits offered by the Plan.  See ERISA §102, 29 U.S.C. §1022, and 29 C.F.R. 2520.102-3(l). The SPD must be written in a manner calculated to be understood by the average plan participant. 29 C.F.R. 2520.102-2(a). Like an SMM, an SPD does not fulfill its purpose if it obscures, minimizes or leads the participant away from understanding that an adverse change has been made to a benefit provision.

Here, the only SPD for the ATF that Defendants have distributed in the 23 years since 1985 is an SPD which was mailed to participants in 2001–nearly 16 years after the change. Ex. 26. That SPD does not disclose a "marriage before commencement" rule. Instead, it states that the survivor's benefit is available if the participant "completed five years of Creditable Service, [has] reached age 67, or [is] currently receiving an Annuity." Ex. 26 at P 122.  A footnote states that if an annuitant was married less than a year before the annuity commenced, the spouse "must be married to you" for "at least a year as of the date of death" to obtain the benefit. Id. Applying that description, Mrs. Overby should be eligible for a survivor annuity benefit.  At his deposition, the current Assistant Administrator, Rick LaFollette, agreed that the language in the SPD is "misleading." LaFollette Depo at 141, line 4 - 158, line 10.

5.    **Claim 5: No Notice Per *Eddy v. Colonial Life*.** The Plan administrator's failure to understandably disclose the changes to the survivor annuity rule to Mr. Overby

and other Plan participants violates the fiduciary duty under ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), to provide participants with the information needed to make well-informed employment and retirement decisions. *Eddy v.Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990), establishes that the "duty to disclose material information" is at "the core" of an ERISA "fiduciary's responsibility." Under *Eddy*, the fiduciaries for an ERISA plan must disclose material information to participants and beneficiaries, even if the fiduciaries are not specifically asked, so participants and beneficiaries can take appropriate steps to protect their benefits. Thus, under *Eddy*, a failure to provide a timely SMM or SPD is not simply a procedural violation but a breach of the fiduciary duty to disclosure material information that can adversely affect a participant's interests.

Here, neither the Plan Administrator nor the Assistant Administrator provided any notice of the change in the survivor's benefit rules to Mr. Overby before he decided to commence his retirement benefits on February 1, 1991. Mr. Overby had suffered a severe stroke in 1986. His relationship with Paulette Motayne and the care that she took of him during his period of recovery were well known at the NALC. Young Depo at 51, line 22 - 52, line 19. It was also well known that Mr. Overby was resigning from his position as Assistant Secretary-Treasurer for health-related reasons after his term of office expired in December of 1990.

As indicated, the Application for Retirement that was furnished to Mr. Overby specifically states that the survivor's benefit will be paid to his spouse at death. Ex. 19 at

NALC 103-5. An October 4, 1991 letter from Mr. Overby's divorce attorney to his ex-wife's attorney states Mr. Overby's understanding that "The pension plan to which you make reference in fact has survivors benefits–but only to the then spouse." Ex. 21.  This was the information on which Mr. Overby and his former wife acted when they divided up property after his August 1990 divorce. As Mr. Overby indicated in his March 2003 letter to the Plan administrator, his understanding was that a participant and spouse must be married for at least one year before his death, parallel to the rules under the Civil Service Retirement System. Ex. 31 at P 4-5.  In February 1992, the U.S. Office of Personnel Management approved Mr. Overby's application "to provide a survivor annuity benefit for a spouse you married after retirement." Ex. 22 at  P 191.

Mr. Overby's understanding of that rule did not change until 2003. In June 1999, the Assistant Plan Administrator requested that Mr. Overby and others update their beneficiary information under the ATF in June 1999. In response, Mr. Overby listed Mrs. Overby as his beneficiary. Ex. 24.  The ATF accepted that designation and never told him that there was any issue. As stated, the SPD distributed in 2001 also suggested that the previous rule continued to apply. If Mr. Overby had been notified of the change in the rules before he retired, he could have married Mrs. Overby on the day before his annuity commencement date or he could have adjusted his retirement until the day after he married Mrs. Overby.

3.    **Defendants' Statement of Their Defenses**

CLAIM I – Defendants did not eliminate or reduce any benefit and thus, did not violate the anti-cutback provisions of ERISA.  Prior to the 1985 amendments, a spouse was eligible for a survivor annuity equal to sixty percent (60%) of the annuitants' benefits.  After the 1985 amendments, spouses were eligible for a survivor annuity equal to sixty percent (60%) of the annuitants' benefit.  There was no change to the benefit.

CLAIM II – The parties are in agreement that Article IX, Section I of the NALC Annuity Trust Fund Plan Rules and Regulations provides the manner in which the Plan may be amended.  It requires a vote by the Trustees and approval by the Executive Committee.  Plaintiffs contend this vote never took place, but this assertion is not plausible.  The minutes of both the Trustees meeting and the Executive Council meeting show the matter was presented and voted on by the Trustees and approved by the Executive Council.  Further, Defendants will produce testimony to support both the vote on and the approval of the amendment to the survivor benefit rule.

CLAIM III – This count does not assert a cause of action and should be dismissed for failure to state a claim on which relief may be granted.  Plaintiffs allege that ERISA requires the distribution of a Summary of Material Modification to all plan participants no later than 210 days after the close of the plan year in which the modification is adopted and that Defendants failed to do so.  This type of procedural violation of ERISA does not give rise to a substantive right.

24

CLAIM IV – Defendants maintain that Mr. Overby *did* receive copies of the Plan and the Summary Plan Description.  Additionally, Defendants will present testimony that another member of the NALC spoke with Mr. Overby about the survivor benefit rule specifically before he retired.  It is undisputed that Paulette and Halline Overby were not married prior to his retirement or the date on which he commenced receiving his annuity benefit. Therefore, Paulette Overby is not entitled to survivor benefits under the NALC Plan as amended in 1985.

CLAIM V – Mr. Overby served as a member of the Executive Council of the NALC and was present at the May 1985 meeting at which the Executive Council voted to approve the amendment to the survivor benefit rule, approved by the Trustees at the April 1985 meeting.  Overby voted on the proposed amendment as a member of the Executive Council. Plaintiffs' claim that "no Plan participant" understood that the survivor annuity rule had been modified is flatly contradicted by participants who have been deposed.  Plaintiffs' claim that Mr. Overby did not understand the survivor annuity rule had been modified until 2003, is not plausible.

4.     **Witnesses.**

A.     **Plaintiffs' Witnesses**:

Plaintiffs expect to call the following witnesses:

| Name and Address | Description of Testimony | Expected Duration of Testimony |
|---|---|---|
| Mr. Halline Overby<br>3705 S. George Mason Dr.<br>Apt 805<br>Falls Church, VA 22041 | Experiences as trustee of the ATF and an officer on the Executive Council, the May 15, 1985 Executive Council meeting, procedures for amending the ATF Retirement Plan, receipt of ATF Retirement Plan booklets, commencement of his 1991 retirement benefits and the 2003 denial of Mrs. Overby's eligibility for benefits. | 45 minutes |
| Mrs. Paulette Overby<br>3705 S. George Mason Dr.<br>Apt 805<br>Falls Church, VA 22041 | Her husband's retirement benefits and the denial of their claim for survivor's benefits; her experiences as an employee and Plan participant regarding the receipt of any ATF Retirement Plan booklets. | 30 minutes |
| Mr. James Worsham<br>1430 Joyce Dr.<br>Floosmoor, IL 60422 | The April 19, 1985 ATF meeting, the procedures for amending the ATF Retirement Plan and the receipt of ATF Retirement Plan booklets. | 30 minutes |
| Mr. James Souza<br>1121 Alan Brooke St.<br>Trinity, FL 34655 | The April 19, 1985 ATF meeting, the procedures for amending the ATF Retirement Plan and the receipt of  ATF Retirement Plan booklets. | 30 minutes |
| Mr. John Marco<br>510 Revere Beach Blvd<br>Unit 1001<br>Revere, MA 02151 | The May 15-16, 1985 NALC Executive Council meeting, the procedures for amending the ATF Retirement Plan and the receipt of ATF Retirement Plan booklets. | 20 minutes |

| Mr. James Edgemon<br>4788 Scenic Hill Circle<br>Reno, NV 89533 | The May 15-16, 1985 NALC Executive Council meeting, the procedures for amending the ATF Retirement Plan and the receipt of ATF Retirement Plan booklets. | 20 minutes |
|---|---|---|
| Mr. Lawrence Hutchins<br>2857 Fairway Homes Way<br>Glen Allen, VA 23059 | The May 15-16, 1985 NALC Executive Council meeting, the procedures for amending the ATF Retirement Plan and the receipt of ATF Retirement Plan booklets. | 20 minutes |

Plaintiffs expect to also call the following individuals as adverse witnesses:

| Name and Address | Description of Testimony | Expected Duration of Testimony |
|---|---|---|
| Mr. Karl Sennewald<br>8722 Sleepy Hollow Lane<br>Potomac, MD 20854 | His role and responsibilities as former Assistant Administrator for the ATF Plan and the application of any amended survivor annuity rule during his tenure. | 20 minutes |
| Mr. Rick LaFollette<br>34 Panorama Court<br>Charles Town, WV 25414 | Mr. Overby's 2003 inquiry and the denial of eligibility of benefits for Mrs. Overby, other benefit denials based on amended rule, the change to the Instructions for the Application for Retirement and the ATF Summary Plan Description distributed in 2001. | 30 minutes |

Plaintiffs may call the following witnesses if the need arises or for rebuttal purposes:

27

| Name and Address | Description of Testimony | Expected Duration of Testimony |
|---|---|---|
| Mr. Robert Buntz<br>2623 E Leach Ave<br>Des Moines, IA 50320-2635 | The April 19, 1985 ATF meeting, the May 15, 1985 NALC Executive Council meeting, the procedures for amending the ATF Retirement Plan, and the receipt of ATF booklets. | 20 minutes |
| Mr. Eugene McNulty<br>203 Blue Heron Lane<br>Wisconsin Rapids, WI 54494 | The May 15, 1985 NALC Executive Council meeting, the procedures for amending the ATF Retirement Plan, and the receipt of ATF booklets. | 20 minutes |
| Mr. Paul Davis<br>54 Galeon Way<br>Hot Springs, AK 71909 | The May 15, 1985 NALC Executive Council meeting, the procedures for amending the ATF Retirement Plan, and the receipt of ATF booklets. | 20 minutes |

**B. Defendants' Witnesses.**

Defendants will call the following individuals as witnesses at trial:

1. Brian Farris, 10081 Kamuela Drive, Huntington Beach, California 92640. Defendants will present Mr. Farris's testimony by deposition as designated below in paragraph 6. Mr. Farris will testify regarding a conversation he had with Halline Overby regarding the survivor benefit rule and his personal knowledge about the Plan (Approximately one (1) hr).

2. Vincent Sombrotto, 24 Soundview Drive, Port Washington, New York 11050. Defendants will present Mr. Sombrotto's testimony by deposition as designated below in paragraph 6. Mr. Sombrotto is a former President of the NALC and former Plan Administrator. Mr. Sombrotto was present at

both the April and May 1985 meetings at which the amendment was
addressed and will testify regarding those meetings and the amendment to
the survivor benefit rule. (Approximately one (1) hr).

Defendants may call the following individuals as witnesses at trial:

3.    Richard LaFollette, 34 Panorama Court, Charles Town, WV 25414.  Mr.
LaFollette is the Assistant Administrator of the Plan and may be called to
testify regarding matters relating to the administration of the plan or for
rebuttal, if necessary.

4.    Halline Overby, Mr. Overby is a Plaintiff in this matter and will testify
regarding his allegations in the Complaint.

5.    Paulette Overby, Mrs. Overby is a Plaintiff in this matter and will testify
regarding her allegations in the Complaint.

6.    Jani Rachelson, If necessary, Defendants will present Ms. Rachelson's
testimony by deposition, as cross-designated below in paragraph 6.  Ms.
Rachelson was present at the Trustee meeting in April 1985 and can testify
regarding that meeting and the amendment to the survivor annuity plan.

7.    William Young, National Association of Letter Carriers, AFL-CIO. 100
Indiana Avenue, NW Washington, DC 20001.  Mr. Young President of the
NALC and Fund Administrator.  Mr. Young may be called to testify
regarding the administration of the Plan or as a rebuttal witness, if

29

necessary.

**5.    Exhibits**

    **A.    Plaintiffs' Exhibits:**

Plaintiffs' Exhibit List is attached hereto. Copies of the exhibits will be submitted in a separate binder pursuant to the Court's Order of March 4, 2008.  The originals of Exhibits 1 (1981 Plan Description), 15 (1990 Certificate of Participation), 16 (1989 Plan Description), 26 (1999 Summary Plan Description), and 27 (1999 Plan Rules and Regulations), will be presented to the witnesses at trial.

    **B.    Defendants' Exhibits:**

Defendants' Exhibit List is attached hereto. Copies of the exhibits will be submitted in a separate binder pursuant to the Court's Order of March 4, 2008.

**6.    Deposition Designations.**

    **A.    Plaintiffs' Deposition Designations**:

1.    Deposition of Karl Sennewald taken April 30, 2007.

       p. 58, line 4 - p. 59, line 12.
       p. 65, line 4 - p. 67, line 6
       p. 72, line 10 - p. 73, line 21

2.    Deposition of Halline Overby taken May 1, 2007.

       p. 48, line 20 - p. 50 , line 9

3.    Deposition of George Davis taken May 30, 2007.

       p. 20, line 9 - p. 21, line 17
       p. 39, line 20 - p. 45, line 9.

p. 66, line 4 - p. 69, line 17
p. 79, line 17 - p. 83, line 17
p. 83, line 8 - p. 85, line 12.

4.      Deposition of James Worsham taken June 7, 2007.

p. 32, line 2 - p. 34, line 22
p. 55, line 19 - p. 56, line 19.

5.      Deposition of Jani Rachelson taken March 11, 2008.

p. 38, line 17 - p. 40, line 8.
p. 51, lines 2-11.
p. 75, line 1 - p. 77, line 3.
p. 86, lines 3-22.
p.  88, line 19 - p. 92, line 16.
p. 122, line 8 - p.123, line 12.

6.      Deposition of Paulette Overby taken March 14, 2008.

p. 31, line 7 - p. 32, line 11.

7.      Deposition of Rick LaFollette taken March 14, 2008.

p. 43, line 4 - p. 50, line 22.
p. 94, line 9 - 96, line 2.
p. 141, line 4 - p. 158, line 10.

8.      Deposition of Vincent Sombrotto taken April 3, 2008.

p. 61, line 24 - p. 64, line 11
p. 170, line 22 - p. 172, line 14.

9.      Deposition of Bill Young taken April 7, 2008.

p. 40, line 19 - p. 46, line 17.
p. 51, line 22 - p. 52, line 19
p. 58, line 6 - p. 61, line 12.
p. 69, line 4 - p. 70, line 22.

**B.**     **Defendants' Deposition Designations**:

1.     Deposition of Vincent Sombrotto, April 3, 2008.  Defendants cross-
       designate this deposition pursuant, to Rule 106 of the Federal Rules of
       Evidence.

              (To be supplied by Defendants.)

2.     Deposition of Brian Farris, May 8, 2008.

              (To be supplied by Defendants.)

3.     Deposition of Jani Rachelson, March 11, 2008. Defendants cross-designate
       this deposition pursuant, to Rule 106 of the Federal Rules of Evidence.

              8: 6-13
              53: 21 - 58: 17
              64: 13 - 65: 22
              68: 1 - 69: 2

4.     Deposition of George Davis, May 30, 2007.

              7: 6-13
              13: 5 - 14: 4
              17: 3-9
              18: 13 - 21: 17
              23: 20 - 25: 20
              26: 9 - 29: 4
              31: 19 - 33: 1
              35: 14 - 36: 4
              38: 12 - 40: 22
              47: 12 - 49: 4
              58: 5-8
              63: 4 - 64: 7
              65: 3-10
              69: 18 - 70: 2
              70: 1-2
              73: 10 - 74: 8
              88: 10-19

5.    Deposition of James Worsham, June 7, 2007.

        4: 10-12
       20: 12 - 21: 8
       22: 2-15
       25: 1 - 26: 6
       30: 20 - 31: 5, 18-20
       44: 13 - 45: 12
       49: 13 - 50: 5

**7.    Expert witnesses.**

None.

**8.    Motions in Limine with Legal Authority.**

Pursuant to the Court's Minute Order following the April 7, 2008 Status

Conference, the parties filed motions in limine on May 8, 2008.

**9.    Stipulations.**

The parties stipulate to the following facts:

1.    Halline Overby was a trustee of the NALC's Annuity Trust Fund from 1978

to 1981 and served as Chairman of the Board of Trustees during his final year.

2.    Mr. Overby became Assistant Secretary-Treasurer of the NALC in April

1981 and continued in that capacity until October 1990.

3.    Mr. Overby has been a participant in the NALC Annuity Trust Fund since

1978.

4.    Mr. Overby resigned his position as Assistant Secretary-Treasurer of the

NALC in December 1990 and commenced retirement benefits on February 1, 1991.

5.    Paulette Overby has been an employee of the NALC Health Benefit Plan since October 1982 and is also a participant in the Fund.

6.    Halline and Paulette Overby were married on May 30, 1991.

7.    On or about February 2003, Mr. and Mrs. Overby made inquiries to confirm Mrs. Overby's eligibility for survivor's benefits.

8.    In a letter dated February 7, 2003, William Young, President of the NALC and Plan administrator of the NALC Annuity Trust Fund, told Mr. Overby that Mrs. Overby was not eligible for a survivor annuity.

9.    Mr. Overby requested review of his denial of survivor's coverage on March 29, 2003.

10.    In a letter dated May 7, 2003, Mr. Young stated that Mrs. Overby was not entitled to a survivor's annuity under Article V, Section 1 of the NALC Annuity Trust Fund Retirement Plan Rules and Regulations as amended in 1985.

11.    Halline Overby was a member Executive Council from 1981 to 1990.  As a member of the Executive Council, Halline Overby was present at the May 14-16, 1985 NALC Executive Council meeting.

12.    If the survivor annuity rule was modified on May 15, 1985, a Summary of Material Modification was required to be distributed to the Plan's participants by the end of January 1986.

13.    A Summary of Material Modification related to a change in the survivor

34

annuity rule was not distributed to the Plan's participants by the end of January 1986.

14.     A Summary Plan Description was not distributed until 2001.

15.     The Application for Retirement or Survivor Annuity, Form ATF 13 4/82 and Instructions, was never changed or amended in the period from May 15, 1985 to mid-2007.

16.     The exhibits of both parties are authentic copies of the documents which the Exhibit Lists identify.

**10.     Itemization of Damages.**

Plaintiffs do not seek compensatory damages as such, but seek declaratory, injunctive and other equitable relief under ERISA to ensure that Mrs. Overby will receive survivor's benefits upon Mr. Overby's death.  Defendants have already computed that the monthly payment due his surviving spouse will be $1,762.00.  The principal relief sought is a declaratory order and injunctive relief requiring that her survivor's benefits be paid.

**11.     Request for Relief.**

Plaintiffs request that the Court:

A.     Declare that Paulette Overby will be eligible for a survivor's annuity of $1,762 per month should Mr. Overby predecease her based on the following determinations:

(1)     The terms of the Annuity Trust Fund survivor annuity rule, Article V Section I, as amended, violate ERISA §204(g) because they unlawfully eliminate an optional form of benefit;

(2)     The 1985 amendment to the one-year-at-death requirement for the

survivor annuity was not adopted by the trustees in accordance with the Plan's amendment procedures in Article IX, Section I, and is therefore invalid;

(3)     The NALC Annuity Trust Fund's and the Plan administrator's failure to distribute a Summary of Material Modifications violates the disclosure requirements in ERISA §§102 and 104(b)(2), 29 U.S.C. §§1022 and 1024(b)(1);

(4)     The NALC Annuity Trust Fund's and the Plan administrator's failure to disclose the amendment to the survivor's rule in the Summary Plan Description violates the disclosure requirements in ERISA §§102 and 104(b)(2), 29 U.S.C. §§1022 and 1024(b)(1);

(5)     The NALC Annuity Trust Fund's and the Plan administrator breached the fiduciary duty to keep beneficiaries informed in ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), and *Eddy v. Colonial Life*, 919 F.2d 747, 750 (D.C. Cir. 1990).

B.     Defendants are enjoined to reinstate the one-year-at-death benefit in Article V, Section 1, by reinstating the words "or the spouse to whom the Annuant was married for at least one year immediately preceding the Annuitant's death" after "married for at least the year immediately preceding and ending on the Annuitant's annuity commencement date."

C.     If the ATF trustees and the Executive Council so choose, they may change Article V, Section 1, prospectively by following the amendment procedures in Article IX and properly disclosing the change in advance of its effectiveness in accordance with ERISA.

D.     The Court orders Defendants to pay the Plaintiffs' attorneys fees and costs under ERISA §502(g). Plaintiffs shall file an application within 20 days of the date of this Court's Order.

Dated:     May 9, 2008

Respectfully submitted,

  /s/ Stephen R. Bruce  
Stephen R. Bruce (D.C. Bar No. 289066)

36

Allison C. Caalim (D.C. Bar. No.494372)
805 15th St., NW, Suite 210
Washington, D.C. 20005
Telephone: (202) 371-8013
Facsimile: (202) 371-0121

Attorney for Plaintiffs


  /s/ John C. Hayes, Jr.
John C. Hayes, Jr.  (D.C. Bar No. 183582)
Emily K. Hargrove (D.C. Bar No. 482906)
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004-2128
Telephone: (202) 585-8000
Facsimile: (202) 585-8080

Attorneys for Defendants

37