IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HALLINE and PAULETTE OVERBY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 06-CV-1356 (RMC/JMF) |
| NATIONAL ASSOCIATION OF ) | |
| LETTER CARRIERS, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## MOTION FOR SUMMARY JUDGMENT

Defendants National Association of Letter Carriers ("NALC"), National Association of Letter Carriers Annuity Trust Fund ("Fund" or "Plan"), William H. Young ("Mr. Young") and Board of Trustees of the National Association of Letter Carriers Annuity Trust Fund ("Board"), collectively "Defendants" by its attorneys Nixon Peabody LLP, hereby move for an Order granting summary judgment in their favor as there are no genuine material facts at issue for trial with respect to four of the five counts in Plaintiffs' Complaint. Specifically, Count I claims Defendants' 1985 amendment to the survivor benefit rule in the Annuity Trust Fund Plan violated the "anti-cutback" provisions of ERISA. It is undisputed, however, that the survivor benefit was the same before and after the amendment and Plaintiffs cannot produce any evidence to demonstrate a reduction to the benefit. Counts III and IV of the complaint allege that Defendants' failed to distribute a Summary of Material Modification and/or a Summary Plan Description in accordance with ERISA. Finally, Plaintiffs cannot produce evidence to demonstrate a general issue of material fact that changes to the Plan were not disclosed in a way that was understandable and that the Plan Administrator did not provide Mr. Overby with any

10966983.2

notice of the change. Consequently, Plaintiffs claims fail as a matter of law and Defendants are entitled to summary judgment.

In accordance with the Court's request, Defendants formatted their motion as a list of facts not in dispute and cases in support of their claims. The grounds for this Motion are set forth fully in the attached Memorandum of Points and Authorities in Support, which is hereby incorporated by reference.

Dated: May 15, 2008                                  Respectfully submitted,

NIXON PEABODY, LLP


       /s/ John C. Hayes, Jr.
John C. Hayes, Jr. (DCB No. 183582)
Emily K. Hargrove (DCB No. 482906)
401 9th Street, N.W., Suite 900
Washington, DC 20004-2128
(202) 585-8000
(202) 585-8080 (facsimile)

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HALLINE and PAULETTE OVERBY,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | Civil Action No. 06-CV-1356 (RMC/JMF) |
| **NATIONAL ASSOCIATION OF** ) | |
| **LETTER CARRIERS,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

    **I.    Introduction**

The plaintiffs in this case, Halline Overby and Paulette Overby, are complaining about a provision in the National Association of Letter Carriers ("NALC") Trust Fund that provides that the surviving spouse of a retiree who received an annuity from the Fund is eligible to receive 60% of that annuity, on the annuitant's death, if the spouse was married to the annuitant for one year before the annuitant began receiving benefits. The spousal eligibility provision the plaintiffs object to was included in the Plan in 1985. Prior to that time a spouse who had been married to an annuitant for one year before the annuitant's death was eligible to receive the survivors annuity.

    The plaintiffs were not married when Mr. Overby began receiving his annuity in February of 1991, after his retirement in October of 1990.    Mr. Overby moved to the Washington, D.C. area from California in 1982, in the process separating from his first wife. Very shortly after Mr. Overby arrived in this area in 1982, the plaintiffs began living together in

Virginia, but they did not marry until May 1991. Although Mr. Overby could have commenced divorce proceedings in Virginia against his first wife any time after April 3, 1983, he did not do so until January of 1990. Mr. Overby obtained a divorce from his first wife on August 13, 1990 in Virginia, but waited until after he began receiving his annuity to marry his current wife and co-plaintiff.

The facts that are relevant to this case are very simple. Many of them are uncontested; the important facts are as follows. Prior to 1985 Article V of the NALC Annuity Trust Fund provided that the surviving spouse of an annuitant would receive 60% of the annuity after the annuitant died, so long as the couple had been married for one year prior to the annuitant's death. In 1985, the Trustees of the NALC Annuity Trust Fund approved an amendment to that portion of the Plan. Under the amendment, a surviving spouse still received 60% of the annuity after the annuitant died, so long as the couple had been married for one year prior to the date the annuity commenced, or were married before the annuity commenced and the annuitant lived for one year after he began receiving the annuity.

Under the provisions of the Plan, amendments must be approved by the Trustees of the Trust Fund and then approved by the Executive Council of the NALC. According to the contemporaneous documents, the surviving spouse amendment was considered at a Trustees meeting held in Nashville, Tennessee on April 19, 1985. The minutes of that Trustees' meeting discuss the amendment related to the surviving spouse rule, among others. The minutes reflect approval by the Trustees of the amendments. The amendments adopted by the Trustees were presented to and approved by the Executive Council of the NALC at a meeting held May 14-16, 1985 at the Mayflower Hotel in Washington, D.C. The minutes of the Executive Council meeting confirm that the amendments approved by the Trustees of the Plan were approved by the

Executive Council. Mr. Overby was a member of the Executive Council in 1985. He has testified that he does not recall voting on the amendment. Two of the Trustees have testified that they do not recall voting on the amendments.

In March and July of 1990 the Plan distributed a Summary of Material Modification describing the 1985 amendments, along with a copy of the then current Plan.

In 1985, Mr. Overby was married to the first Mrs. Overby, although he had been separated from her without cohabitation since April 3, 1982. Mr. Overby retired on October 22, 1990 and commenced his retirement benefits on February 1, 1991. Mr. Overby married the second Mrs. Overby, who is also a plaintiff, on May 30, 1991. Mr. Overby initiated a divorce proceeding against the first Mrs. Overby in Virginia on January 8, 1990. The Virginia court issued a final divorce decree on August 13, 1990. The first Mrs. Overby commenced a divorce proceeding against Mr. Overby in California on May 4, 1990. Mr. Overby was personally served in the California proceeding and was represented by counsel. The California court issued a final divorce decree on June 22, 1992. The California court adjudicated the property rights between the parties, the Virginia court did not.

The complaint filed by Mr. Overby and his current wife contains five counts. There are no facts whatsoever in dispute with respect to four of the five counts. Only Count II, which claims that the amendment was not properly enacted, even arguably presents a factual dispute. The other four counts present legal issues which the court can resolve without the need for a trial.

The five counts of the complaint are described below. The uncontested facts pertinent to each count are set forth as well. Thereafter, the plaintiffs' assertions are described, as well as the cases that the plaintiffs cited in their complaint their portion of the Pretrial Statement. Finally, the reasons why summary judgment for the defendants is appropriate are discussed.

**II.    Discussion**

The following undisputed facts are pertinent to Count 1.

1. Prior to May 1985, Article V of the Annuity Trust Fund provided, in pertinent part, that upon the death of a participant "the surviving spouse (if any) is eligible for an annuity of 60% of the amount of the Annuity based upon on the Participant's Creditable Service".

2. The Surviving spouse was eligible for an Annuity of 60% "provided that the spouse is one to whom the Annuitant was married for at least one year immediately proceeding the Annuitant's death".

3. After the 1985 amendment, Article V of the Annuity Trust Fund provided, in pertinent part, that upon the death of a participant "the surviving spouse (if any) is eligible for an annuity of 60% of the amount of the Annuity, based upon the Participant's Creditable Service."

4. The Surviving spouse was eligible for an Annuity of 60% "provided the spouse is one to whom the Annuitant was married for at least one year immediately proceeding and ending on the Annuitant's annuity commencement date."

Count 1 of the complaint alleges that when this amendment, which changed the eligibility criteria applicable to the surviving spouse, was approved in 1985, it violated the so-called "anti-cut back rule." 29 U.S.C. 1054 (g). A plan amendment which eliminates an optional form of benefit violates the anti-cutback rule, according to the plaintiffs.

Since the amount of the survivor annuity was precisely the same after the amendment as it had been before the amendment, the plaintiffs claim must be premised upon the change in the eligibility criteria for the surviving spouse. The plaintiffs' Count I claim, that the amendment violated the anti-cutback rule as it applies to Mr. Overby, does not bear up under analysis. The amendment did not "reduce" Mr. Overby's right to a survivors annuity benefit of 60% of the

annuity or "eliminate" an "optional form of benefit" for him. Mr. Overby's surviving spouse was entitled to receive 60% of his annuity before the amendment and precisely the same benefit existed after the amendment. The only thing that changed was the time when the surviving spouse and the annuitant had to be married in order for the surviving spouse to be entitled to the benefit. In 1985, Mr. Overby was married to his first wife and hence was completely unaffected by the change; he lost nothing. The fact that Mr. Overby did not marry his second wife before he retired, as he easily could have, does not render the 1985 amendment violative of the anti-cutback rule.

The cases Plaintiffs reference in support of their anti-cutback claim are inapposite because, unlike here, they deal with an actual reduction of benefits. Thus, in each of the cases the plaintiff's cite prior to the changes or amendments, plaintiff's benefit was X. After the changes or amendments, the benefit was less than X. Here, prior to the amendment the surviving spouse was eligible for 60% of the annuity; and after the amendment the surviving spouse was eligible for 60% of the annuity. There was no change.

The following is a summary of the cases cited by Plaintiffs in their Statement of Claims in the pretrial statement. *Arakelian v. National Western Life Ins. Co.*, 724 F. Supp. 1033 (D.D.C. 1989). Defendants amendment imposed "surrender charges" on participants who "cash-in" prematurely. That is, participants had to pay a fee, thereby lowering the total amount of benefits. There was an actual reduction of benefits.

*Counts v. Kissack Water and Oil Serv., Inc.*, 986 F.2d 1322 (10th Cir. 1993). Defendant's amendment to its plan eliminating an option of receiving a lump-sum payment violated ERISA. Prior to the amendment, the plan had multiple pay out options, including a lump-sum option. When the plaintiff requested a lump-sum pay out, he was informed that the plan had been

7

amended and he could only receive his pension benefits in installments. The court recognized that since 1984, 29 U.S.C. § 1054(g)(2) has prohibited the amendment of a pension plan to eliminate accrued benefits including "an optional form of benefit." A lump-sum payment is an optional form of benefit and that optional form of benefit was taken away by the amendment.

*Kiefer v. Ceridian Corp.,* 976 F. Supp. 829 (D. Minn. 1997). The Ceridian 1985 plan was a defined benefit plan under which, vested participants could receive lump-sum payments if the payment was $5,000 or less. 976 F. Supp. at 833. In 1989, Ceridian amended its plan to allow all employees with vested benefits to take the lump-sum option regardless of the amount. At the same time, Ceridian amended the plan to incorporate changes in the 1986 Tax Reform Act ("TRA"). The TRA allowed plaintiffs offering a lump-sum option to use up to 120% of the Pension Benefit Guarantee Corporation (PBGC) rate of interest, rather than 100%, to compute lump-sum benefits over $25,000, but there was no requirement that the plan do so. For lump sums under $25,000, 100% was the "permissible ceiling." 976 F. Supp. at 834.

It was undisputed by the parties that the change in the computation methodology, the use of the 120% rate instead of the 100% rate, resulted in a reduction of accrued benefits. The issue in the case was whether there was an exception to the anti-cutback rule because of the TRA, where there was an actual reduction. That issue is not presented by this case.

*Nichols v. Asbestos Workers Pension Plan Trustees*, 835 F. 2d 811 (D.C. Cir. 1987). Defendants proposed amendments that retroactively decreased the plans retirement benefits with approval of the IRS. Plaintiffs filed suit to block the amendments contending ERISA prohibits retroactive alteration of the Plan. The amendments would have repealed an increase in monthly benefits retroactively and mandated recalculation of pensioners' retirement payment at a lower level cutting their monthly benefit by approximately one-third. 835 F. 2d at 883.

The following undisputed facts apply to Count 2.

1. On April 19, 1985 the Trustees of the NALC Annuity Trust Fund met in Nashville, Tennessee.

2. The minutes of that meeting say that among other things the Trustees considered an amendment to Article V, Section 1 (b) of the Plan to provide that a spouse's survivor annuity would be payable to a spouse who was married to the Annuitant for the year prior to the annuity starting date. In addition the minutes say that "a motion was approved amending the Plan to delete the current one year before death rule and to replace it with the REA one year before annuity commencement rule, subject to the exception noted above for marriages within that year".

3. The Executive Council of the NALC met on May 14-16, 1985 in Washington, D.C. The minutes of that meeting provide that "The Counsel unanimously approved a set of amendments to the NALC Annuity Trust Fund".

The plaintiffs maintain that the trustees did not "vote" on the amendment because none of the three individuals who were Trustees in 1985 recall the amendment. The plaintiffs also take the position that several members of the Executive Council do not recall a discussion of the survivor annuity rule, nor a vote on the amendment and hence it was not properly adopted. Vincent Sombrotto, who was the president of the NALC in 1985, and chaired the Trustees meetings and the Executive Council meetings, testified that the amendments were voted on by both bodies, as confirmed by the contemporaneous documents, the minutes.

The undisputed facts that are important to Count 3 are set forth below.

1. A Summary of Material Modification ("SMM") describing the changes made in 1985 was distributed to the participants around April 12, 1990 and in July of 1990.

9

The plaintiffs contend that ERISA §102 requires that an SMM be distributed within 210 days of the close of the year in which the change was adopted, or by January 1986 in this instance. Section 102 does not contain any language granting a private right of action to an individual if Section 102 is not complied with by the Plan. Mindful of that problem, the plaintiffs argue that a rule that "causes benefits to be lost or forfeited" is ineffective if not disclosed in an SMM. No one, and certainly not these two plaintiffs, lost or forfeited a benefit in 1985 when this portion of the NALC Plan was amended. Mr. Overby was still married to his first wife in 1985, although he was living with his current wife, Paulette Overby at the time. As a result, the amendment did not reduce his benefits in any way. The current Mrs. Overby was not in a position to receive the survivor annuity benefit when the Plan was amended in 1985 because she was not married to Mr. Overby, so she did not suffer a loss of benefit either.

Moreover, at any time after April 3, 1983 (one year after his separation from the first Mrs. Overby), Mr. Overby could have obtained a divorce in Virginia where he was living and married the current Mrs. Overby, thus ensuring that she would be entitled to the survivor annuity. He chose not to do so for his own reasons and now seeks to obtain the survivor annuity benefit by making spurious claims.

Plaintiffs rely upon, *Frommert v. Conkright*, 433 F.3d 254 (2nd Cir 2006) to support their Count 3 claims, but that case is distinguishable for one very significant reason, it deals with a subsection of ERISA that has no bearing on this case. In *Frommert* plaintiffs left their employment, received a lump-sum distribution of benefits under their Plan, and then were rehired by the same company and started to earn benefits under the Plan again. The dispute centered around how the previous distributions factored into the calculation of retirement benefits for returning employees. Defendants claimed the "phantom account" was always a part

of the Plan and even if it was not, that they gave proper notice of the amendment. The court found defendants did not give proper notice and absent such notice to a participant, the amendment was ineffective as to them.

The notice requirement at issue in *Frommert*, however, was found ERISA §204(h) which required the Plan administrators to provide fifteen days advance notice of any amendment creating "a significant reduction in the rate of future benefit accrual." 433 F.3d at 266. The court found that to allow "tardy notice" to substitute for the advanced notice required by §204(h) "upends the purpose of the provision," to give employees and potential rehires *advanced* notice. *Id.* The court was concerned that potential rehires could not make an informed decision whether they wanted to return to work for Xerox without such information.

The notice requirement at issue in this case is found ERISA §102. Section 102 does not contain an advance warning notice requirement, the existence of which is a key factor in determining whether failure to give notice can void an amendment. Here, the Plan did not have to give notice until after it adopted the amendment.

*Custer v. Murphy Oil*, 502 F.3d 415 (5th Cir. 2007) a case the plaintiffs also rely upon is similarly unavailing. In *Custer* plaintiff was totally disabled and unable to work as a result of an accident in his home. When he inquired about medical coverage from his employer, defendant informed him that because he was totally disabled, he would be terminated and no longer would qualify for coverage under its group insurance plan. Under defendant's old plan, plaintiff would have been covered until the age of 65. Husband and wife plaintiffs argued that the modification to the plan did not comply with ERISA's reporting and disclosure requirements or the Plan's modification procedures.

11

Contrary to the plaintiffs assertion, the *Custer* court found that the notice was sufficiently clear and did not hold that in the absence of statutorily-required disclosure, a rule that causes benefits to be lost or forfeited is ineffective.

*Washington v. Murphy Oil*, 497 F.3d 453 (5th Cir. 2007) does not stand for the proposition that in the absence of statutorily-required disclosure, a rule that causes benefits to be lost or forfeited is ineffective, as asserted by Plaintiffs. In *Washington*, plaintiff sought disability benefits after he injured his back, took medical leave, and ultimately had to cease working for defendant because he could not get medical clearance to return to work. Defendants told plaintiff he was not eligible for the benefits because the Plan required at least ten years of service. The actual Plan document did require ten years of service to be eligible, but the SPD said participants were eligible after 5 years. The court followed the 5-year SPD requirement and held when the terms of an SPD and a plan conflict, and the terms of the conflicting SPD "unequivocally grant the employee with a vested right to benefits, the employee need not show reliance or prejudice". However, the court holding was specifically limited to situations in which the SPD *unequivocally* grants employee with a vested right. 503 F. 3d 459. "We are sensitive to concerns about crating a windfall for employees in other situations, such as when the terms of the conflict SPD are susceptible to different interpretations…." *Id.* at 459 n. 2.

Count 4 is very similar to Count 3 in that the plaintiffs complain that the Summary Plan Description was not distributed to participants in a timely manner and did not clearly disclose the change to the eligibility criteria.

1. A Summary Plan Description was distributed to participants in 1999. The cover letter which accompanied the SPD said that "This Summary Plan Description replaces the plan description dated December 31, 1989" (which is the document complained of in Count III).

2. The 1999 SPD says that a "spouse is eligible to receive a monthly benefit" in the event of an annuitants death. The SPD then says,

"To be eligible for a benefit, your spouse must be married to you for at least a year prior to the date your Annuity commenced (or, if less than a year before the Annuity commenced, at least a year as of the date of death) or must be the parent of a child or children from the marriage."

The plaintiffs claim that the SPD is not clear and does not disclose when a spouse is eligible to receive the survivor annuity. There are no factual issues that need to be developed prior to the time the court rules on that assertion. Moreover, the case law discussed with respect to Count 3 is also cited by the plaintiffs to support their Count 4 claims and is similarly unhelpful.

Count 5 of the plaintiffs' complaint alleges that participants were not aware of the change that was made in 1985. Based upon the joint pretrial statement it appears that the plaintiffs have a new theory with respect to their Count 5 claims, essentially that the changes were not disclosed in a way that was understanable and that the Plan Administrator did not provide Mr. Overby with any notice of the change. The undisputed facts pertinent to Count 5 are as follows.

1. Several participants, including members of the Executive Council, have testified that they understood the change that was made to the survivor annuity rule in 1985.

2. The SMM, the Plan and the SPD both say that in order to be eligible to receive the survivor annuity, a surviving spouse must have been married to an annuitant for one year prior to the time the annuitant begins receiving the annuity or, if married for less than a year before the annuity commenced, is married to the annuitant for one year before the annuitant's death.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment and find Plaintiffs' claims fail as a matter of law.

Dated: May 15, 2008                     Respectfully submitted,

                                        NIXON PEABODY, LLP

                                        /s/ John C. Hayes, Jr.
                                      John C. Hayes, Jr. (DCB No. 183582)
                                      Emily K. Hargrove (DCB No. 482906)
                                      401 9th Street, N.W., Suite 900
                                      Washington, DC 20004-2128
                                      (202) 585-8000
                                      (202) 585-8080 (facsimile)

                                      *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this 15th day of May, 2008, a true and correct copy of the foregoing and this MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS IN SUPPORT were filed with the Court, via the Court's ECF system, which will send copies to the following counsel of record:

> Stephen R. Bruce
> Allison Caalim
> D.C. Bar No. 289066
> 805 15th St., NW, Suite 210
> Washington, D.C. 20005

> /s/ John C. Hayes, Jr.
> John C. Hayes, Jr.

11007578.1