# Exhibit 1

Halline and Paulette Overby
v.
National Association of Letter Carriers, *et al.*

Civil Action No. 06-CV-1356 (RMC/JMF)



# ANNUITY Trust Fund

As Amended Through

## December 16, 1981

DESCRIPTION OF
THE RETIREMENT PLAN FOR OFFICERS AND
EMPLOYEES OF THE NATIONAL ASSOCIATION
OF LETTER CARRIERS AND ITS SUBSIDIARIES



**OF LETTER CARRIERS**

Vincent R. Sombrotto
*President*

100 Indiana Avenue, N.W. Washington, D.C. 20001
Telephone: (202) 393-4695

November 1, 1983

To: NALC Officers, Employees and Annuitants

The National Association of Letter Carriers was organized in 1889 pimarily to improve the working conditions of letter carriers.

Over the years, one way we have tried to do this is by setting an example in the way we treat our own people. In addition to liberal pay policies, we provide fringe benefits - including sick and annual leave, life and health insurance, and retirement (in addition to Social Security).

Probably the most valuable fringe benefit we provide our people is our retirement plan, the NALC Annuity Trust Fund. It is more liberal than plans provided by most other employers. Together with Social Security, it assures continued income protection to you or your family should you lose your earning capacity because of advancing age, disability, or death. For those who work a full career with the NALC, it also can provide an early, care-free retirement on an adequate income.

During 1981 several revisions were made to the plan. These revisions have been approved by the Internal Revenue Service and a favorable determination letter was issued April 11, 1983 indicating that the NALC Annuity Trust Fund is a qualified plan.

I urge that you, as well as other members of your family, read and become familiar with the provisions of the revised plan as described in this pamphlet. Keep the pamphlet in a handy place and review it from time to time so that you can plan intelligently for your family's future.

*Vincent R. Sombrotto*

Vincent R. Sombrotto
President

# CONTENTS

Page

Article I - ESTABLISHMENT ........................................ 1
   Section 1. Name of Plan and Effective Date . 1

Article II - DEFINITIONS ............................................. 1
   Section 1. Total Accrued Benefit ................. 1
   Section 2. Annuitant ................................. 2
   Section 3. Annuity .................................... 2
   Section 4. Employer .................................. 2
   Section 5. Attained Age ............................. 2
   Section 6. Basic Pay ................................. 2
   Section 7. Child ....................................... 2
   Section 8. Creditable Service ..................... 3
   Section 9. Fiscal Year ............................... 3
   Section 10. Fund ........................................ 3
   Section 11. High-3-Year Average Pay ........... 3
   Section 12. Hour of Service ......................... 4
   Section 13. NALC Constitution .................... 4
   Section 14. Participant ................................ 5
   Section 15. Plan ........................................ 5
   Section 16. Normal Retirement Age .............. 5

Article III - ELIGIBILITY FOR RETIREMENT .................. 6
   Section 1. Normal Retirement ...................... 6
   Section 2. Early Retirement ......................... 6
   Section 3. Dicontinued Service Retirement ... 6
   Section 4. Disability Retirement ................. 7
   Section 5. Deferred Retirement ................... 7

Article IV - AMOUNT OF ANNUITY ............................... 8
   Section 1. Participants Continuously Employed Since February 28, 1975 .. 8
   Section 2. Participants Initially Employed On or After March 1, 1975 ........ 9
   Section 3. Interrupted Employment .............. 9

Article V - SURVIVOR ANNUITIES ............................... 10
   Section 1. To Spouse ................................. 10
   Section 2. To Children .............................. 10

Article VI - PAYMENT OF ANNUITIES ............................ 11
   Section 1. Monthly Installments .................. 11
   Section 2. Time of Payment ....................... 11
   Section 3. Commencing Date ..................... 11
   Section 4. Termination Date ...................... 11
   Section 5. Suspension of Payments to Reemployed Annuitants ......... 12
   Section 6. Payment to Persons Under Legal Disability ................ 12
   Section 7. Application Required .................. 13
   Section 8. Right of Review ........................ 13

Article VII - ADDITIONAL PROVISIONS APPLICABLE TO CERTAIN PARTICIPANTS ... 14
   Section 1. Persons Entitled to Annuity Prior to December 16, 1981 .. 14
   Section 2. Participants Entitled to Deferred Retirement Under Prior Plan .. 14
   Section 3. Participants Entitled to Refund of Own Contributions .. 14
   Section 4. Persons Entitled to Supplementary Insurance ........... 16

Article VIII - OTHER PROVISIONS AFFECTING BENEFITS ... 17
   Section 1. Benefits Not Assignable .............. 17
   Section 2. Merger, Consolidation, or Transfer of Fund Assets .... 17
   Section 3. Annual Benefit Limit .................. 17
   Section 4. Allocation of Assets Upon Termination ................. 18
   Section 5. Limitations of Benefits in Case of Termination ........ 19
   Section 6. Forfeitures ............................... 20

Article IX - AMENDMENTS ........................................... 20
   Section 1. Authority to Amend .................... 20
   Section 2. Prohibited Amendments ............. 20

Appendix ............................................................... 21

# National Association of Letter Carriers
# ANNUITY TRUST FUND

## ARTICLE I — ESTABLISHMENT

**Section 1. Name of Plan and Effective Date** - Effective February 1, 1954 the National Association of Letter Carriers of the United States of America (NALC) established the National Association of Letter Carriers Officers' and Employees' Retirement Plan (Plan) for the benefit of its officers and employees and those of the related organizations named in Article II, Section 4. Substantial changes relating to contributions and benefits under the Plan were adopted as of January 1, 1975 and March 1, 1975.

Effective July 1, 1976 the Plan was further amended to comply with the Employee Retirement Income Security Act and renamed the National Association of Letter Carriers Annuity Trust Fund. This document contains a restatement of the Plan and includes all further amendments adopted through December 16, 1981.

The Plan is established and maintained pursuant to the Agreement and Declaration of Trust, as amended as of August 27, 1981, and in accordance with the NALC Constitution. Contributions shall be made pursuant to resolution of the NALC Executive Council in accordance with NALC Constitution.

## ARTICLE II — DEFINITIONS

**Section 1. Total Accrued Benefit** - The annual retirement benefit to which a Participant is entitled up to any date and which is payable at the later of the Participant's normal retirement date and actual retirement date in an amount computed as described in Article IV, Section 1, based on the Participant's High-Three-Year Average Pay and Creditable Service up to

the date as of which the Accrued Benefit is computed, provided however that the Participant's Accrued Benefit does not become effective until the Participant has completed one year of Creditable Service. The accrued benefit derived from Employer contributions is the total accrued benefit less the accrued benefit derived from mandatory Participant contributions, if any.

Section 2. **Annuitant** - A former Participant who is receiving, or is eligible to receive, an Annuity.

Section 3. **Annuity** - The annual amount payable to an Annuitant, or to a survivor of a Participant or Annuitant.

Section 4. **Employer** - Includes the following organizations:

(a) National Association of Letter Carriers (NALC).

(b) United States Letter Carriers Mutual Benefit Association (MBA).

(c) United States Letter Carriers National Sick Benefit Association (NSBA).

(d) National Association of Letter Carriers Health Benefit Plan (HBP); and

(e) Such other affiliated or subordinate bodies of NALC as the Trustees may declare eligible.

Section 5. **Attained Age** - The number of full years since a Participant's birth.*

Section 6. **Basic Pay** - The regular pay rate officially fixed for the position held by a Participant. It does not include allowances in addition to the regular pay, such as for overtime, bonuses, travel and cost of living allowances for which no contributions are required to be made.

Section 7. **Child** -

(a) An unmarried child under attained age 18, including:

(1) a legally adopted child; or

(2) a stepchild or recognized natural child who lived with the Participant or Annuitant, at time of death, in a regular parent-child relationship; or

---

* Attained Age increases by one year on the day before a Participant's birthday.

2

(b) Such unmarried child regardless of age who is incapable of self-support because of a disability incurred before Attained Age 18.

Section 8. **Creditable Service** - The period of time for which a Participant receives credit for purposes of determining eligibility for an Annuity and for purposes of determining the amount of annuity, as follows:

(a) Subject to Section 8(b), (c), (d), and (e) below, a Participant's Creditable Service for a Fiscal Year is equal to the greater of (1) and (2) below:

(1) One-twelfth of a year of Creditable Service for each 30 days during a Fiscal Year that a Participant is in the employ of the Employer, excluding, however, any period during which the Participant is not credited with Hours of Service under the provisions of Article II, Section 12.

(2) One full year of Creditable Service for a Fiscal Year in which a Participant completes at least 1,000 Hours of Service.

(b) Creditable Service does not include time in the employ of the United States Postal Service.

(c) Creditable Service for a Participant Officer of the Employer commences on the day of installation; for an employee, Creditable Service commences on the first day in a duty and pay status; except that in no event shall Creditable Service commence earlier than the first day for which contributions were or are required to be made to this Fund.

(d) Creditable Service shall not exceed 40 years.

(e) The provisions of this Article II, Section 8, shall apply to Participants who retire or terminate employment after June 30, 1976.

Section 9. **Fiscal Year** - The Fiscal Year of the Fund, which begins July 1 and ends June 30.

Section 10. **Fund** - The National Association of Letter Carriers Annuity Trust Fund.

Section 11. **High-Three-Year Average Pay** - The highest annual rate resulting from averaging a Participant's rates of Basic Pay in

3

effect over any 36 consecutive months of Creditable Service, with each rate weighted by the time it was in effect.

Section 12. **Hour of Service** - Each hour for which a Participant is paid, or entitled to payment, by the Employer for the performance of duties. In addition, a Participant is credited with Hours of Service, based on the Participant's previous customary service with the Employer (not to exceed either 8 hours per day or 40 hours per week), for the following periods:

(a) A period during which Participant is paid, or entitled to payment directly or indirectly by the Employer for reasons other than the performance of duties, such as layoff, sickness, disability, jury duty or vacation, provided, however, that with respect to any single continuous period of sickness or disability, the Hours of Service to be credited for the period shall not exceed the greater of (i) 501 or (ii) the number of Hours of Service credited for sick pay for such single continuous period of sickness or disability.

(b) A period of approved leave of absence without pay, provided that the Employer agrees to pay and does pay to the Fund contributions based on prevailing Basic Pay rate of the Participant.

(c) A period of leave of absence, not to exceed four years, during which the Participant performs active military service in the Armed Forces of the United States; provided the Participant makes himself available for employment within 90 days after release from active duty, discharge, or separation, or recovery from disability incurred prior to release and continuing after release.

The term "Hour of Service" also includes each hour for which back pay, regardless of mitigation of damages, is awarded or agreed to by the Employer. Each Hour of Service is credited to the computation period in which the duties were performed or, if no duties were performed, to the computation period in which no duties were performed. Further, each Hour of Service with respect to an award or agreement for back pay shall be credited to the computation period to which the back pay applies.

Section 13. **NALC Constitution** - The Constitution of the National Association of Letter Carriers.

4

Section 14. **Participant** -

(a) The following officers of the NALC except any officer installed after Attaining Age 62: President, Executive Vice-President, Vice President, Secretary-Treasurer, Assistant Secretary-Treasurer, Director of City Delivery, National Business Agents, Regional Administrative Assistants, Director of Mutual Benefit Association, Director of Health Benefit Plan, Assistant Director of Health Benefit Plan, Director of Retirement, and members of the Board of Trustees of the NALC;

(b) All employees of an Employer, except an employee who enters on duty after attaining age 62;

(c) Full-time officers, and employees of such affiliated or subordinate bodies of NALC as the Trustees may declare eligible;

(d) The officers and employees, described in paragraphs (a) through (c) who were Participants under the terms of the Fund in effect on June 30, 1976. Those who become officers or employees described in Section 14(a) and (b) after June 30, 1976, shall become Participants provided they complete 1,000 Hours of Service either during the first 12 months following employment or installation or during any Fiscal Year following employment or installation and their participation shall date from the first day of the 12-month period or Fiscal Year in which 1,000 Hours of Service is first completed.

Section 15. **Plan** - The written document containing the rules and regulations governing participation in and eligibility for benefits from the NALC Annuity Trust Fund, as same may be amended from time to time.

Section 16. **Normal Retirement Age** - The earliest of:

(a) age 62 provided the Participant has at least five years of Creditable Service;

(b) the age after age 62 at which the Participant completes five years of Creditable Service; or

(c) age 67.

5

## ARTICLE III — ELIGIBILITY FOR RETIREMENT

**Section 1. Normal Retirement -** A Participant who attains Normal Retirement Age shall be eligible for a retirement Annuity, in an amount determined as provided in Article IV, upon termination of service with the Employer. A participant's right to accrued benefit derived from mandatory participant contributions, if any, is nonforfeitable. A Participant's right to his retirement benefit as provided in Article IV shall be nonforfeitable upon Normal Retirement Age.

**Section 2. Early Retirement -**

(a) A Participant who meets either of the following combinations of age and service is eligible for a retirement Annuity, in an amount determined as provided in Article IV, upon termination of service with the Employer:

  (1) Option A - at least 20 years of Creditable Service and Attained Age 55.

  (2) Option B - at least 15 years of Creditable Service and Attained Age 60.

(b) In the case of a Participant who when employed by the Employer entered on approved leave without pay from the United States Postal Service, prior service as an employee of the Postal Service may be added to Creditable Service for the purpose of determining eligibility for one of the early retirement options (but not for determining the amount of the Annuity) within the following limits:

  (1) Opton A - up to 15 years.

  (2) Option B - up to 10 years.

**Section 3. Discontinued Service Retirement -**

(a) A Participant whose service with the Employer is involuntarily terminated,* other than by dismissal for misconduct or delinquency, after at least ten years of Creditable Service and Attained Age 50, is eligible for a discontinued service retirement Annuity in an amount determined as provided in Article IV.

(b) In the case of a Participant who, when employed by the Employer, entered on approved leave without pay from the United States Postal Service, up to five years of prior service as an employee of the Postal Service may be added to Creditable Service for the purpose of determining eligibility for discontinued service retirement (but not for determining the amount of the Annuity).

**Section 4. Disability Retirement -**

(a) A Participant with at least five years of Creditable Service who, while employed by the Employer, becomes totally disabled for useful and efficient service in the position held due to physical or mental impairment which can be expected to continue for at least one year is eligible for a disability retirement Annuity in an amount determined as provided in Article IV, upon termination of employment. Disability retirement must be approved by the Board of Trustees. The basis of such approval is the recommendation of the Participant's superior and a report of physical or mental examination by a physician designated by the Board of Trustees.

Until Attained Age 60, an Annuitant retired for disability is subject to periodic examination by a physician designated by the Board of Trustees. If, based on the report of examination, the Trustees find that the Annuitant has recovered, the Annuity shall be suspended on the last day of the sixth full month after the periodic examination on which the finding of the Trustees is based. The Annuity of a recovered Annuitant who is not reemployed by the Employer shall be resumed in the same amount commencing at Attained Age 62, or if earlier, the Annuity may be resumed at a reduced amount as provided in Section 5(b) of this Article at the time the Annuitant with sufficient creditable service attains the age necessary to qualify for an early retirement option.

**Section 5. Deferred Retirement -**

(a) A Participant who is ineligible for retirement under Sections 1 through 4 of this Article and whose employment with the Employer is terminated after at least five

---

* Involuntary termination includes, but is not necessarily limited to, termination on account of reduction in force, abolishment of position, expiration of term of office, and failure to gain re-election. A termination which, in the judgment of the Trustees, is for culpable cause involving misconduct or delinquency of the Participant, or a termination resulting from resignation for any reason, or for disability, will not qualify for discontinued service retirement.

6

7


P 0085

years of Creditable Service, is eligible for a deferred retirement Annuity at Attained Age 62 in an amount determined under the Plan provisions in effect on the date employment terminated.

(b) A Participant described in paragraph (a) whose employment with the Employer is terminated after sufficient Creditable Service to satisfy either Option A or Option B of Section 2(a) or (b) of this Article, but prior to reaching the Attained Age specified in either such Option, shall be eligible, upon thereafter reaching such Attained Age, for a retirement Annuity in an amount determined under the Plan provisions in effect on the date employment terminated, but such Annuity shall be reduced by 0.5% for each of the first 60 months by which the commencement date of Annuity precedes Attained Age 62, and 0.4% for each additional such month. Notwithstanding eligibility for a reduced Annuity under this paragraph, a Participant may elect to wait until Attained Age 62, at which time eligibility for a retirement Annuity without reduction as provided in paragraph (a) of this Section is available.

## ARTICLE IV — AMOUNT OF ANNUITY

Section 1. **Participants Continuously Employed Since February 28, 1975** - The Annuity payable to a Participant in the employ of the Employer on February 28, 1975, and employed continuously since that date, shall be the amount obtained by multiplying the High-3-Year Average pay by:

4% for each of the first ten years of Creditable Service, plus

2% for each of the next 15 years of Creditable Service, plus

1% for each year of Creditable Service in excess of 25.

The Annuity shall be limited to a maximum amount equal to 80% of the High-3-Year Average pay.*

---
* The Appendix to this document sets forth the cumulative percentages of High-3-Year Average pay applicable to various years of service.

8

Section 2. **Participants Initially Employed On or After March 1, 1975** - The Annuity payable to a Participant whose employment with the Employer began on or after March 1, 1975, shall be the amount obtained by multiplying the High-3-Year Average pay by:

3% for each of the first ten years of Creditable Service, plus

2% for each of the next fifteen years of Creditable Service, plus

1% for each of the next fifteen years of Creditable Service

The Annuity shall be limited to a maximum amount equal to 75% of the High-3-Year Average pay for 40 or more years of service.

Section 3. **Interrupted Employment** - The Annuity payable to a Participant in the employ of the Employer prior to March 1, 1975, who terminates employment and is subsequently reemployed by the Employer on or after March 1, 1975, shall be determined as follows:

(a) If the Participant had one or more years of Creditable Service prior to March 1, 1975, the Annuity shall be determined in accordance with Section 1 of this Article, provided that the Participant, upon reemployment, repays any refund of contributions as specified in Article VII, Section 3(d).

(b) If the Participant had less than one year of Creditable Service prior to March 1, 1975 or if the Participant does not repay any refund of contributions as specified in Article VII, Section 3(d), the Annuity shall be determined in accordance with Section 2 of this Article.

The Annuity payable to reemployed Annuitant shall be computed in accordance with Article VI, Section 5(b).

9

P 0086

## ARTICLE V — SURVIVOR ANNUITIES

**Section 1.  To Spouse -**

(a) Upon death of a Participant who has attained Normal Retirement Age or any Participant with at least five years of Creditable Service, the surviving spouse (if any) is eligible for an annuity of 60% of the amount of the Annuity, based on the Participant's Creditable Service, provided in Article IV.

(b) Upon death of an Annuitant, the surviving spouse (if any) is eligible for an Annuity of 60% of the Annuity being paid to the Annuitant at the time of death, provided that the spouse is one to whom the Annuitant was married for at least one year immediately preceding the Annuitant's death, or is the parent of issue by such marriage.

**Section 2.  To Children -**

(a) Upon death of a Participant with at least five years of Creditable Service, or of an Annuitant who is survived by a spouse and children, or of an Annuitant who is survived by a spouse eligible to receive an Annuity and by children (other than stepchildren acquired after retirement), each child is eligible for an Annuity of $1,000 or, if there are more than three children, an Annuity in an amount obtained by dividing $3,000 by the number of children. If the surviving spouse dies before the children's Annuity terminates, the Annuity to each child shall be increased, commencing with the first of the month following the spouse's death, to the applicable amount provided in paragraph (b) of this Section.

(b) Upon death of a Participant, with at least five years of Creditable Service, or of an Annuitant, who is not survived by a spouse eligible to receive an Annuity but is survived by children (other than stepchildren acquired by an Annuitant after retirement), each such child is eligible for an Annuity of $1,200 or, if there are more than three children, an Annuity in an amount obtained by dividing $3,600 by the number of children.

(c) When there are more than three children and the Annuity of a child terminates, the Annuity to each remaining child shall be recomputed as though the one child had never been eligible for an Annuity.

(d) Upon death of a husband and wife each of whom is either a Participant with at least five years of Creditable Service, or an Annuitant, each surviving child is eligible for concurrent annuities in amounts as provided in paragraph (b) of this Section.

## ARTICLE VI — PAYMENT OF ANNUITIES

**Section 1.  Monthly Installments -** Each annuity is payable in twelve (12) equal monthly installments, with any odd cents rounded up to the next dollar.

**Section 2.  Time of Payment -** Each installment shall be mailed on or about the tenth day of the calendar month for which it is due.

**Section 3.  Commencing Date -**

(a) An Annuity to a Participant eligible for retirement under Sections 1, 2, 3, or 4 of Article III will commence as of the first day of the calendar month following termination of employment (which is the last day of work, or, if later, the last day of paid vacation and/or sick leave), or, if earlier, the first day of the calendar month following the month in which pay stopped if on the date pay stopped the Participant was eligible to retire.

(b) An Annuity to a former Participant eligible for deferred retirement will commence as of the first day of the calendar month following attainment of the qualifying age as provided in Article III, Section 5.

(c) A survivor Annuity will commence as of the first day of the calendar month following the death of the Participant or Annuitant.

**Section 4.  Termination Date -**

(a) An Annuity to a Participant or to a surviving spouse will stop as of the last day of the calendar month in which death occurs.

(b) An Annuity to a child will stop as of the last day of the calendar month in which the child marries, attains age 18, or dies, except that if the Board of Trustees determines, based on medical evidence, that the child is incapable of

10

11

P 0087

self-support because of a disability incurred before attainment of age 18, the Annuity will stop as of the last day of the calendar month in which the child marries, is restored to an earning capacity, or dies.

Section 5. **Suspension of Payments to Reemployed Annuitants** -

(a) The payment of an Annuity to an Annuitant who has not attained age 67 or age 62 with five years of Creditable Service will be suspended for any calendar month during which the Annuitant is reemployed by the Employer and is paid or entitled to payment for at least 40 Hours of Service, provided that if the Annuitant attains age 67 or age 62 with five years of Creditable Service while so reemployed, payment of only that portion of the Annuity derived from Employer contributions will be suspended.

(b) In the case of an Annuitant who has attained age 67 or age 62 with five years of Creditable Service, the payment of that portion of the Annuity provided by Employer contributions will be suspended for any calendar month during which the Annuitant is reemployed by the Employer and paid or entitled to payment for at least 40 Hours of Service.

(c) When such Annuitant is reemployed, such Annuitant will again become a Participant and will be entitled to an Annuity upon subsequent retirement in an amount determined as provided in Section 1 or Section 2 of Article IV, whichever was applicable to the period of the Annuitant's last employment prior to the Annuitant's initial period of retirement, based on the aggregate of the reemployed Annuitant's Basic Pay and Creditable Service both before and after the period of retirement; provided, however, that such Annuity shall be reduced by the actuarial equivalent of the total payments received by the Annuitant during the initial period of retirement. For this purpose, the actuarial equivalent shall be determined based on the UP-1984 Mortality table and an interest rate of 7% compounded annually.

Section 6. **Payment to Persons Under Legal Disability** - Payment due a person who is a minor or who is adjudged incompetent or who is under other legal disability will be made to the legal guardian. If a guardian is not appointed, payment may be made to the person who, in the judgment of the Board of Trustees, is responsible for the care of the Annuitant or survivor of a Participant or Annuitant.

Section 7. **Application Required** - A Participant, former Participant, or survivor must apply, in such form as may be specified by the Board of Trustees, for Annuity payments. Application on behalf of a person who is a minor or who is mentally or physically incapacitated may be made by a relative or friend. Written notice of the disposition an application shall be furnished the applicant within a reasonable time after the application is filed. In the event the application is denied in whole or in part, the reasons for the denial shall be specifically set forth in writing.

Section 8. **Right of Review** - Any Participant, former Participant, or survivor may request the Board of Trustees to review any adverse action or decision affecting such person's rights under the Fund. Such request must be made within six months after such adverse action or decision, but for good cause the Board of Trustees may agree to consider a request not made within such six-month period. A request for review should be made in writing by the applicant or by an authorized representative to the Chairman of the Board of Trustees, National Association of Letter Carriers Annuity Trust Fund, and shall include the date and substance of the action being appealed, the reasons why review is requested, and any comments or arguments the applicant wishes to make in support of the request. The applicant may request a hearing before the Trustees. The Trustees shall render a decision on such review by the date of their first meeting following receipt of the request, except that in the event the request is received within 30 days of the meeting date, the decision shall be rendered no later than the date of the Trustees' second meeting following receipt of the request. The Trustees may, under special circumstances including, but not limited to the holding of a hearing, extend such time until the third meeting following the receipt of the request. If such an extension is made, the Trustees shall so notify the claimant.

12

P 0088

(c) (1) If a Participant who had made contributions to the Fund dies while in the employ of the Employer and leaves no survivors eligible for an Annuity under Article V, or if such a Participant dies following separation from service with the Employer while awaiting a deferred Annuity, the Participant's contributions will be refunded to the Participant's designated beneficiary with interest at the rate of 2½% per annum compounded monthly until June 30, 1976, and 5% per annum compounded annually thereafter. If no beneficiary has been designated or if the designated beneficiary is not living at the time such refund would otherwise be made, such refund of contributions shall be paid to the Participant's estate.

(2) If, by death or otherwise, entitlement to an Annuity (including a survivor Annuity) based on the service of a Participant who had made contributions to the Fund terminates before the total of all Annuities paid equals the sum of such contributions plus interest credited at the rate of 2½% per annum compounded monthly until June 30, 1976, and 5% per annum compounded annually thereafter until the day before the Annuity commenced, the unexpended balance of such sum shall be refunded to the Annuitant's designated beneficiary. If no beneficiary has been designated, or if the designated beneficiary is not living at the time such refund would otherwise be made, such refund shall be paid to the Annuitant's estate.

(d) In the event of the reemployment by the Employer of a Participant who has received a refund of contributions to the Fund, such Participant will be entitled to regain credit for prior Creditable Service with the Employer provided that, at the time of reemployment, the Fund is repaid the full amount of any such refund (including interest paid), plus interest at the rate of 5% per annum, compounded annually, from the date of such refund to the date of repayment. If such repayment is not made to the Fund, prior Creditable Service will nevertheless be counted for purposes of determining eligibility for retirement under Article III, but not for purposes of determining the amount of the Annuity.

15

## ARTICLE VII — ADDITIONAL PROVISIONS APPLICABLE TO CERTAIN PARTICIPANTS

**Section 1. Persons Entitled to Annuity Prior to December 16, 1981** - The provisions of the prior National Association of Letter Carriers Annuity Trust Fund shall govern the rights of all Participants who retired or whose employment with the Employer otherwise terminated prior to December 16, 1981, except as otherwise expressly provided in this document. Each retirement and survivor Annuity in effect prior to December 16, 1981 continues in the same amount and under the same conditions stipulated in such prior Plan, except as expressly provided in Article VI, Section 5.

**Section 2. Participants Entitled to Deferred Retirement Under Prior Plan** - A Participant whose employment with the Employer terminated prior to December 16, 1981, after at least five years of Creditable Service, whose own contributions were not refunded and who is therefore eligible for a deferred Annuity commencing at age 62, continues such entitlement in the same amount and under the same conditions as provided in the Plan as of the date of termination.

**Section 3. Participants Entitled to Refund Of Own Contributions -**

(a) If a Participant leaves the service of the Employer with less than five years of Creditable Service, and such Participant had made contributions to the Fund, such contributions will be refunded with interest credited at the rate of 2½% per annum compounded monthly until June 30, 1976, and 5% per annum compounded annually thereafter.

(b) A Participant whose employment with the Employer terminates after at least five years of Creditable service, and who had made contributions to the Fund, may not obtain a refund of such contributions, but is eligible for a deferred Annuity in accordance with Article III, Section 5.*

14

---

* The applicable percentage of High-3-Year Average pay to be multiplied by the number of years of Creditable Service is set forth in Article IV, Section 1, of this document.

**Section 4. Persons Entitled to Supplementary Insurance. -**

(a) A Participant in the employ of the Employer on February 28, 1975 (but not a Participant first employed or re-employed after that date), upon completion of two years' Creditable Service, is entitled to an individual policy purchased from the Mutual Benefit Life Insurance Company (the Company), Newark, New Jersey, in such form as is customarily issued by the Company. Premiums for this policy are paid by the Fund.

(b) The policy is provided the Participant by the Employer under all the following conditions:

  (1) Title to the policy is retained by the Fund until such time as it may be transferred pursuant to paragraph (b)(4) of this Section;

  (2) A dividend paid on the policy following the latest premium payment made by the Fund shall be paid to the Fund;

  (3) The Participant may not borrow on or surrender the policy for its cash value while title to it is retained by the Fund;

  (4) Title to the policy is transferred to the Participant on leaving the Employer's employ, except for retirement, before the policy has matured;* and

  (5) The Fund continues to pay premiums for an Annuitant retired on disability for five years from the date of retirement at which time title is transferred as in paragraph (b)(4) of this Section.

(c) Before it matures, the policy provides for a death benefit. If death occurs while title to the policy is held by the Fund and proceeds of the policy amount to less than $2,000, the Fund pays the difference between $2,000 and the amount of the proceeds.

(d) At retirement, if the policy has then matured, a minimum of $20 monthly, ten years guaranteed, is paid by the Company. Another mode of payment may be selected by the Participant under various settlement options stipulated in the policy. If the policy has not matured at retirement, the Fund pays $20 monthly, commencing the first of the month following attainment of age 60, until the policy matures, at which time the Participant may select a lifetime income or other mode of payment under various settlement options stipulated in the policy.

(e) The Employer shall pay to the Fund for each of insured Participants and Annuitants the expense incurred by the Fund for:

  (1) the gross premium payments; and

  (2) the difference between $2,000 and the amount of the insurance proceeds referred to in paragraph (c) of this Section.

## ARTICLE VIII — OTHER PROVISIONS AFFECTING BENEFITS

**Section 1. Benefits Not Assignable -** No benefit under the Fund shall in any manner or to any extent be assignable or transferable.

**Section 2. Merger, Consolidation, or Transfer of Fund Assets -** This Fund shall not be merged or consolidated with, nor shall any assets or liabilities of the Fund be transferred to, any other plan unless each Participant would be entitled to receive a benefit, in the event of termination of this Fund or its successor immediately thereafter, which is no less than the benefit such Participant would have been entitled to receive in event of termination immediately prior to any such event.

**Section 3. Annual Benefit Limit -**

(a) In compliance with the requirements of Section 415 of the Internal Revenue Code of 1954, as amended, the annual benefit payable to any Participant, excluding that portion of the benefit attributable to the Participant's own contributions (if any) shall not exceed the lesser of:

  (1) the ratio of the Participant's years of Creditable Service, not to exceed ten years, to ten years multiplied by 100% of the Participant's annual average compensation for the highest three consecutive years, and

---

* If the policy has not matured at the time of transfer, the Participant may continue the policy by paying premiums to the Company or may select a mode of settlement stipulated in the policy.

16

17

P 0090

(2) the ratio of the Participant's years of Creditable Service, not to exceed ten years, to ten years multiplied by $136,425 (the latter figure applies to calendar year 1982, and for subsequent calendar years the figure is subject to adjustment by the Secretary of the Treasury or an appointed delegate). For purposes of this paragraph, benefits will be tested by the amount of an actuarially equivalent straight life annuity for the Participant's life. This actuarial adjustment will not take into account a joint and survivor feature unless the benefit payable to the survivor exceeds the benefit payable during the lives of the Participant and spouse. In the case of a benefit which begins before Attained Age 55 such benefit shall be adjusted to the actuarial equivalent of a benefit commencing at Attained Age 55 on the basis of reasonable actuarial assumptions.

(b) The benefit limits contained in paragraph (a) of this Section will not apply if the annual benefit payable to the Participant does not exceed $10,000 multiplied by the ratio of the Participant's years of service, not to exceed ten years, to ten years.

## Section 4. Allocation of Assets Upon Termination -

(a) In the event of the termination or partial termination of the Fund, the assets of the Fund will be allocated, subject to provisions for expenses of liquidation, in the following manner and order, to the extent of the sufficiency of such assets:

(1) First, for accrued benefits derived from contributions of Participants;

(2) Second, equally for benefits in the following two categories:

(a) those benefits which were in pay status for three years prior to termination (at the lowest benefit level under the Fund during the five years prior to termination); and

(b) those benefits which would have been in pay status for three years prior to termination had the Participant been retired and benefits commenced as of the beginning of such three-year period (at the lowest benefit level under the Fund during the five years prior to termination);

(3) Third, for all other benefits under the Fund which are guaranteed under the termination insurance provisions of the Employee Retirement Income Security Act of 1974;

(4) Fourth, for all other nonforfeitable (i.e., uninsured vested) benefits under the Fund; and

(5) Fifth, for all other benefits accrued under the Fund.

(b) If the assets available for allocation under any priority category are insufficient to satisfy in full the benefits of all individuals in such category, the assets will be allocated pro rata among such individuals on the basis of the present value of their respective benefits as of the Fund's termination. To the extent funded, the rights of all Participants to benefits accrued as of the date of termination are nonforfeitable. If the assets available for allocation under subparagraph (a), above, are sufficient to satisfy in full the benefits described in such paragraph (without regard to this subparagraph), then for purposes of subparagraph (a), benefits of individuals described in such paragraphs shall be determined on the basis of the Plan as amended by the most recent Plan amendment effective during the five-year period under which the assets available for allocation are sufficient to satisfy in full the benefits of individuals described in subparagraph (a) and any assets remaining to be allocated under subparagraph (a) on the basis of the Plan as amended by the next succeeding Plan amendment effective during such period. In no event, shall the assets revert to the employer.

## Section 5. Limitations of Benefits in Case of Termination -

(a) In the event that this Fund terminates during the first ten years after its establishment, the Employer Contributions which may be used for benefits of any of the 25 highest paid employees whose anticipated Annuity under the Plan exceeds $1,500 are limited so that no further Employer Contributions can be used for any such employee's benefit only if the Employer's Contribution which may be so used

18

19

P 0091

does not then exceed whichever of the following amounts is greater:

(1) $20,000, or

(2) an amount computed by multiplying:

(a) 20% of average annual compensation, or

(b) $10,000,

whichever is the lesser, by the number of years since establishment of the Fund, and

(3) the full current costs of the Fund have then been met.

(b) In the event that benefits are substantially increased due to change by amendment, the restrictions contained in this Section will apply as of the effective date of the change by the amendment for a period of ten years, provided that the full current costs are met. In the event that the full current costs are not met at the end of the ten-year period, the restrictions will continue to apply until the full current costs for the ten-year period are funded for the first time.

Section 6. **Forfeitures** - Any forfeitures resulting from death or termination of employment will not be applied to increase the benefits any Participant would otherwise receive under the Fund.

## ARTICLE IX — AMENDMENTS

Section 1. **Authority to Amend** - The provisions of the Plan may be amended at any time by the Board of Trustees provided that the Trustees shall submit such proposed amendments to the Fund's Actuary for an evaluation and estimate of its cost, and adoption of amendments by the Trustees shall be subject to the approval of the Executive Council of the NALC.

Section 2. **Prohibited Amendments** - No amendment shall be adopted that operates to reduce the vested rights of any Participant, former Participant, or Annuitant.

20

# Appendix

## TABLE OF APPLICABLE CUMULATIVE PERCENTAGES FOR YEARS OF CREDITABLE SERVICE

*Does not apply to persons separated prior to 12-16-81, see Article VII, Section 1*

| YEARS OF CREDITABLE SERVICE AT RETIREMENT* | CUMULATIVE PERCENTAGE BENEFIT FORMULA FOR THOSE EMPLOYED ON OR BEFORE 2/28/75 | CUMULATIVE PERCENTAGE BENEFIT FORMULA FOR THOSE EMPLOYED AFTER 2/28/75 |
|---|---|---|
| 1 | 4% | 3% |
| 2 | 8 | 6 |
| 3 | 12 | 9 |
| 4 | 16 | 12 |
| 5 | 20 | 15 |
| 6 | 24 | 18 |
| 7 | 28 | 21 |
| 8 | 32 | 24 |
| 9 | 36 | 27 |
| 10 | 40 | 30 |
| 11 | 42 | 32 |
| 12 | 44 | 34 |
| 13 | 46 | 36 |
| 14 | 48 | 38 |
| 15 | 50 | 40 |
| 16 | 52 | 42 |
| 17 | 54 | 44 |
| 18 | 56 | 46 |
| 19 | 58 | 48 |
| 20 | 60 | 50 |
| 21 | 62 | 52 |
| 22 | 64 | 54 |
| 23 | 66 | 56 |
| 24 | 68 | 58 |
| 25 | 70 | 60 |
| 26 | 71 | 61 |
| 27 | 72 | 62 |
| 28 | 73 | 63 |
| 29 | 74 | 64 |
| 30 | 75 | 65 |
| 31 | 76 | 66 |
| 32 | 77 | 67 |
| 33 | 78 | 68 |
| 34 | 79 | 69 |
| 35 | 80 | 70 |
| 36 | 80 | 71 |
| 37 | 80 | 72 |
| 38 | 80 | 73 |
| 39 | 80 | 74 |
| 40 | 80 | 75 |

*For purpose of determining the amount of annuity, EXCLUDE periods of service (a) with US Postal Service and (b) for which a refund of contributions has been made by the Fund and participant declined to repay such contributions plus accrued interest at time of reemployment.

21

*notes*

*notes*

P 0093