# Exhibit 3

Halline and Paulette Overby
v.
National Association of Letter Carriers, *et al.*

Civil Action No. 06-CV-1356 (RMC/JMF)

Minutes of the

NALC Annuity Trust Fund

Held At

Opryland Hotel

Nashville, TN


April 19, 1985


Present:  Vincent R. Sombrotto, President NALC
          George R. Davis, Jr., Chairman Board of Trustees
          James G. Souza, Trustee
          James E. Worsham, Trustee
          Karl Sennewald, Assistant Administrator
          Lynn B. VanDercook, of the Wyatt Company, Actuary
          Tamson Milton, of the Wyatt Company, Actuary
          Robert J. Buntz, Director, NALC Health Benefit Plan
          Harry D. Boteler, Administrator, NALC Health Benefit Plan
          Gary Lake, of The Wyatt Company, Actuary, NALC Health
              Benefit Plan
          Maurice S. Whalen, of Alexander Grant & Company, CPA
          Ronald W. Deener, of Alexander Grant & Company, CPA
          Norman A. Carl, of First American Bank, Investment Adviser
          Donald Turk, of First American Bank, Investment Adviser
          Richard D. Fitzgerald, of First American Bank
          Bruce H. Simon, of Cohen, Weiss & Simon, General Counsel
          Jani K. Rachelson, of Cohen, Weiss & Simon, General Counsel


1. The meeting was called to order at 9:05 a.m.

2. The minutes of the prior meeting held on December 10, 1984, were approved as read.

3. President Sombrotto reviewed the pending question of benefit improvements to 3½% of the High-3-Year Average pay for each of the first ten years of Creditable Service for participants hired on or after March 1, 1975. After discussion, based on the Actuary's advice that such improvement was affordable within the Fund's current contribution rate, the improvement was approved effective for retirements and terminations on or after April 19, 1985, subject to the Executive Council's approval on May 15-16. Further study was requested of additional improvement to 4%.

P 0324

-1-

4. Mr. VanDercook discussed possible decreases in the current contribution rates even after the above mentioned benefit improvement. However, the President and the Trustees agreed to maintain the current employer contribution figures, in the interest of prudence.

5. Mr. VanDercook also reviewed the pending question of the method to be used to value the Fund's assets in the annual actuarial valuation. Following discussion of possible alternatives, it was agreed to continue the current method which uses market value with adjustments to smooth out market fluctuations.

6. Mr. VanDercook and Ms. Milton discussed recently issued final regulations regarding top heavy pension plans and the distribution of assets upon the termination of pension plan. They will recommend amendments to the Pension Plan if any are necessary to comply with these Regulations.

7. Ms. Milton and Ms. Rachelson discussed the impact on the Plan of the Retirement Equity Act ("REA") and the following changes that would be required.

    a. It was noted that Article V, Section 1(b) of the Plan currently provides that the spouse's survivor annuity is payable upon the Annuitant's death to the spouse at the time of death, while under REA the annuity must be payable to the spouse who was married to the Annuitant for the year prior to the annuity starting date. If the marriage took place within the year before the annuity starting date, however, REA provides for payment to that spouse, provided the spouse and the Annuitant were married at least one year before the Annuitant's death. Accordingly, a motion was approved amending the Plan to delete the current one year before death rule and to replace it with the REA one year before annuity commencement rule, suject to the exception noted above for marriages within that year.

    b. Ms. Milton explained that the current Plan does not provide a survivor's benefit to the spouse of a terminated vested Employee who dies. Under REA, the Plan must provide survivor benefits in this situation, although the statutorily required benefit is less than the survivor annuity now provided by the Plan. Thus, the Plan could provide the spouses of terminated vested employees with 50% survivor benefits (rather than 60% as currently provided under the Plan to spouses of active

P 0325

-2-

employees who die), commencing immediately upon the death of the employee or deferred to when the employee would have reached an eligible retirement age, and the Plan can charge for the additional survivor's benefit by way of an actuarial reduction. The Actuaries advised that the cost of providing the maximum survivor benefit to the terminated vested Employee, i.e. 60% commencing immediately, is estimated at .1% of payroll. Accordingly, following discussion, it was agreed to provide the 60% survivor annuity to the spouses of terminated vested employees death with no actuarial reduction.

c. Ms. Rachelson advised the Trustees that under ERISA, a plan can provide that if the present value of an annuity payable to either a participant or a survivor is equal to $1750, the plan can automatically pay out the lump sum present value without the participant's or the spouse's consent. REA increased the limit to $3500. Following discussion it was agreed to adopt the involuntary $3500 cash out rule.

d. Ms. Rachelson also noted that, as had previously been explained, REA provides for payments to persons other than the participant or employee pursuant to "qualified domestic relations order" and requires a plan to adopt procedures for handling QDRO's. Accordingly, it is necessary to amend Article VIII, Section 1 of the Plan, which prohibits the assignment or alienation of Plan benefits, to make an exception for Qualified Domestic Relations Order. Ms. Rachelson advised that she is preparing guidelines for adoption, and that pending their adoption, the Assistant Administrator should refer any domestic relations orders to her office.

The foregoing amendments, a copy of which is attached as Exhibit "A", were all adopted subject to approval by the Executive Council on May 15-16, 1985.

8. Mr. Carl distributed the Bank's report for the period since the Board's last meeting, containing the Bank's views on the economy and the current status of the Fund's investments. Mr. Turk reviewed the current business outlook and discussed the current portfolio and investment performance over the prior 9 months. He indicated that he wanted to extend maturities slightly because he foresees rates coming down with lower inflation, although the resulting maturities would remain with the current guidelines. After discussion, the investment recommendations were approved. Copies of the

-3-

P 0326

Maturity Schedule and Investment Performance report, as well as the Investment Recommendations are attached hereto as Exhibits B and C respectively.

9. Mr. Whalen advised that effective January 2, 1985, the Washington office of Fox & Company had withdrawn from Fox & Company and had become partners in Alexander Grant & Company. The same principal partners will continue to service the Fund, with the additional resources provided by the larger Alexander Grant. A copy of a letter from Mr. Whalen is attached to these minutes as Exhibit D.

10. Mr. Deener reviewed the results of the audit of the Plan and discussed the recommendations set forth in the management letter. These included a higher level of review of annuity applications, more formal filing process and a signature verification program for annuity check. The Actuaries were requested to prepare an administrative procedure for use by the Assistant Administrator.

11. Mr. Sennewald reviewed the benefits paid in the first nine months of the fiscal year. As of March 30, 1985 there were 99 retirees compared to 92 on June 30, 1984. He also reviewed the investment income for the first nine months.

12. There being no further business, the meeting was adjourned at 10:55 a.m.

RESOLUTION

AMENDMENTS TO NALC ANNUITY TRUST FUND

1. Amend Article IV, Section 2 by substituting 3½% for 3%.

2. Amend the proviso clause of Article V, Section 1(b) to state:

    "provided that the spouse is one to whom the Annuitant was married for at least the year immediately preceding and ending on the Annuitant's annuity commencement date. Notwithstanding the foregoing, if the Annuitant and the spouse were married within the year before the annuity commencement date and were married for at least one year ending on or before the Annuitant's death, that spouse shall be paid the Survivor Annuity as if the spouse and the Annuitant had been married for the year ending on the annuity commencement date."

3. Amend Article V, Section 1 by the addition of a new Subsection (c) to read as follows:

    (c) Upon death of a former Participant with at least five years of Creditable Service who is not an Annuitant the surviving spouse (if any) is eligible for an annuity of 60% of the amount of the Annuity to which the Participant would have been entitled had he or she attained age 62, based on his or her Creditable Service, provided in Article IV.

P 0328

Exhibit A

4. Amend Article VI, Section 1 by making the current Section 1 subsection (a) and by adding a new subsection (b) as follows:

> (b) In the event the present value of an annuity payable to an Annuitant or a surviving spouse is $3,500 or less, the entire present value may be paid to the Annuitant or Spouse at the Administrator's sole discretion without the consent of the Annuitant or spouse. For this purpose, the present value of the annuity shall be determined as of the date of distribution and by using the interest rate which would be used (as of the date of the distribution) by the Pension Benefit Guarantee Corporation for purposes of determining the present value of a lump sum distribution on plan termination.

5. Amend Article VIII, Section 1 by the addition of the following sentence:

> Notwithstanding the foregoing, the Plan shall honor Qualified Domestic Relations Orders, as provided in Section 206(d) of the ERISA, as amended by the Retirement Equity Act.

6. Amend Article VIII, Section 5 to comply with recently issued regulations governing limitations of benefits in case of plan terminations.

P 0329

MATURITY SCHEDULE
MARCH 31, 1985
NATIONAL ASSOCIATION OF LETTER CARRIERS
ANNUITY TRUST FUND

|  | Par Value | Percentage of Portfolio | Guidelines |
|---|---|---|---|
| 0-5 years | $15,442,348 | 48.1% | 25-50% |
| 5-10 years | 7,450,000 | 23.2% | 25-50% |
| 10-30 years | 9,238,114 | 28.7% | 25-50% |
|  | $32,130,462 | 100.0% | 100% |

Investment Performance
3 Months Ending 3/31/85

| | |
|---|---|
| Market Value of Securities 3/31/85 | $30,719,565.06 |
| Market Value of Securities 12/31/84 | 29,789,248.36 |
| | 930,316.70 |
| Less: Net New Funds Added During Period | 309,207.88 |
| Net Investment Gain | $ 621,108.82 |
| Total Rate of Return | +2.1% |

Investment Performance
9 Months Ending 3/31/85

| | |
|---|---|
| Market Value of Securities 3/31/85 | $30,719,565.06 |
| Market Value of Securities 6/30/84 | 26,012,019.14 |
| | 4,707,545.92 |
| Less: Net New Funds Added During Period | 942,339.75 |
| Net Investment Gain | $ 3,765,206.17 |
| Total Rate of Return | +14.2% |

P 0330

INVESTMENT RATIOS - 3/31/85

|  | Market Value | % of Total | Income Yield | Estimated Annual Income |
|---|---|---|---|---|
| Corporate Bonds | $11,275,587.50 | 36.7% | 11.15% | $1,257,025 |
| Government Securities | 13,396,248.46 | 43.6% | 11.76% | 1,575,468 |
| Certificates of Deposit | 4,993,380.15 | 16.3% | 13.11% | 654,750 |
| Cash Reserves | 1,054,348.95 | 3.4% | 8.72% | 91,908 |
|  | $30,719,565.06 | 100.0% | 11.65% | $3,579,151 |

### Securities Maturing through 6/30/85

| | |
|---|---|
| $1,000,000 | United Technologies Corp. Notes 9% due 4/15/85 |
| $1,000,000 | Northwestern National Bank Certificate of Deposit 12.5% due 5/7/85 |
| $1,000,000 | U. S. Treasury Notes 14% due 6/30/85 |

### Investment Recommendations

A.  Reinvest all maturing securities in accordance with maturity guidelines.

B.  Apply all net cash flow to trust in accordance with maturity guidelines.

P 0331

EXHIBIT C


**Alexander Grant**
& COMPANY
CERTIFIED PUBLIC ACCOUNTANTS

MEMBER FIRM
GRANT THORNTON INTERNATIONAL

April 18, 1985

Vincent Sombrotto, President
National Association of Letter Carriers,
   Annuity Trust Fund
100 Indiana Avenue, N.W.
Washington, DC  20001

Dear Mr. Sombrotto

    Confirming our previous discussions, the Washington, D.C. practices of Fox & Company and Alexander Grant & Company have been combined effective January 2, 1985.  Earl L. Becraft, Jr., Harvey J. Berger, Ronald W. Deener, Christl Kasler, Stephen R. Leser, Gerhard S. Wolff and Maurice J. Whalen, formerly partners of Fox & Company have been admitted as partners of Alexander Grant & Company and Maurice J. Whalen has been appointed Managing Partner of the combined Washington, D.C. offices.

    Other than the change of name to Alexander Grant & Company, there will be no significant change in our local practice or approach to serving clients.  The physical combination of our offices will take place in June and until then we will maintain offices at 1220 - 19th Street, N.W. and 2000 L Street, N.W.

    Fox & Company will merge with Alexander Grant & Company nationally effective May 1, 1985.

    Alexander Grant & Company, headquartered in Chicago, is the 11th largest accounting firm in America with 59 offices, 326 partners and over 3,000 employees.  Internationally Alexander Grant is a member firm of Grant Thornton International.

    If you have any questions or require any additional information, please let me know.

    We deeply appreciate the loyal support of all of our clients and look forward to continuing to provide you with superior service for many years to come.

                                          Sincerely,

                                          ALEXANDER GRANT & COMPANY

                                          Maurice J. Whalen

MJW:lmf

P 0332

Exhibit D

2000 L STREET, N.W.  WASHINGTON, D.C. 20036  (202) 296-7800