# EXHIBIT 1

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x

HALLINE AND PAULETTE          :
M. OVERBY,

     Plaintiffs,          :

vs.                           : Case No.
                                     06-CV-1356 (RMC)
NATIONAL ASSOCIATION OF LETTER :
CARRIERS, NATIONAL ASSOCIATION
OF LETTER CARRIERS ANNUITY    :
TRUST FUND, WILLIAM H. YOUNG,
AND BOARD OF TRUSTEES OF THE
NATIONAL ASSOCIATION OF LETTER :
CARRIERS ANNUITY TRUST FUND,

     Defendants.          :

- - - - - - - - - - - - - - - - x

             March 14, 2008

             Washington, D.C.

DEPOSITION OF:

          RICHARD LAFOLLETTE

Was called for examination by counsel for the Plaintiffs, pursuant to notice, in the offices of, Nixon Peabody, 401 9th Street, N.W., Suite 900, Washington, D.C., commencing at 12:54 p.m., before Carolyn Friend, a Notary Public in and for the

Page 38

1    A    By -- via correspondence.
2    Q    And do you recall instances where you
3  have denied applications?
4    A    The actual application itself, no.
5    Q    How about applications for -- does that
6  include applications for survivor benefits?
7    A    I think maybe two or three times has
8  someone called up in reference to survivor benefits
9  and I have sent them -- maybe two times a
10 correspondence stating the rules and regulations.
11   Q    Stating that they didn't qualify under
12 the rules and regulations?
13   A    That's correct. It might be one time.
14 It is -- and this was after the death of a spouse.
15   Q    Do you recall who that was?
16   A    Ms. Johnson.
17   Q    The wife of Gustave Johnson?
18   A    Yes.
19   Q    What do you recall happening there?
20   A    At that point, my interpretation of the
21 rules as they were currently in 1999, I was advised
22 that in further reading, further research of the

Misty Klapper & Associates
703-780-9559

Page 39

1  rules that existed when Gus Johnson retired, and at
2  that point, sent a reversal letter stating -- due to
3  the fact that Mr. Johnson had retired way back.
4    Q    Mr. Johnson had a wife to whom he was
5  married at the time of retirement and then he had
6  remarried after his retirement?
7        MS. HARGROVE: Objection.
8        BY MR. BRUCE:
9    Q    Is that correct? There were two -- there
10 was the current spouse and a former spouse, correct?
11   A    The current spouse, to be honest with
12 you, I don't -- I can't confirm that.
13   Q    Do you remember sending a letter denying
14 benefits to a spouse of Gustave Johnson?
15   A    Yes.
16   Q    And --
17   A    I do know that -- it might not have been
18 in written form. I do remember talking to the
19 spouse of Gustave Johnson.
20   Q    There is a spouse of Gustave Johnson who
21 is still receiving benefits, correct?
22   A    Yes, sir.

Misty Klapper & Associates
703-780-9559

Page 40

1    Q    So she was the spouse at the time of his
2  death, she's the one who receives the benefits?
3    A    Yes.
4    Q    So do you recall ever denying a survivor
5  benefit to the spouse at the time of death?
6        MS. HARGROVE: Objection.
7        THE WITNESS: The Johnson case comes to
8  my mind.
9        BY MR. BRUCE:
10   Q    You denied the benefit to the spouse at
11 the time of death and then you reversed the position
12 and granted it?
13   A    Yes.
14   Q    Any other instances where the spouse at
15 the time of death was denied a survivor benefit?
16   A    I can't recall. I do know that case, but
17 I can't recall the others.
18   Q    So --
19   A    There's others.
20   Q    Have you been able to determine whether
21 there are any surviving spouses who were -- who were
22 not married to the participant at the time when

Misty Klapper & Associates
703-780-9559

Page 41

1  benefits commenced who are currently receiving
2  survivor's benefits?
3        MS. HARGROVE: Objection.
4        THE WITNESS: I have done no study.
5        BY MR. BRUCE:
6    Q    You have not looked into that?
7    A    No.
8    Q    And when Ms. Queen was in charge of
9  reviewing applications, do you know whether
10 Mr. Sennewald had the same responsibilities as you
11 or whether she, in fact, would make the
12 determinations?
13   A    The assistant administrators always make
14 the determinations.
15   Q    Have you ever talked with Mr. Sennewald
16 about whether he made those determinations?
17   A    No.
18   Q    So what is your information that the
19 assistant administrators always made those
20 determinations based on? That's your understanding
21 from the grapevine?
22   A    My understanding is the clerks would make

Misty Klapper & Associates
703-780-9559