# EXHIBIT 3

Halline Overby v. National Association of Letter Carriers          Jani Rachelson
March 11, 2008

Page 1

```
 1   UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF COLUMBIA
 2   Case No. 06-CV-1356(RMC)
     -----------------------------------X
 3   HALLINE and PAULETTE M. OVERBY,

 4                   Plaintiffs,

 5      -against-

 6   NATIONAL ASSOCIATION OF LETTER CARRIERS, NATIONAL
     ASSOCIATION OF LETTER CARRIERS ANNUITY TRUST FUND,
 7   WILLIAM H. YOUNG and BOARD OF TRUSTEES of the NATIONAL
     ASSOCIATION OF LETTER CARRIERS ANNUITY TRUST FUND,
 8
 9                   Defendants.
     -----------------------------------X
10              110 William Street
                New York, New York
11
                March 11, 2008
12              1:00 p.m.
13
14
15       EXAMINATION BEFORE TRIAL, of a Witness, JANI K.
     RACHELSON, held at the above-mentioned time and place
16   before Allison Lander, a Certified Shorthand Reporter
     and a Notary Public of the State of New York.
17
18
19
20
21
22
23
24          PRIORITY-ONE COURT REPORTING, INC.
                    899 Manor Road
25           Staten Island, New York 10314
                   (718) 983-1234
```

Page 54

1 originally paragraph 2 and would now be renumbered as
2 paragraph 4?
3   A. That seems right.
4   Q. And the way that this change goes is it says for
5 this purpose the present value of the annuity shall be
6 determined as of the date of distribution and by using
7 the interest rate which would be used as of the date of
8 distribution by the pension benefit guarantee
9 corporation for purposes of and then you go over to the
10 left-hand side of the page of determining the present
11 value of lump sum distribution and plan?
12   A. Terminations.
13   Q. And then on page -- on Exhibit 21 the first page, it
14 says additional changes dictated to Barbara at NALC?
15   A. Correct.
16   Q. Who was Barbara?
17   A. Legal secretary for Bruce Simon and Keith.
18   Q. But she worked out of the NALC?
19   A. She was an employee of the NALC.
20   Q. On the second page of Exhibit 21 it has language
21 which concerns the one-year marriage rule?
22   A. Yup.
23   Q. And do you want to read that?
24   A. Amend the proviso clause of article 5 section 1B
25 to state colon quote provided that the spouse is one to

Page 55

1 whom the annuitant was married for at least the year
2 immediately proceeding and ending on the annuitant's
3 annuity commencement date, notwithstanding or forgoing
4 if the annuitant had married the spouse within one year
5 before the annuity commencement date and was married for
6 at least one year ending on or before the annuitant's
7 death, that spouse shall be paid the survivor annuity
8 as if the spouse and the annuitant had been married for
9 the year period on the annuity commencement date.
10   Q. And, the first page indicates that you had a
11 conversation with Ms. Milton on May 15 of 1985 and one
12 of the subjects of that conversation was the one year
13 before marriage rule or the one-year marriage rule,
14 correct?
15   A. Yes.
16   Q. And then the second and third pages are a draft
17 amendment related to the one-year marriage rule?
18   A. Correct.
19   Q. And do you have any way of knowing whether that
20 was drafted on May 15, 1985 or sometime after that?
21   A. It seems to have been drafted on May 15.
22   Q. Why would you conclude that?
23   A. It says additional changes dictated to Barbara.
24   Q. Then the fourth page has two other changes which
25 correspond with the changes indicated on the first page

Page 56

1 that there was a change to amend article four section
2 two by substituting three and a half percent for three
3 percent?
4   A. Yes.
5   Q. And then what would be the sixth amendment would be
6 to amend article, is that eight?
7   A. It looks like it.
8   Q. Eight section five with respect to limitation of
9 benefit and in case of plan termination in order to
10 comply with recently issued regulations?
11   A. Yes.
12   Q. Exhibit 22, can you identify what Exhibit 22 is?
13   A. It is a cover letter dated June 12, 1985 from me
14 to Vincent Sombrotto enclosing a proposed set of minutes
15 for the April 19, 1985 trustees meeting and attached set
16 of minutes.
17   Q. On page two of the attached set of notes it says
18 that Ms. Milton and Ms. Rachelson discussed the impact
19 on the plan of the retirement equity act and the
20 following changes that would be required, so this
21 doesn't indicate that Mr. Vandercook discussed those
22 changes?
23         MS. HARGROVE: Objection.
24   A. Right.
25   Q. Do you recall what part of this discussion you

Page 57

1 handled?
2   A. No.
3   Q. It says it was noted that article five section 1B
4 of the plan currently provides that the spouse's
5 survivor annuity is payable upon annuitant's death to
6 the spouse at time of death, does that refresh your
7 recollection as to who or how that was noted?
8   A. No.
9   Q. The last sentence in that paragraph A, it says
10 accordingly a motion was approved amending the plan to
11 delete the current one year before death rule and to
12 replace it with the REA one year before annuity
13 commencement rule, your handwritten notes of the meeting
14 indicate approval of a motion?
15   A. Yeah.
16   Q. Where does it indicate approval?
17   A. Right here, it says motion, isn't this the same,
18 motion?
19   Q. Where does it indicate approval motion?
20   A. That's what I mean when I said a motion. These
21 are my notes, that's what it means.
22   Q. So you have a recollection that there was a
23 motion that was approved; is that correct?
24   A. I have no recollection, these notes say that this
25 motion, that's how I would have noted it.