# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT COLUMBIA

| | |
|---|---|
| HALLINE OVERBY and ) | |
| PAULETTE M. OVERBY, ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| NATIONAL ASSOCIATION OF LETTER ) | Case No. 06 CV-1356 (RMC) |
| CARRIERS, NATIONAL ASSOCIATION ) | |
| OF LETTER CARRIERS ANNUITY ) | |
| TRUST FUND, WILLIAM H. YOUNG, ) | |
| and BOARD OF TRUSTEES of the ) | |
| NATIONAL ASSOCIATION OF LETTER ) | |
| CARRIERS ANNUITY TRUST FUND, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## PLAINTIFFS' PROPOSED CONCLUSIONS OF LAW

Stephen R. Bruce (D.C. Bar No. 289066)
Allison C. Pienta (D.C. Bar. No. 494372)
805 15th St., NW, Suite 210
Washington, DC 20005
Telephone: (202) 371-8013
Facsimile: (202) 371-0121

Attorneys for Plaintiffs

# Table of Contents

Summary of Conclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Identities of Parties, Jurisdiction and Standard of Review . . . . . . . . . . . . . . . . . . 2

I.    ERISA's Permissible One-Year Marriage Rule . . . . . . . . . . . . . . . . . . . . . . 3

II.   Claim 1: ERISA's Anti-Cutback Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  Claim 2: Ineffective Adoption of Amendment. . . . . . . . . . . . . . . . . . . . . 12

IV.   Claim 3: Ineffective Amendment Without Summary of Material
      Modification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.    Claim 4: The Untimely and Misleading Summary Plan Description. . . . 18

VI.   Claim 5: No Disclosure of Ways to Protect the Surviving Spouse's
      Benefit as Required by *Eddy v. Colonial Life*. . . . . . . . . . . . . . . . . . . . . 26

VII.  Motion for Attorneys' Fees under Rule 54(d)(2). . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allison  v. Bank One-Denver*, 289 F.3d 1223 (10th Cir. 2002) ................... 12

*Amara v. CIGNA*, 534 F. Supp. 2d 288 (D.Conn. 2008) ........................... 18

*Arakelian v. National Western Life Insurance*, 724 F. Supp. 1033
    (D.D.C. 1989) ..................................................................... 6-7

*Baker v. Lukens Steel Co.*, 793 F.2d 509 (3d Cir. 1986) ........................... 17

*Becker v. Weinberg Group, Inc.*, 2008 U.S. Dist. LEXIS 40545
    (D.D.C. May 21, 2008) ........................................................ 28

*Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292
    (3d Cir. 1993) .................................................................... 23

*Boggs v. Boggs*, 520 U.S. 833 (1997) ........................................... 4

*Bufco Corp. v. NLRB*, 147 F.3d 964 (D.C. Cir. 1998) .............................. 14

*Burke v. Kodak,* 336 F.3d 103 (2d Cir. 2003), *cert. denied*, 540 U.S.
    1105 (2004) ..................................................................... 22

*Burstein v. Retirement Account Plan for Allegheny Health, Ed. and*
    *Resources Fdn.*, 334 F.3d 365 (3d Cir. 2003) ....................................... 19

*Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004) ............... 8-9

*Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032
    (2d Cir. 1985), cert. denied, 475 U.S. 1012 (1986) .............................. 17

*In re Chelsea Exchange Corp.*, 159 A. 432 (Del. Ch. 1932) ..................... 13

*Chisholm v. Plan Administrator of Joint Industry Boad of Electrical*
    *Industry Benefit Funds*, 2004 WL 3267292 (E.D.N.Y. 2004) .......... 21-22

*Confer v. Custom Engineering*, 952 F.2d 41 (3d Cir. 1991) ...................... 12

*Corley v. Hecht Co.*, 530 F. Supp. 1155 (D.D.C. 1982) ........................... 23

*Costantino v. TRW*, 13 F.3d 969 (6th Cir. 1994) ........................................... 7

*Counts v. Kissack Water and Oil*, 986 F.2d 1322 (10th Cir. 1993) ............. 7

*Curtiss-Wright v. Schoonejongen*, 514 U.S. 73 (1995) .............................. 12

*Custer v. Murphy Oil*, 503 F.3d 415 (5th Cir. 2007) ................................. 16

*Danti v. Lewis*, 312 F.2d 345 (D.C. Cir. 1962) ........................................... 20

*Depenbrock v. CIGNA*, 389 F.3d 78 (3d Cir. 2004) ................................... 12

*Drennan v. GM*, 977 F.2d 246 (6th Cir. 1992) ........................................... 25

*Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747 (D.C. Cir. 1990) ........... *passim*

*Eddy v. Colonial Life Ins. Co.*, 59 F.3d 201 (D.C. Cir. 1995) .............. 23, 28

*Edwards v. State Farm Mutual Automobile Ins. Co.*, 851 F.2d 134
     (6th Cir. 1998) ...................................................................... 19, 25

*Federal Express Corp. v. Holowecki*, 128 S. Ct. 1147 (2008) .................... 8

*Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006) .......................... 10, 16

*Gennamore v. Buffalo Sheet Metals, Inc. Pension Plan*, 568 F. Supp. 931
     (W.D.N.Y. 1983) ............................................................................ 28

*Genter v. Acme Scale & Supply*, 776 F.2d 1180 (3d Cir. 1985) ................ 24

*Germany v. Operating Engineers Trust Fund*, 789 F. Supp. 1165
     (D.D.C. 1992) ................................................................................. 23

iii

*Goodin v. Innovative Technical Solutions, Inc.*, 489 F. Supp. 2d 1157 (D. Hawaii 2007) ................................................................ 7

*Hall v. National Railroad Passenger Corp., __F.Supp.2d__*, 2008 WL 2437042 (D.D.C. June 18, 2008) ............................................ 6

*Holt v. Winpisinger*, 811 F.2d 1532 (D.C. Cir. 1987) ................................. 3

*James v. Pirelli Armstrong Tire*, 305 F.3d 439 (6th Cir. 2002) ................. 25

*Jordan v. Federal Express*, 116 F.3d 1005 (3d Cir. 1997) ........................ 23

*Kaszuk v. Bakery & Confectionary Union Pension Fund*, 791 F.2d 548 (7th Cir. 1986) ........................................................ 24

*Kiefer v. Ceridian Corp.*, 976 F. Supp. 829 (D.Minn. 1997) ................. 7, 10

*Kiser v. Huge*, 517 F.2d 1237 (D.C. Cir. 1974) ......................................... 20

*Klecher v. Metropolitan Life Insurance Co.*, 2003 WL 21314033 (S.D.N.Y.2003) ........................................................................ 20

*Krohn v. Huron*, 173 F.3d 542 (6th Cir. 1999) ......................................... 25

*Leckey v. Stefano*, 501 F.3d 212 (3d Cir. 2007) ....................................... 10

*Leonard v. Drug Fair*, 1980 U.S. Dist. LEXIS 17855 (D.D.C. 1980) ........ 15

*Lettrich v. J.C. Penney Co.*, 213 F.3d 765 (3d Cir. 2000) ........................ 18

*Lewandowski v. Occidental Chemical Corp.*, 986 F.2d 1006 (6th Cir. 1993) ........................................................................ 25

*Lewis v. Atlantic Research Corp.*, 1999 WL 701383 (W.D. Va. 1999) ........ 5

*Long Island Care at Home v. Coke*, 127 S. Ct. 2339 (2007) ...................... 8

*Martin v. Marriott Corp.*, 1992 WL 84902 (D.D.C. 1992) ........................ 17

*McAuley v. IBM*, 165 F.3d 1038 (6th Cir. 1999)  ........................................ 25

*National Cable & Telecom. Ass'n v. Brand X Svcs.*, 545 U.S. 967 (2005) ...  8

*Nichols v. Asbestos Workers Pension Plan Trustees*, 835 F.2d 881 (D.C. Cir. 1987) ...........................................................................  6

*Plumbers & Steamfitters Local 530 Annuity Fund v. Shaffer*, 457 F. Supp. 954 (W.D. Pa. 1978) ......................................................  13

*Production & Maintenance Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397 (7th Cir. 1992) ............................................................  10

*Randazzo v. Federal Express Corp. Long Term Disability Plan*, 2000 WL 20698 (S.D.N.Y. 2000) ...............................................................  20

*Risteen v. Youth for Understanding, Inc.*, 2003 WL 22011766 (D.D.C. 2003) ...........................................................................................  28

*Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735 (1996) ...................  8

*Smith v. National Credit Union*, 36 F.3d 1077 (11th Cir. 1994) ................  13

*Stanton v. Fowler Trucking*, 52 F.3d 723 (8th Cir. 1995) .........................  16

*Stewart v. NEA*, 471 F.3d 169 (D.C. Cir. 2006) ..........................................  6

*United States v. Pitts*, 918 F.2d 197 (D.C. Cir. 1990) ...............................  15

*Wagener v. SBC Pension Benefit Plan*, 407 F.3d 395 (D.C. Cir. 2005) .......  3

*Washington v. Murphy Oil*, 497 F.3d 453 (5th Cir. 2007) .........................  20

*Whiteman v. Graphic Communications Int'l Union Supplemental Retirement and Disability Fund*, 871 F. Supp. 465 (D.D.C. 1994) . 19, 23

*Winterrowd v. American General Annuity Ins. Co.*, 321 F.3d 933 (9th Cir. 2003) .......................................................................................  12

# FEDERAL STATUTES, REGULATIONS, RULES AND
# LEGISLATIVE HISTORY

ERISA §102, 29 U.S.C. §1022 ........................................ 1-2, 15-16, 18-19

ERISA §104, 29 U.S.C. §1024 ........................................... 1-2, 18

ERISA §107, 29 U.S.C. §1027 ................................................ 16

ERISA §204(g), 29 U.S.C. §1054(g) .................................... *passim*

ERISA §205(a), 29 U.S.C. §1055(a) ........................................ 3

ERISA §205(d), 29 U.S.C. §1055(d) ........................................ 5

ERISA §205(f), 29 U.S.C. §1055(f) ........................................ 5

ERISA §209, 29 U.S.C. §1059 ............................................. 16

ERISA §402(a)(1), 29 U.S.C. §1102(a)(1) ............................. 1, 12

ERISA §404(a)(1), 29 U.S.C. §1104(a)(1) ................................. 2

ERISA §502(a), 29 U.S.C. §1132(a) ....................................... 16

ERISA §502(e)(1), 29 U.S.C. §1132(e)(1) ................................ 16

ERISA §502(g), 29 U.S.C. §1132(g) ....................................... 28

29 C.F.R. 2520.102-2(a) .................................................. 19

29 C.F.R. 2520.102-2(b) ............................................... 17, 19

29 C.F.R. 2520.102-3(l) .................................................. 19

29 C.F.R. 2520.104b-2(b) ................................................ 18

29 C.F.R. 2520.104b-3 ................................................... 17

vi

Treas. Reg. 1.401(a)-11(d)(3) ............................................................... 5

Treas. Reg. 1.411(d)-4 ...................................................................... 9-10

Employee Retirement Income Security Act of 1974, P.L. 93-406 ............ 3, 5

Retirement Equity Act of 1984, P.L. 98-397 ............................................ 3-7

H. R. Rep. No. 93-533, reprinted in 1974 U.S.C.C.A.N. 4639 .................. 20

S. Rep. 98-575, reprinted in 1984 U.S.C.C.A.N. 2547 ................................ 4

Fed. R. Civ. P. 54(d)(2) ............................................................................ 28

**Summary of Conclusions**

Plaintiffs respectfully request that the Court adopt the following Conclusions of Law based on the law and application of the law to the facts adduced at trial. A summary of Plaintiffs' proposed conclusions of law is included below:

A.     The elimination of eligibility for the survivor annuity based the one-year-of-marriage-at-death rule violated the "anti-cutback" protection in ERISA §204(g), 29 U.S.C. §1054(g), against reductions in accrued benefits;

B.     The amendment to the survivor annuity rule was not properly adopted by the Board of Trustees of the Annuity Trust Fund or the NALC's Executive Council in accordance with ERISA §402(a)(1), 29 U.S.C. §1102(a)(1), and applicable case law;

C.     Plaintiffs did not receive an ERISA-required Summary of Material Modification about the change in the survivor's annuity rule on a timely basis, nor did the Plan administrator ever distribute one that was written in a manner calculated to be understood by the average plan participant, as required by ERISA §102 and §104, 29 U.S.C. §1022 and §1024;

D.     The Summary Plan Description for the Annuity Trust Fund distributed in or around March of 2001 was untimely and it does not describe the

1

change in the eligibility rules in a manner calculated to be understood by the average plan participant in violation of ERISA §102 and §104, 29 U.S.C. §1022 and §1024. In fact, the 2001 SPD leads participants like the Overbys to believe that they are eligible for the survivor annuity; and

E.      The Plan administrator failed to fulfill his fiduciary duty to provide the Overbys with notice of the change in the survivor annuity rule before Mr. Overby retired so they could conform with the new rule, as required by ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), and *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747 (D.C. Cir. 1990).

A ruling in favor of the Plaintiffs on any one of these five claims is sufficient to grant relief to the Plaintiffs.

**Identities of Parties, Jurisdiction and Standard of Review.**

1.      The Plaintiffs are Mr. Halline Overby and his wife, Paulette Overby. The Defendants are the NALC, the NALC Annuity Trust Fund, the current NALC President, Mr. William H. Young, who also serves as Plan administrator, and the Board of Trustees of the NALC Annuity Trust Fund.  The Plan administrator and the Board of Trustees are responsible for the administration of the Annuity Trust Fund.

2.      This Court has jurisdiction over the subject matter of this action

2

pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. §1132(e)(1), and 28 U.S.C. §1331.

3.      If an ERISA Plan or fiduciary takes an action against a participant or

beneficiary that is inconsistent with the plain terms of the Plan, the Defendant's

position is given no deference in this Circuit. *Wagener v. SBC Pension Benefit

Plan*, 407 F.3d 395, 402 (D.C. Cir. 2005). This Circuit also applies de novo review

to any question of law. *Holt v. Winpisinger*, 811 F.2d 1532, 1535-6 (D.C. Cir.

1987).

## I.     ERISA's Permissible One-Year Marriage Rule.

4.      As originally enacted, the Employee Retirement Income Security Act

of 1974 ("ERISA") required that the normal form of payment for an annuity be a

qualified joint and survivor annuity. P.L. 93-406, §205(a), codified at 29 U.S.C.

§1055(a). Participants were, however, permitted to elect a single life annuity or

lump sum option, which did not provide for an annuity for the surviving spouse,

and many participants did that, leaving their spouses with no annuity income after

their deaths.

5.      One of the primary purposes of the Retirement Equity Act of 1984

("REA"), P.L. 98-397, was to "improve the delivery of retirement benefits" to

surviving spouses and to ensure that the spouse is "involved in making choices

3

with respect to retirement income on which the spouse may also rely." S. Rep. 98-575, at 1 and 12, 1984 U.S.C.C.A.N. 2547, 2547 and 2558; see also *Boggs v. Boggs*, 520 U.S. 833, 847 (1997) ("one of REA's central purposes ... is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death [to] the surviving spouse").

6.    REA mandated that a survivor's annuity can only be waived in favor of a single life annuity or a lump sum distribution with the spouse's informed and notarized consent. P.L. 98-397, §103 (adding ERISA § 205(c)). REA also took other steps to enhance the rights of spouses, including requiring plans to provide survivor's benefits for spouses of vested participants who die before retirement, P.L. 98-397, §103 (adding ERISA §205(a)(2)), and requiring plans to honor Qualified Domestic Relations Orders (known by their acronym "QDRO"). P.L. 98-397, §104 (adding ERISA §206(d)(3)). REA also expanded the protections of "accrued benefits" under ERISA §204(g), which had been narrowly construed by the Treasury Department and the courts, in order to more fully protect optional forms of benefits against plan amendments. P.L. 98-397, §301 (adding ERISA §204(g)(2)).

7.    As originally enacted, ERISA permitted, but did not require, retirement plans to require one-year of marriage before a participant's death as a

4

condition for eligibility for a survivor's annuity. P.L. 93-406, §205(d). The Treasury Department went one step beyond that and issued regulations which allowed plans to require both one-year of marriage before death <u>and</u> marriage before the retirement commencement date. Treas. 1.401(a)-11(d)(3).[1]

8.    Effectively, the 1984 REA modified the Treasury Department's regulations to permit plans to impose only the former requirement. REA did not require that eligibility based on a Plan's one-year-at-death rule be eliminated or that a "marriage before commencement" rule must be imposed. Instead, REA provides that a plan "<u>may</u> provide that a qualified joint and survivor annuity...will not be provided unless the participant and spouse had been married throughout the 1-year period ending on the earlier of the participant's starting date or the date of the participant's death." ERISA §205(f), 29 U.S.C.§1055(f), as amended by P.L. 98-397 (emph. added).

9.    This "is an optional provision, providing that a plan 'may,' not 'shall' or 'must,' incorporate certain requirements governing whether a spouse can receive spousal benefits." *Lewis v. Atlantic Research Corp.*, 1999 WL 701383 *3 (W.D. Va. 1999). If a plan is modified to adopt a "marriage-at-commencement"

---

[1] Although these regulations are no longer applicable, they can still be found in the Code of Federal Regulations.

5

rule, the plan can keep eligibility under the previous rule as a failsafe or minimum. It is not required to 'subtract' eligibility under the former rule in order to eliminate annuities to spouses who would formerly have been eligible.

## II.    Claim 1:  ERISA's Anti-Cutback Rule.

10.    Accrued benefits are protected against reduction by plan amendment by ERISA §204(g), 29 U.S.C. §1054(g). Once a benefit has accrued, it cannot be reduced except under limited circumstances not applicable here. See, e.g., *Nichols v. Asbestos Workers Pension Plan Trustees*, 835 F.2d 881, 890 (D.C. Cir. 1987); *Arakelian v. National Western Life Ins.*, 724 F.Supp. 1033, 1035 (D.D.C. 1989).

11.    Even before the 1984 REA, a plan amendment could not be adopted that retroactively deprives a participant of vested rights. *Stewart v. NEA*, 471 F.3d 169, 178 (D.C. Cir. 2006).

12.    As amended by REA, ERISA §204(g)(2)(B), 29 U.S.C. §1054(g)(2)(B), provides that "a plan amendment which has the effect of...eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits."

13.    Thus, REA "provided that early retirement benefits and retirement-type subsidies shall be treated as accrued benefits for purposes of the Anti-Cutback Rule." *Hall v. National Railroad Passenger Corp.*, __F.Supp.2d__, 2008

WL 2437042, *12 (D.D.C. June 18, 2008).

14.    The "strategy" of Congress was to protect "subsidized benefits" such as early retirement benefits and optional forms of benefits that have subsidies included in them "by treating them as 'accrued benefits' in several provisions." *Costantino v. TRW*, 13 F.3d 969, 979-80 (6th Cir. 1994).

15.    The changes to ERISA §204(g) made by REA "apply to plan amendments made after July 30, 1984." P.L. 98-397, §§301(a)(2) and (d).

16.    The case law after REA, including in the District of Columbia, shows that an optional form of benefit cannot be eliminated, reduced, or restricted with respect to accrued benefits. See *Arakelian v. National Western Life Ins. Co.*, 724 F.Supp. 1033, 1035 (D.D.C. 1989) (imposition of new "surrender charges" on lump sum distributions violated ERISA §204(g)); *Counts v. Kissack Water and Oil*, 986 F.2d 1322, 1323-25 (10th Cir. 1993) (amendment eliminating lump sum option violated §204(g)(2)); *Kiefer v. Ceridian Corp.*, 976 F.Supp. 829, 846-47 (D.Minn. 1997) (change in computation methodology for lump sum distributions in excess of $25,000 violated anti-cutback rule).

17.    ERISA's anti-cutback rule has been applied to prevent the elimination of optional forms of benefit less valuable than the 60% survivor's annuity at issue here. In *Goodin v. Innovative Technical Solutions, Inc.*, 489 F.Supp.2d 1157,

7

1166-68 (D. Hawaii 2007), an amendment was unlawful when it eliminated "put

options for in-kind distributions of non-public stock."

18.    The Treasury Department is charged with the responsibility for

interpreting ERISA's rules related to pension benefits, which are called "minimum

standards." See *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 746-47

(2004). As the Federal agency with the responsibility for interpreting ERISA, the

Treasury Department's regulations are entitled to deference. See, e.g., *Fed.

Express Corp. v. Holowecki*, 128 S.Ct. 1147, 1156 (2008); *Long Island Care at

Home v. Coke*, 127 S. Ct. 2339, 2349 (2007); *Nat'l Cable & Telecom. Ass'n v.

Brand X Svcs.*, 545 U.S. 967, 980 (2005).

19.    Although Treasury regulations were not issued until after 1985, they

can be used to the extent that, rather than establish new rules, they interpret or

clarify the law "at a time when there was no clear agency guidance." See, e.g.,

*Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 744 n.3 (1996) ("[w]here

... a court is addressing transactions that occurred at a time when there was no

clear agency guidance, it would be absurd to ignore the agency's current

authoritative pronouncement of what the statute means").

20.    The Treasury regulations specifically provide that the "anti-cutback"

protection applies to benefits "payable with respect to a spouse or other

beneficiary." Treas. Reg. 1.411(d)-4, Q&A-2(a)(4) ("benefits may not be eliminated merely because they are payable with respect to a spouse or other beneficiary").

21.    The regulations also establish that an optional form of benefit "cannot ... be reduced, eliminated or made subject to employer discretion except to the extent permitted by regulations." Treas. Reg. 1.411(d)-4, Q&A-1.

22.    The regulations specifically provide that ERISA §204(g) does not permit the addition of conditions restricting the availability of a benefit with respect to benefits accrued before the date of the amendment. Treas. Reg. 1.411(d)-4, Q&A-7.

23.    In *Central Laborers' Pension Fund v. Heinz*, supra, 541 U.S. at 745-47, the Defendant Plan argued that a change in the conditions for receipt of a benefit was not a "reduc[tion]" but a "mere suspension" in benefits. The Supreme Court held that changes to the conditions for receiving a benefit are the same as reductions in the benefit itself: "at the moment the new condition is imposed, the accrued benefit becomes less valuable."

24.    Even if a benefit is modified to conform with a "change in statutory requirements," the Treasury regulations provide that accrued benefits can be eliminated or reduced "only to the extent necessary to enable the plan to continue

to satisfy the requirements for qualified plans." Treas. Reg. 1.411(d)-4, Q&A-2(b)(2)(i). Accord *Kiefer v. Ceridian Corp.*, supra, 976 F.Supp. at 846-47 (plan's "efforts to conform to [Tax Reform Act] does not allow them to violate ERISA itself").

25.    The elimination or reduction of a protected benefit "will not be treated as necessary if it is possible through other modifications to the plan...to satisfy the applicable qualification requirement." Treas. Reg. 1.411(d)-4, Q&A-2(b)(2)(i).

26.    "Absent compliance with § 204(g), an amendment that decreases accrued benefits--such as Roadmaster's June 27 amendment--is ineffective." *Production & Maintenance Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1404 (7th Cir. 1992); *Frommert v. Conkright*, 433 F.3d 254, 268 (2d Cir. 2006) (amendment of plan to include "phantom account" was "retroactive cut-back in violation of § 204(g)").

27.    To the extent that an action that fails to protect accrued benefits is predicated on a mistake of law, it would, moreover, be a breach of fiduciary duty as well as a violation of ERISA §204(g)(2). See *Leckey v. Stefano*, 501 F.3d 212, 223 (3d Cir. 2007) (trustee may "commit a breach of trust where he is not personally at fault, as where he acts under a mistake of law or fact").

10

28.    As applied to this case, ERISA §204(g)(2), as amended, required the accrued benefits that Mr. Overby had earned, including the right to survivor's benefits, to be protected against reduction. The purported amendment to the survivor's benefit rule was ineffective because it eliminated eligibility for an optional form of benefits, which ERISA §204(g)(2), as amended by REA, required to be treated as part of the protected accrued benefit.

29.    Even if a change in the one-year-at-death rule had not been merely permissive, the ATF would be required to modify its rules to comply with REA in a manner that did the least harm to the existing rights of Mr. Overby and other participants. At trial Defendants' outside counsel conceded that the addition of the marriage-at-commencement rule did <u>not</u> require the subtraction of the existing one-year-at-death rule.

30.    If the minutes of the April 19, 1985 trustees' meeting are credited, the trustees were wrongly advised by counsel that the one-year-at-death rule had to be "delete[d]" and "replace[d]"with a marriage-at-commencement rule. Under the Trust Agreement, the trustees had the right to rely on such advice. Ex. 56 at P 430.

31.    Defendants' legal counsel now admit that any such advice was mistaken. The addition of a marriage-at-commencement was required, but the subtraction of eligibility under the existing rule was not. Adhering to mistaken

11

legal advice constitutes a breach of fiduciary duty, as well as a violation of ERISA

§204(g)(2), 29 U.S.C. §1054(g)(2).

## III.    Claim 2:  Ineffective Adoption of Amendment.

32.    ERISA §402(a)(1), 29 U.S.C. §1102(a)(1), requires an amendment to

an employee benefit plan to be made in accordance with the procedures in the

written plan. *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73, 85 (1995).

33.    An amendment restricting the availability of benefits is ineffective if

it is not adopted in accordance with those procedures. *Depenbrock v. CIGNA*, 389

F.3d 78, 81-82 (3d Cir. 2004) ("ERISA specifies that a valid amendment can only

be made in the manner specified in the plan document").

34.    In *Depenbrock*, the CEO's approval of a summary could not

substitute for approval of the amendment itself as specified in the plan. Likewise,

in *Confer v. Custom Eng'g*, 952 F.2d 41, 43 (3d Cir. 1991), a speech and a bulletin

board notice could not substitute for a written amendment.

35.    Moreover, "[r]egardless of the method specified for amendment, ... an

indispensable requirement under ERISA for effective plan amendment is that the

amendment be in writing." *Depenbrock*, 389 F.3d at 83 (citing decisions of the

Second, Third, Fourth, Fifth, Sixth, and Eleventh Circuits). Accord, *Winterrowd v.*

*American General Annuity Ins. Co.*, 321 F.3d 933, 937-38 (9th Cir. 2003); *Allison*

12

*v. Bank One-Denver*, 289 F.3d 1223, 1235-36 and 1238 (10th Cir. 2002); *Smith v. National Credit Union,* 36 F.3d 1077, 1079-82 (11th Cir. 1994).

36.     Here, it is undisputed that the amendment at issue did not exist in writing at the time that the trustees purportedly "adopted" it on April 19, 1985. Moreover, there was no actuarial review or evaluation of the proposed change before its adoption as Article IX of the Plan Description expressly requires. The approval of the Executive Council was also faulty because the written amendment was not presented to the members of the Executive Council for their review and approval.

37.     Defendants have suggested that approval of the minutes of the trustees' and the Executive Council meetings may have rectified the problems with adoption of this amendment. However, the approval of minutes of a meeting is not ratification or approval of an unlawful or unauthorized act. "[T]he proposition that the mere approval of the minutes of a preceding meeting amounts to a ratification as valid of everything which the minutes disclose to have been done ... is not acceptable." "[T]he approval of the minutes of a preceding meeting ... is not a legalizing of invalid acts recorded therein." *In re Chelsea Exchange Corp.*, 159 A. 432, 435 (Del. Ch. 1932); accord *Plumbers & Steamfitters Local 530 Annuity Fund v. Shaffer*, 457 F.Supp. 954, 955-56 (W.D. Pa. 1978) ("a scrivener's minutes

13

of meetings are only prima facie evidence of what in fact happened at the meetings"; "parol evidence is admissible to prove errors and omissions in the minutes"; here, the trustees stated that "the recorded minutes of the March 28 meeting [which were recorded by a plan administrator who was not a trustee] erroneously express what action they in fact took at that meeting").

38.     Defendants also suggest that this amendment could possibly have been typed up and hastily presented to the Executive Council on May 15, 2008. However, even if this were so, it would not cure the failure to have the trustees "adopt" the amendment in the first place. Moreover, beyond Ms. Rachelson's "belief" that this might have occurred, Tr. (6/12/08) at 134-5 to 137-10, Defendants have offered no documentary evidence or credible testimony that the amendment was typed and presented to the Executive Council on that day.

39.     Defendants have control over two witnesses (Bruce Simon and Keith Secular), both of whom are lawyers and continue to be outside counsel to the NALC, who actually attended the Executive Council meeting. The "missing witness" rule requires that an inference be drawn if a witness or witnesses under one party's control do not appear to testify about an "important evidence." *Bufco Corp. v. NLRB*, 147 F.3d 964, 971 (D.C. Cir. 1998) ("Under the 'missing witness' rule, if a person having important evidence and peculiarly within the power of one

14

of the parties to produce is not called, the factfinder may draw an inference that

"the missing witness would have given testimony damaging to that party"); *United*

*States v. Pitts*, 918 F.2d 197, 199 (D.C. Cir. 1990) ("There are some persons,

however, who potentially have so much to offer that one would expect them to

take the stand. If such a person does not appear and one of the parties had some

special ability to produce him, the law permits the jury to draw an inference -

namely, that the missing witness would have given testimony damaging to that

party").

## IV.   Claim 3:  Ineffective Amendment Without Summary of Material Modification.

40.     ERISA requires a Summary of Material Modification ("SMM") to be

distributed within 210 days after the end of the plan year in which an amendment

that materially modifies the plan is adopted. ERISA §102, 29 U.S.C. §1022.

Distribution of an SMM within the statutory time limit will ordinarily satisfy the

fiduciary duty of disclosure. *Leonard v. Drug Fair*, 1980 U.S. Dist. LEXIS 17855

*3-4 (D.D.C. 1980).

41.     ERISA requires the SMM to describe any material changes to the

Plan, including a modification to reduce benefits, "in a manner calculated to be

understood by the average plan participant" and to be "sufficiently accurate and

comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." ERISA §102, 29 U.S.C. §1022.

42.     ERISA §102 is enforceable under the civil enforcement provisions contained in ERISA §502(a), 29 U.S.C. §1132(a), in particular ERISA §§502(a)(1)(B) and (a)(3). In the absence of the statutorily-required disclosure, a rule that causes benefits to be lost or forfeited is ineffective. See, e.g., *Frommert v. Conkright*, 433 F.3d 254, 268 (2d Cir. 2006) ("Without such proper notice to Plan participants, the amendment was ineffective as to them"); *Custer v. Murphy Oil*, 503 F.3d 415, 424 (5th Cir. 2007) ("Only an amendment executed in accordance with the Plan's own procedures and properly noticed could change the Plan").

43.     Defendants contend that an "Annuity Trust Fund Plan Description" and a "Certificate of Participation" were distributed in April 1990 or July 1990. The Plaintiffs and other witnesses have testified otherwise. *Stanton v. Fowler Trucking*, 52 F.3d 723, 728 (8th Cir. 1995), holds that when there is an issue about whether notice was provided, the plan administrator has the burden of proving that the notice was provided because 29 U.S.C. §§1027 and 1059 require employers and plan administrators to maintain records to show that notice was given. Testimony that a participant never received the notice shifts the burden to the plan administrator to produce records showing that it complied with the notice

16

requirements. In *Martin v. Marriott Corp.*, 1992 WL 84902 *3 (D.D.C. 1992),

Marriott was denied summary judgment when it did not produce any

documentation that notice was sent. Here, Defendants produced no such records

with its motion for summary judgment or at trial.

44.     Moreover, even if the aforementioned Plan Description and

Certificate had been distributed in April or July of 1990, they fail to satisfy

ERISA's SMM requirements because they do not draw anyone's attention to the

modification or understandably describe how the plan has been amended. ERISA

requires that the summary of material modification be reasonably calculated to

bring the change in the survivor's annuity rule to the attention of the average plan

participant. An SMM must highlight the relevant changes; it cannot lead

participants away from a change, e.g., by obscuring, minimizing or otherwise

making the change appear unimportant. 29 C.F.R. 2520.102-2(b) and 29 C.F.R.

2520.104b-3.

45.     Inadequate SMM's have been ruled violations of law in a number of

cases. See *Baker v. Lukens Steel Co.*, 793 F.2d 509, 512 (3d Cir. 1986) (defendant

failed to provide notice of deletion of special retirement benefit before 210-day

deadline); *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032,

1040 (2d Cir. 1985), cert. denied, 475 U.S. 1012 (1986) ("notice was insufficient

17

to satisfy the requirements of ERISA" because it did not explain the "full import of the interaction of the wage-related provision and the Amendment for someone in Chambless' position"); *Lettrich v. J.C. Penney Co.*, 213 F.3d 765, 769-72 (3d Cir. 2000) (the "fact finder could conclude that a 2 or 3 paragraph notice of termination of a welfare benefit which...was 'buried' in the middle of a 61-page notice of a shareholders meeting with nothing in the exterior to call it to the attention of the participants does not satisfy the requirement"); *Amara v. CIGNA*, 534 F.Supp.2d 288, 345 (D.Conn. 2008) (SMM was deficient where it failed to disclose adverse features of cash balance plan).

46.    In this instance, nothing in the Plan Description, Certificate, or accompanying cover letters directed participants or beneficiaries to a change in the survivor annuity rule and nothing in those booklets understandably describes how a spouse who was married to the participant for at least one year as of the date of death would no longer be eligible for the survivor annuity.

**V.    Claim 4:  The Untimely and Misleading Summary Plan Description.**

47.    ERISA §102 and §104, 29 U.S.C. §1022 and §1024, require that an updated Summary Plan Description ("SPD") be distributed every 5 years if material modifications have been made to the Plan. See 29 C.F.R. 2520.104b-2(b).

48.    An SPD must "clearly identify" all the circumstances that may result

18

in disqualification, ineligibility, denial, loss, or forfeiture of any benefits that a participant might otherwise reasonably expect to receive on the basis of the description of the benefits offered by the Plan. See ERISA §102, 29 U.S.C. §1022, and 29 C.F.R. 2520.102-3(l). Like an SMM, the SPD must be written in a manner calculated to be understood by the average plan participant. 29 C.F.R. 2520.102-2(a). An SPD does not fulfill this purpose if it obscures, minimizes or leads the participant away from an understanding that an adverse change has been made to the eligibility requirements for a benefit. 29 C.F.R. 2520.102-2(b).

49.    When the description of eligibility in an SPD is inconsistent with the terms of the Plan, the "language of the SPD governs." *Whiteman v. Graphic Communications Int'l Union Supplemental Ret. and Disability Fund,* 871 F. Supp. 465, 466-67 (D.D.C. 1994) ("It is clearly contemplated that a Plan participant should be able to rely on the Plan's summary description...It would be unreasonable to require a Plan participant to examine the actual Plan to search for conflicting requirements"); *Burstein v. Retirement Account Plan for Allegheny Health, Ed. and Res. Fdn*., 334 F.3d 365, 380-82 (3d Cir. 2003) ("If an SPD conflicts with a plan document, then a court should read the terms of the 'contract' to include the terms of a plan document, as superseded and modified by conflicting language in the SPD"); *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851

19

F.2d 134, 136-37 (6th Cir. 1998) ("It is grossly unfair to hold an employee
accountable for acts which disqualify him from benefits if he had no knowledge of
these acts or if these conditions were stated in a misleading or incomprehensible
manner in the plan booklets," quoting H. R. Rep. No. 93-533, reprinted in 1974
U.S.C.C.A.N. 4639, 4646); *Washington v. Murphy Oil*, 497 F.3d 453, 458-59 (5th
Cir. 2007) (when SPD conflicted with plan document by only requiring 5 years of
service for benefit eligibility, the terms of the SPD controlled).

50.    The applicable SPD is the one in effect at the time a participant's
claim for benefits is denied. See, e.g., *Klecher v. Metropolitan Life Ins. Co.*, 2003
WL 21314033, *4 (S.D.N.Y. 2003) (applicable plan was "the plan in effect when
Met-Life reviewed and made its determination regarding plaintiff's claim");
*Randazzo v. Federal Express Corp. Long Term Disability Plan*, 2000 WL 20698,
*4 (S.D.N.Y. 2000) (applying plan provision in effect when plaintiffs' claim was
denied); see also *Danti v. Lewis*, 312 F.2d 345, 348-49 (D.C. Cir. 1962) (eligibility
for benefits was governed by resolution in effect at time plaintiff's pension
application; subsequent attempt by trustees to alter eligibility criteria was invalid);
*Kiser v. Huge*, 517 F.2d 1237, 1246-47 (D.C. Cir. 1974) (following *Danti*, "we
must focus our attention on the date a pension application was filed to determine
what the relevant eligibility requirements were and are").

51.    In *Chisholm v. Plan Administrator of Joint Industry Boad of Electrical Industry Benefit Funds*, 2004 WL 3267292 (E.D.N.Y. 2004), Judge Platt addressed a similar fact pattern to here in which a couple lived together for a number of years before marrying less than one year before the participant died. The Plan contained a one-year-at-death rule but Mrs. Chisholm contended that the SPD "failed to notify the Participant and his spouse that such a restriction on their benefit existed." *Id*. at *1. *Chisholm* held: "Even if the SPD clearly informed plan participants that the one-year requirement provision did apply to the Husband and Wife Pension, the exact meaning of the requirement is uncertain.... Defendants' cites to the Pension Plan, however, do not assist their case because conflicts between the SPD and the Pension Plan are to be resolved in favor of the SPD plan.... The one-year marriage requirement set forth on page 20 of the SPD is far less clear than the explanation provided by the Defendants in the Pension Plan.... Given the advancement of word processing and printing technology in the 1990's it is difficult for the Court to accept that a more instructive and less confusing layout was beyond the grasp of the Defendants." *Id*. at *4-5.

52.    After finding that the SPD inadequately disclosed, the District Court found "likely prejudice" from the inadequate disclosures. "Had the SPD adequately alerted plan participants that ... a one-year marriage requirement was a

21

condition precedent to receiving the Husband and Wife Pension benefit ... it is likely the Chisholms would have formalized their relationship sooner so that Ms. Chisholm could receive the pension benefits earned by her husband. There is no doubt that failure to adhere to the Pension Plan's one-year marriage requirement drastically alters Ms. Chisholm's ability to claim her husband's pension benefits." *Chisholm*, supra at *6.

53.    *Burke v. Kodak*, 336 F.3d 103, 111-13 (2d Cir. 2003), cert. denied, 540 U.S. 1105 (2004), also concerns a surviving spouse who lived with a participant for eight years but was married less than a year before death. The Second Circuit held that Kodak's SPD was inadequate because it failed to understandably disclose an option under which they could have signed a domestic partner affidavit in order to attain benefit eligibility.

54.    In this Circuit, the controlling precedent on the fiduciary duty to disclose is *Eddy v. Colonial Life,* 919 F.2d 747 (D.C. Cir. 1990). In *Eddy*, Colonial Life failed to tell James Peter Eddy about an option under which he could continue health coverage he needed to pay for medical treatments for AIDS and a form of cancer associated with the end stages of AIDS. *Eddy* establishes a clear mandate for full disclosure: "Colonial Life was required to do more than simply not misinform, Colonial Life also had an affirmative obligation to inform–to provide

22

complete and correct material information on Eddy's status and options." 919 F.2d at 751 (emph. orig.). After *Eddy* was remanded, judgment was entered for the Plaintiff. See 59 F.3d 201, 202-3 (D.C. Cir. 1995).

55.    Before and after *Eddy*, cases in this District have been decided consistent with this principle: *Whiteman v. Graphic Communications Int'l Union Supplemental Ret. and Disability Fund*, supra, 871 F.Supp. at 467 (SPD did not refer to a two year cut-off period set forth in Plan; rejecting defense that the rule did not need to be disclosed because it only had an "immaterial" impact); *Germany v. Operating Engineers Trust Fund*, 789 F.Supp. 1165, 1171-72 (D.D.C. 1992) (subrogation agreement was unenforceable because it expanded on rights disclosed in the SPD); *Corley v. Hecht Co.*, 530 F.Supp. 1155, 1163-64 (D.D.C. 1982) (SPD must not have the effect of misleading or failing to inform).

56.    In line with *Eddy*, there are a number of decisions in other circuits where inadequate disclosure of benefit options has been ruled to violate ERISA's disclosure requirements. In addition to the Second Circuit's decision in *Burke v. Kodak*, the Third Circuit has addressed the disclosure of benefit options in three different contexts. See *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1301-3 (3d Cir. 1993) (options for health coverage not disclosed); *Jordan v. Federal Express*, 116 F.3d 1005, 1012-15 (3d Cir. 1997) (failure to

23

disclose that benefit election and joint annuitant designation were irrevocable); *Genter v. Acme Scale & Supply*, 776 F.2d 1180, 1185-86 (3d Cir. 1985) (failure to disclose option to increase life insurance coverage). In *Kaszuk v. Bakery & Confectionary Union Pension Fund*, 791 F.2d 548, 553-55 (7th Cir. 1986), a pre-retirement "husband and wife" pension was not disclosed and because of that the participant did not elect the option before his death.

57.     In this instance, it is undisputed that no SMM or SPD was distributed after the purported change to the survivor annuity rule until sometime in March or April 2001. This was long after the February 1, 1991 date on which Mr. Overby retired. The SPD that was distributed at that time still did not understandably disclose the change. Instead, it led participants and beneficiaries like the Overbys to believe that they were still eligible for the survivor's benefit by telling them that the survivor's benefit will be available if the participant "completed five years of Creditable Service, [has] reached age 67, or [is] currently receiving an Annuity." Ex. 26 at P 122. A footnote states that if an annuitant was married less than a year before the annuity commenced, the spouse "must be married to you" for "at least a year as of the date of death" to obtain the benefit. *Id*. The Overbys read this as meaning that Mrs. Overby was eligible because they will have been married for at least 17 years as of the date of any death.

24

58.     In their motion for summary judgment, Defendants relied on the Sixth

Circuit's decision in *Lewandowski v. Occidental Chemical Corp.*, 986 F.2d 1006,

1007-8 (6th Cir. 1993), as standing for the proposition that "failure to comply with

notice requirements does not provide a substantive right of recovery under

ERISA." Defs. Mot. Summ. Judg. (dkt. #26) at 13-14. While *Lewandowski* has not

technically been overruled, the Sixth Circuit has issued numerous decisions

showing that this is not the law in the Sixth Circuit. See *Edwards v. State Farm*,

851 F.2d 134, 137 (6th Cir. 1988); *Drennan v. GM*, 977 F.2d 246, 251 (6th Cir.

1992); *McAuley v. IBM*, 165 F.3d 1038, 1043 (6th Cir. 1999); *Krohn v. Huron*,

173 F.3d 542, 547 (6th Cir. 1999); *James v. Pirelli Armstrong Tire*, 305 F.3d 439,

445 (6th Cir. 2002). In fact, *Lewandowski* itself distinguishes *Edwards v. State*

*Farm* as a case in which substantive relief was provided, holding that the case

before it was different because the plaintiff was seeking "a blanket substantive

remedy" on account of the defendant's failure to provide "virtually every

document required by ERISA." 986 F.2d at 1007-8. *Lewandowski*'s weakness as

precedent is further revealed by the fact that the Sixth Circuit has never cited it.

59.     As far as the NALC should be concerned, the most important point is

that the controlling precedent in the District of Columbia (where the NALC has

been based throughout its history) is *Eddy v. Colonial Life*, supra. *Eddy* holds

25

that: "The duty to disclose material information is the core of a fiduciary's responsibility.... This fundamental common-law duty informs many of the statutory requirements of ERISA itself. Under ERISA, a plan administrator must, for example furnish to all beneficiaries and participants a summary plan description [and] notice of 'any material modification' in the plan." 919 F.2d at 750-51.

60.    Following *Eddy*, the ATF Plan administrator's failure to provide a timely SMM or SPD is not a procedural violation, but a breach of the fiduciary duty to disclose material information that can adversely affect a participant's interests.

## VI.    Claim 5:  No Disclosure of Ways to Protect the Surviving Spouse's Benefit as Required by *Eddy v. Colonial Life*.

61.    Even if ERISA did not require disclosure in an SMM or SPD, *Eddy* requires that the actions that a participant can take to avoid an adverse rule must be affirmatively and understandably disclosed so that the participant and his or her spouse can protect their rights: "A fiduciary's duty, however, is not discharged simply by the issuance and dissemination of these documents and notices. Instead, that duty carries through in all of the fiduciary's dealings with beneficiaries." 919 F.2d at 751.

26

62.     Under *Eddy*, the fiduciaries of an ERISA plan like the ATF must disclose material information to participants and beneficiaries, even if fiduciaries are not specifically asked, so participants and beneficiaries can take steps available to them to protect their benefits.

63.     Here, the ATF Plan administrator failed to understandably disclose the changes to the survivor annuity rule to Mr. and Mrs. Overby and other participants. With advance notice, both sides agree that the Overbys "easily could have" gotten married before Mr. Overby commenced his retirement benefits.

64.     Instead of making sure that the new rule was communicated to participants and spouses so they could take steps to conform, the ATF distributed an Application for Retirement with instructions that clearly stated that the one-year-at-death rule continued in effect. The ATF also distributed an SPD which indicated that the one-year-at-death rule continued as an alternative basis for eligibility. No booklets, whether required by ERISA or not, were distributed which clearly disclosed the change so that participants could make well-informed employment and retirement decisions in light of it.

65.     If *Eddy* had been followed, the Overbys would have known about the new rule and could have been married before Mr. Overby retired so that Mrs. Overby would be eligible for the survivor annuity even from Defendants'

perspective. Any disputes about the legality and proper adoption of the change to the one-year-at-death rule or about the timeliness of the SMM and SPD could thereby have been avoided.

## VII.    Motion for Attorneys' Fees under Rule 54(d)(2).

66.    Pursuant to FRCP 54(d)(2) and ERISA § 502(g), Plaintiffs shall move for an  award of attorneys' fees within 30 days of entry of this Court's judgment (rather than the 14 days specified in Rule 54(d)(2)(B)). ERISA's provision for attorneys' fees is intended "to enable pension claimants to obtain competent counsel and to distribute the economic burden of the litigation in a fair manner." *Gennamore v. Buffalo Sheet Metals, Inc. Pension Plan*, 568 F.Supp. 931, 936 (W.D.N.Y. 1983).

67.    This Circuit set out the five-factor test for an award of attorneys' fees in a second decision in the *Eddy v. Colonial Life* litigation, published at 59 F.3d 201 (D.C. Cir. 1995). This test has been recently applied in *Becker v. Weinberg Group, Inc.*, 2008 U.S. Dist. LEXIS 40545 (D.D.C. May 21, 2008) (Kessler), and *Risteen v. Youth for Understanding, Inc.*, 2003 WL 22011766 (D.D.C. 2003) (Bates).

Dated: July 23, 2008

Respectfully submitted,

 s/ Stephen R. Bruce
Stephen R. Bruce (D.C. Bar No. 289066)
Allison C. Pienta (D.C. Bar. No. 494372)
805 15th St., NW, Suite 210
Washington, DC 20005
Telephone: (202) 371-8013
Facsimile: (202) 371-0121

Attorneys for Plaintiffs