# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HALLINE and PAULETTE OVERBY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 06-CV-1356 (RMC/JMF) ) |
| NATIONAL ASSOCIATION OF LETTER CARRIERS, *et al.*, | ) ) ) |
| Defendants. | ) |

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

John C. Hayes, Jr. (DCB No. 183582)
Kenneth J. Nichols (DCB No. 486720)
NIXON PEABODY LLP
401 9th Street, NW, Suite 900
Washington, D.C. 20004-2128
(202) 585-8000 (telephone)
(202) 585-8080 (facsimile)

11122799.11

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................... 1

II.   DEFENDANTS' PROPOSED FINDINGS OF FACT ................................. 3

      A.   Employment and Personal History of
           Halline and Paulette Overby.................................. 3

      B.   The Annuity Fund's Surviving Spouse
           Benefit Eligibility Requirement Changes from
           "Married at Death" to "Married at Annuity
           Commencement" ............................................. 6

           i.    The NALC Annuity Fund Trustees Approve
                 the Change................................................ 6

           ii.   The NALC Executive Council Approves the
                 Trustees' Change to the Annuity Fund Plan.............. 8

      C.   Mr. Overby Knew About the Surviving Spouse
           Benefit "Married at Commencement" Eligibility
           Requirement, Prior to Retiring .............................. 9

           i.    NALC Had a Custom of Mailing and Delivering
                 Plan Booklets to Participants ...................... 9

           ii.   A Friend and Co-worker Reminds Mr. Overby
                 About the New Surviving Spouse Benefit Eligibility
                 Requirement .......................................... 10

           iii.  Mr. Overby Had Annuity Trust Fund Plan
                 Description Booklets in His Possession at His
                 Office ............................................... 11

      D.   Mr. Overby Marries Paulette Motayne After Retiring
           From the NALC................................................ 12

III.   DEFENDANTS' PROPOSED CONCLUSIONS OF LAW ....................... 13

    A.    Background ....................................................................... 13

    B.    NALC's 1985 "Married at Commencement" Eligibility
          Requirement Does Not Violate ERISA's Anti-Cutback
          Rule................................................................................. 16

          i.    The "married at commencement" eligibility
                requirement did not reduce Plaintiffs' benefits
                because, before and after the amendment, the benefit
                inurred to Halline and Lucille Overby...................................... 16

          ii.   The Annuity Fund plan, both before and after the 1985
                "married at commencement" amendment, met Plaintiffs'
                reasonable expectations because Halline Overby remained
                married to Lucille Overby........................................................... 19

          iii.  The IRS regulations at 26 C.F.R. § 1.411(d)-4 cannot be
                consulted to interpret the validity of the "married at
                commencement" amendment as it relates to ERISA's
                anti-cutback rule because the regulation is
                inapplicable to Plans in existence before 1986 ...................... 22

    C.    The Documentary Evidence Adduced at Trial Demonstrates
          That NALC's Amendment of the Annuity Fund Plan Was
          Properly Adopted Under ERISA ....................................................... 24

    D.    Technical Violations of ERISA Do Not Give Rise to
          Substantive Remedies....................................................................... 26

    E.    The Evidence of NALC's Custom of Mailing and
          Delivering Plan Booklets Establishes That There was
          Sufficient Notification ...................................................................... 30

    F.    Plaintiffs Are Estopped From Claiming That Procedural
          Deficiencies Render the Adoption of the "Married at
          Commencement" Requirement Ineffective Because
          Mr. Overby Was a Voting Member of the Governing Body That
          Adopted It .......................................................................................... 32

G.    NALC Committed No Breach of Fiduciary Duty in
Disclosing the "Married at Commencement" Requirement
Because NALC Distributed Plan Descriptions That Mr. Overby
Received.......................................................................................... 34

IV.    CONCLUSION ............................................................................................. 37

## TABLE OF AUTHORITIES

**CASES**                                                    **PAGE NO.**

Amalgamated Clothing & Textile Workers Union v. Murdock,
    861 F.2d 1406 (9th Cir. 1988) ................................................................. 36, 37

Arakelian v. Nat'l W. Life Ins. Co.,
    724 F. Supp. 1033 (D.D.C. 1989)................................................................. 17

Boggs v. Boggs,
    520 U.S. 833 (1997)....................................................................................... 13

Cent. Laborers' Pension Fund v. Heinz,
    541 U.S. 739 (2004)................................................................................ passim

Counts v. Kissack Water and Oil Serv., Inc.,
    986 F.2d 1322 (10th Cir. 1993) .................................................................... 17

Curtiss-Wright Corp. v. Schoonejongen,
    514 U.S. 73 (1995)......................................................................................... 24

Custer v. Murphy Oil USA, Inc.,
    503 F.3d 415 (5th Cir. 2007) ........................................................................ 31

Depenbrock v. CIGNA,
    389 F.3d 78 (3d Cir. 2004) ........................................................................... 26

Firestone Tire & Rubber Co. v. Bruch,
    489 U.S. 101 (1989)....................................................................................... 13

Frommert v. Conkright,
    433 F.3d 254 (2d Cir. 2006) ......................................................................... 18

Goodin v. Innovative Tech. Solutions, Inc.,
    489 F.Supp.2d 1157 (D. Haw. 2007)............................................................ 18

Hall v. AMTRAK,
    Nos. 03-1764 (GK), 06-1539 (GK), 2008 U.S. Dist. LEXIS 46811
    (D.D.C. June 18, 2008) ................................................................................. 20

Hozier v. Midwest Fasteners, Inc.,
 908 F.2d 1155 (3d Cir. 1990) ..................................................................... 28

Huber v. Casablanca Indus., Inc.,
 916 F.2d 85 (3d Cir. 1990) ................................................................... 24, 25

Kazazain v. Bartlett & Bartlett LLP,
 No. 3 Civ 7699 (LAP), 2007 U.S. Dist. LEXIS 94243
 (S.D.N.Y. Dec. 19, 2007) ........................................................................... 35

Kiefer v. Ceridian Corp.,
 976 F. Supp. 829 (D. Minn. 1997) .............................................................. 17

Lewandowski v. Occidental Chemical Corp.,
 986 F.2d 1006 (6th Cir. 1993) ........................................................ 27, 28, 29

Lewis v. Atl. Research Corp.,
 No. CA 98-0070-H, 1999 U.S. Dist. LEXIS 13569
 (W.D. Va. Aug. 30, 1999) ........................................................................... 14

Lewis v. Wilson,
 151 U.S. 551 (1894) .................................................................................... 32

Lockheed Corp. v. Spink,
 517 U.S. 882 (1996) ............................................................................... 19, 21

Martin v. Marriott Corp.,
 No. 91-2289, 1992 U.S. Dist. LEXIS 4713
 (D.D.C. Apr. 10, 1992) ............................................................................... 30

Mass. Mut. Life Ins. Co. v. Russell,
 473 U.S. 134 (1985) ............................................................................... 29, 35

Monks v. Keystone Powdered Metal Co.,
 10 Fed. Appx. 273 (6th Cir. 2001) ............................................................. 29

Moore v. CapitalCare, Inc.,
 2006 U.S. App. LEXIS 22075 (D.C. Cir. Aug. 29, 2006) ........................... 13

Nachman Corp. v. Pension Benefit Guar. Corp.,
    446 U.S. 359 (1980)..................................................................... 19, 20

Nichols v. Asbestos Workers Pension Plan Trustees,
    835 F.2d 811 (D.C. Cir. 1987).................................................... 17

Normann v. Amphenol Corp.,
    956 F. Supp. 158 (N.D.N.Y. 1997)............................................. 25

Pancotti v. Boehringer Ingelheim Pharm., Inc.,
    No. 3:06-cv-1674 (PCD), 2007 U.S.Dist. LEXIS 51464
    (D. Conn. July 17, 2007).............................................................. 29

Preston v. Am. Fed'n of Tel. & Radio Artists Health Fund,
    No. 90 Civ 7094 (RJW), 2002 U.S. Dist. LEXIS 8826
    (S.D.N.Y. May 16, 2002)
    aff'd, 2003 U.S. App. LEXIS 7222 (2d Cir. Apr. 16, 2003) ........................ 35

Production & Maint. Employees' Local 504, Laborers'
Int'l Union v. Roadmaster Corp.,
    954 F.2d 1397 (7th Cir. 1992) .................................................... 18

Schoonejongen v. Curtiss-Wright Corp.,
    143 F.3d 120 (3d Cir. 1998) ....................................................... 15

Sears v. Union Cent. Life Ins. Co.,
    222 Fed. Appx. 474, 478-79 (6th Cir. 2007) .......................... 28, 29

Smiley v. Citibank (N.D.), N.A.,
    517 U.S. 735 (1996)............................................................... 22, 23

Stanton v. Larry Fowler Trucking, Inc.,
    52 F.3d 723 (8th Cir. 1995) ....................................................... 32

Tarr v. State Mut. Life Assur. Co. of Am.,
    913 F. Supp. 40 (D. Mass. 1996)................................................ 29

Wagener v. SBC Pension Benefit Plan,
    407 F.3d 395 (D.C. Cir. 2005).................................................... 13

<u>Williams v. Cordis Corp.</u>,
    30 F.3d 1429 (11th Cir. 1994) ................................................................. 29, 21

<u>Williams v. Ironworkers Local No. 16 Pension Fund</u>,
    Civ. No. AMD 04-1417, 2007 U.S. Dist. LEXIS 33113
    (D. Md. May 3, 2007) ........................................................................... 25, 30

<u>Webb v. Gaskins</u>,
    121 S.E.2d 564 (N.C. 1961) ....................................................................... 32

## STATUTES AND REGULATIONS          PAGE NO.

26 C.F.R. § 1.411(d)-4 .................................................................................. 22, 23

29 C.F.R. § 2520.104b-1(b)(1) ........................................................................... 30

12 U.S.C. § 85 ................................................................................................. 23

29 U.S.C. § 1001 (Retirement Equity Act of 1984)................................................. 14

29 U.S.C. § 1054(g) ......................................................................................... 2

29 U.S.C. § 1055(f)(1) ..................................................................................... 15

29 U.S.C. § 1055(f)(2) ..................................................................................... 15

29 U.S.C. § 1102(a)(1)...................................................................................... 24

Defendants the National Association of Letter Carriers, National Association of Letter Carriers Annuity Trust Fund, Board of Trustees of the National Association of Letter Carriers Annuity Trust Fund, and William H. Young (collectively, "NALC" or "Defendants"), by counsel, submit these Proposed Findings of Fact and Conclusions of Law.

## I.    INTRODUCTION

A bench trial was held in this matter on June 11, 12, and 16, 2008.  The pre-trial submissions of the parties, testimony of the witnesses, the documentary evidence, and the controlling law establish that the Defendants are entitled to judgment on all five counts of Halline and Paulette Overby's ("Plaintiffs") Complaint.

More than 20 years after the fact, Plaintiffs contend that a 1985 amendment to NALC's Annuity Trust Fund plan either did not occur at all, in spite of the existence of contemporaneous documents demonstrating otherwise, or was not properly approved pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA").  Plaintiffs take this position because they did not marry until May of 1991, even though Mr. Overby could have divorced his second wife, Lucille Overby, at any point after April of 1983 and married Paulette (Motayne) Overby any time thereafter.

The claims in Plaintiffs' Complaint set forth five issues:

(1)     whether the adoption of the annuity fund plan amendment in 1985, which changed the eligibility requirements for a survivor annuity, violated ERISA's anti-cutback prohibition, 29 U.S.C. § 1054(g) (Compl., Count I);

(2)     whether NALC complied with the requirements of ERISA in adopting the amendment in 1985 (Compl., Count II);

(3)     whether NALC complied with ERISA's procedures for disseminating the 1985 amendment and, if defendants did not comply, whether this gives rise to a private cause of action under ERISA (Compl., Count III);

(4)     whether NALC complied with ERISA's procedures for explaining the 1985 amendment in the Summary Plan Description and, if defendants did not comply, whether this gives rise to a private cause of action under ERISA (Compl., Count IV); and

(5)     whether NALC breached a fiduciary duty to Plaintiffs by failing to disclose the amended eligibility requirement (Compl., Count V).

As set forth more fully below, the evidence and testimony establish that the amendment was properly adopted in 1985, first by the Trustees of the Annuity Trust Fund, and then by the NALC Executive Council, of which Mr. Overby was a member at the time.  It was properly disseminated to the plan participants, including Mr. Overby, who was provided with plan description booklets that he discussed with a co-worker, specifically in reference to the 1985 amendment and its potential effect on Paulette Motayne.

The amendment did not constitute an impermissible cut-back under ERISA. The amendment had no effect on either of these plaintiffs at the time it was enacted because Mr. Overby was still married to Lucille Overby.  Lucille's surviving

spouse benefit was not impacted.    Neither at the time of its enactment, nor thereafter, did the amendment reduce or eliminate any benefit enjoyed by Paulette Overby because she was not, at any point prior to her 1991 marriage to Mr. Overby, entitled to one.    Plaintiffs chose the date of their marriage, which ultimately impacted Paulette Overby's right to Mr. Overby's surviving spouse annuity.

## II.    DEFENDANTS' PROPOSED FINDINGS OF FACT

### A.    Employment and Personal History of Halline and Paulette Overby

1.    In 1959, Halline Overby married his second wife, Lucille, following the dissolution of his marriage to his first wife, Genevieve.  Tr. Vol. 1, 61:13 – 20.

2.    In 1960, Mr. Overby became employed as a letter carrier for the United States Postal Service in Los Angeles, California.  Tr. Vol. 1, 15:21 – 23.  At or around that time, Mr. Overby also became a member of the union, the National Association of Letter Carriers ("NALC").  Tr. Vol. 1, 14:25 – 15:2.

3.    Mr. Overby was elected to a local union office, President of Branch 24 in Los Angeles, and served in that position from 1969 until 1981.  Tr. Vol. 1, 16:5 – 17.

4.    In 1978, Mr. Overby pursued a national union office, and was elected to the Board of Trustees for the NALC on the slate of the president-elect, Vincent

R. Sombrotto.  Tr. Vol. 1, 16:22 – 17: 25.  Trustees received a modest salary as compensation for their work.  Tr. Vol. 1, 18:18 – 20.

5.      One of Mr. Overby's duties as a trustee was to oversee the NALC's Annuity Trust Fund (the "Annuity Fund").  Tr. Vol. 1, 18:1 – 14.  Upon being elected trustee, he also became a participant in the Annuity Fund.  Tr. Vol. 1, 18:22 – 19:5.  The Annuity Fund is one of the fringe benefits that the NALC offers to union officers and employees.  It is a retirement plan that makes annual payments (in monthly installments) to its participants and, in certain cases, to their surviving spouses or eligible family.  NALC Annuity Trust Fund Retirement Plan Description (Defs.' Ex. 101).

6.      Mr. Overby's position as a trustee meant that he was also a member of the NALC's Executive Council and that he attended Council meetings with other national officers.  Tr. Vol. 1, 48:9 – 14.

7.      Throughout his entire three-year tenure as a trustee for the Annuity Fund, Mr. Overby claims he never once requested a copy of the Annuity Trust Fund plan description booklet that described the benefits that inured to participants, in spite of the fact that the Trustees were responsible for the Annuity Fund.  Tr. Vol. 1, 70:11 – 24.

8.      In 1981, Mr. Overby was appointed  Assistant Secretary-Treasurer of the NALC, following the incumbent's resignation.  Tr. Vol. 1, 19:9 – 21.  He was

then elected to that position in 1982, serving until his retirement in 1990.  Tr. Vol. 1, 19:22 – 20:4.  As Assistant Secretary-Treasurer Mr. Overby was a member of the NALC  Executive Council, just as he had been when he was a Trustee of the Annuity Fund.  Tr. Vol. 1, 48:9 – 14.

9.    Mr. Overby's appointment to the office of Assistant Secretary-Treasurer required that he relocate from Los Angeles to Washington, D.C.  Tr. Vol. 1, 20:13 – 16.  Before he relocated, Mr. Overby and his wife, Lucille, separated.  Tr. Vol. 1, 20:17 – 21.  Lucille Overby did not move to Washington, D.C. with Mr. Overby.  Id.

10.    In 1982, Mr. Overby met 21 year-old Paulette Motayne, a bank teller at the National Savings & Trust Bank located across the street from the NALC national headquarters where Mr. Overby worked.  Tr. Vol. 1, 20:22 – 21:2; 83:22 – 84:5.  At the time, Mr. Overby was 62 years-old.  Tr. Vol. 1, 14:22 – 23.

11.    Shortly after meeting in 1982, Mr. Overby and Ms. Motayne started dating.  They began living together later that year.  Tr. Vol. 1, 84:2 – 7; 85:1 – 4.

12.    In October of 1982, Ms. Motayne took a job at the NALC in the Control Department of the NALC Health Benefit Plan, at its Virginia office.  Tr. Vol. 1, 84:8 – 19.  As a result of her job, Ms. Motayne became a participant in the Annuity Fund.  Tr. Vol. 1, 84:23 – 25.

13.    In 1986 Mr. Overby suffered a stroke.  Tr. Vol. 1, 85:5 – 8.
Following a three-month hospital stay, Mr. Overby experienced, among other
lingering complications, difficulty identifying people.  Tr. Vol. 1, 22:4 – 12.

**B.    The Annuity Fund's Surviving Spouse Benefit Eligibility
Requirement Changes from "Married at Death" to "Married at
Annuity Commencement"**

*i.    The NALC Annuity Fund Trustees Approve the Change*

14.    As of December 16, 1981, the Annuity Fund provided that an annuity
would be paid to the surviving spouse of a deceased participant, in the amount of
60% of the participant's own annuity, so long as the spouse had been married to
the participant "for at least one year immediately preceding the [participant's]
death. . . ."  NALC Annuity Trust Fund Retirement Plan Description (Dec. 16,
1981), Art. V, § 1(b) (Defs.' Ex. 101).  For ease of reference, this rule shall be
referred to as the "married at death" eligibility requirement.

15.    At the April 19, 1985 Annuity Fund board meeting, Tamson Milton of
The Wyatt Company, the actuary for the Annuity Fund, and Jani K. Rachelson,
Esq. of Cohen, Weiss and Simon LLP, the Annuity Fund's outside counsel, made a
presentation to the trustees of the Annuity Fund pertaining to certain changes in the
plan, mandated by the recently enacted Retirement Equity Act ("REA").  Minutes
of the NALC Annuity Trust Fund Meeting (Apr. 19, 1985) ¶ 7 (Plfs.' Ex. 7 at
NALC 0694).

16.    One change discussed by Tamson Milton and Jani Rachelson at the April 19, 1985 meeting was that REA required the Annuity Fund to provide an annuity payable to a surviving spouse who was married to the participant at his or her annuity start date.  Id. ¶ 7.a.; Handwritten notes of Jani K. Rachelson, Esq., Apr. 19, 1985 NALC Annuity Trust Fund Meeting (Plfs.' Ex. 4 at NALC 0634). For ease of reference, this rule shall be referred to as the "married at commencement" eligibility requirement.

17.    The trustees present at the April 19, 1985 meeting approved a motion amending the Annuity Fund plan by deleting the "married at death" eligibility requirement and replacing it with the "married at commencement" eligibility requirement, subject to the approval of the NALC Executive Council at its meeting scheduled for May 15-16, 1985.  Minutes of the NALC Annuity Trust Fund Meeting (Apr. 19, 1985) ¶¶ 7, 7.a., Ex. A (Plfs.' Ex. 7 ¶ 2, at NALC 0697); Handwritten notes of Jani K. Rachelson, Esq., Apr. 19, 1985 NALC Annuity Trust Fund Meeting (Plfs.' Ex. 4 at NALC 0634).

18.    No change was made to the amount of the survivor annuity which would be paid to an eligible spouse; it remained at 60% of the participant's annuity.

19.    At the next NALC Annuity Fund meeting, the Trustees reviewed and accepted the minutes from the April 19, 1985 meeting.

Minutes of the NALC Annuity Trust Fund Meeting (Dec. 5, 1985) ¶ 1 (Plfs.' Ex. 12 at NALC 0700, 0712).  See also Handwritten notes of Jani K. Rachelson, Esq., Dec. 4, 1985 (Plfs.' Ex. 12 at NALC 0641).

> ii.    *The NALC Executive Council Approves the Trustees' Change to the Annuity Fund Plan*

20.    NALC Executive Council approval was required for certain actions taken by the Trustees of the NALC Annuity Fund, including changes or amendments to the Annuity Fund plan.  Worsham Dep. 44:13 – 22; 45:6 – 12.

21.    All Executive Council members were present at the May 15-16, 1985 NALC Executive Council meeting, including Mr. Overby, who reported on recent developments in the National Child Search Program.  Minutes of the NALC Executive Council Meeting (May 15, 1985) at 5 (Plfs.' Ex. 10 at NALC 0679-80); Farris Dep. 15:12 – 18:8.  Sombrotto Dep. 54:7 – 19.

22.    At the May meeting, the Executive Council unanimously approved a written set of amendments to the Annuity Fund plan, among them the amendment that replaced the "married at death" eligibility requirement with the "married at commencement" eligibility requirement.  Minutes of the NALC Executive Council Meeting (May 15, 1985) at 5 (Plfs.' Ex. 10 at NALC 0679-80);  Sombrotto Dep. 54:7 – 13;  55; 22 – 25; Tr. Vol. 2, 112:9 – 14; 134:5 – 16; 151:19 – 152:4.

23.    The Annuity Fund's surviving spouse annuity benefit was amended by replacing the "married at death" eligibility requirement with the "married at

commencement" eligibility requirement, effective as of May 15, 1985.  Minutes of the NALC Annuity Trust Fund Meeting (Apr. 19, 1985) ¶¶ 7, 7.a., Ex. A (Plfs.' Ex. 7 at NALC 0694-95; 0697); Minutes of the NALC Executive Council Meeting (May 15, 1985) at 5 (Plfs.' Ex. 10 at NALC 00679-80; 0682); NALC Annuity Trust Fund Retirement Plan Description (Dec. 31, 1989), Art. I, § 1; Art. V, § 1(b) (Plfs.' Ex. 2).  Tr. Vol. 2, 152:9 – 15.

      **C.**    **Mr. Overby Knew About the Surviving Spouse Benefit "Married at Commencement" Eligibility Requirement, Prior to Retiring**

          *i.*    *NALC Had a Custom of Mailing and Delivering Plan Booklets to Participants*

24.    Mr. Overby possessed firsthand knowledge of the details of the "married at commencement" amendment because he attended and participated in the Executive Council meeting at which it was adopted.  Minutes of the NALC Executive Council Meeting (May 15, 1985) at 5 (Plfs.' Ex. 10 at NALC 0679-80); Farris Dep. 15:12 – 18:8.  Sombrotto Dep. 54:7 – 19.

25.    NALC regularly mailed Annuity Trust Fund plan description booklets to its participants.  Tr. Vol. 3, 24:15 – 18; 42:6 – 13; Letter from Karl F. Sennewald, Asst. Administrator, Annuity Fund, to Officers and Employees of NALC, et al., enclosing Annuity Fund plan booklet as amended through Dec. 31, 1989 (July 2, 1990) (Plfs.' Ex. 17 at NALC 0130).

26.    NALC also hand-delivered Annuity Trust Fund plan description booklets to its national officers who were working at the headquarters in Washington, D.C.  Tr. Vol. 3, 44:11 – 16; 57:24 – 58:22.

> ii.    *A Friend and Co-worker Reminds Mr. Overby About the New Surviving Spouse Benefit Eligibility Requirement*

27.    Brian Farris was serving as the National Business Agent for the NALC in Orange, California when he was elected to the position of Director of City Delivery in 1986, requiring that he transfer to the NALC headquarters in Washington, D.C.  Farris Dep. 10:20 – 11:17.

28.    By the late-1980s, Mr. Farris had known Mr. Overby for nearly ten years, in conjunction with their service in the NALC.  Farris Dep. 11:24 – 12:11.  Mr. Farris was also acquainted with Paulette Motayne, and even received Christmas cards from her and Mr. Overby.  Farris Dep. 13:1 – 20; 59:4 – 11.  He and Mr. Overby were political allies within the NALC.  Id.  They served on the Executive Council concurrently, and worked out of neighboring offices at the NALC headquarters.  Id.  13:21 – 14:15; 18:9 – 19.

29.    Some time after December 31, 1989 but prior to Mr. Overby's retirement, Mr. Farris went into Mr. Overby's office and brought the Annuity Fund's surviving spouse benefit "married at commencement" eligibility requirement to his attention.  Farris Dep. 19:1 – 21:22.  Expressing concern for Paulette, with whom Mr. Overby was still cohabitating, Mr. Farris advised that if

he was planning on marrying Paulette, he should pay attention to the surviving spouse eligibility requirement.  Id. 21:20 – 22.

30.    Mr. Overby then picked up his own NALC Annuity Trust Fund plan description booklet, and said that he would take care of Paulette.  Farris Dep. 21:24 – 22:12.

31.    In the fall of 1990, Mr. Overby retired from his position as Assistant Secretary-Treasurer of the NALC.  Tr. Vol. 1, 24:7 – 24:20.  He began drawing his annuity from the Annuity Fund in February, 1991.  Id. 73:21 – 23.  At the time of his retirement from the NALC, Mr. Overby had already retired from service with the United States Postal Service.  Id. 28:7 – 13.[1]

        iii.    *Mr. Overby Had Annuity Trust Fund Plan Description Booklets in His Possession at His Office*

32.    William H. Young was elected to replace Mr. Overby when he retired from his position as the NALC Assistant Secretary-Treasurer.  Tr. Vol. 3, 9:5 – 8.  Mr. Young relocated to Washington, D.C. and worked at NALC headquarters in the same office that Mr. Overby had been using, which included the same furniture and file drawers.  Id. 9:12 – 14; 43:23 – 44:8.

---

[1]        Although Mr. Overby was entitled to draw a pension from the Civil Service Retirement System, his second wife, Lucille, receives a percentage of those funds for the duration of Mr. Overby's life, pursuant to a property settlement in a separate divorce proceeding she initiated against Mr. Overby in California.  Tr. Vol. 1, 28:19 – 29:22.  Upon his death, Lucille will begin receiving the full amount of that pension.  Id.

33.     Upon moving into Mr. Overby's former office, Mr. Young learned that Mr. Overby kept impeccable files.  Tr. Vol. 3, 45:1 – 6.  Among the NALC-related documents that Mr. Young found in the file cabinet drawer located behind Mr. Overby's desk were three NALC Annuity Trust Fund plan description booklets.  Id. 43:23 – 44:8; 44:23 – 25.

34.     Already having his own copies of these booklets, Mr. Young discarded them.  Tr. Vol. 3, 45:7 – 8.

### D.     Mr. Overby Marries Paulette Motayne After Retiring from the NALC

35.     Eight years after separating from his wife Lucille and relocating to Washington, D.C., Mr. Overby filed for divorce in Virginia in January of 1990.  Tr. Vol. 1, 71:15 – 72:1.  His divorce complaint alleged that he and Lucille Overby had lived separate and apart since April of 1982.  Virginia Bill of Complaint (Defs.' Ex. 105A ¶ 6); Tr. Vol. 1, 71:15 – 72:21.  This divorce was granted in a final decree in August of 1990, before Mr. Overby retired and began to receive his annuity.  Tr. Vol. 1, 72:23 – 73:6.

36.     After his divorce there was no impediment to Mr. Overby marrying Paulette.  Tr. Vol. 1, 26:23 – 27:7.  Nonetheless, Mr. Overby and Paulette Motayne were not married until May of 1991, following his retirement from the NALC in

the fall of 1990, and the commencement of his annuity in February of 1991.  Tr.

Vol. 1, 85:17 – 18.  Certificate of Marriage (Defs.' Ex. 106).

## III.   DEFENDANTS' PROPOSED CONCLUSIONS OF LAW

### A.   Background

1.      Congress enacted the Employee Retirement Income Security Act

("ERISA") to ensure the proper administration of employee benefit plans,

including pension plans, both during the years of an employee's active service and

after retirement.  Boggs v. Boggs, 520 U.S. 833, 839 (1997).

2.      A retirement plan's decision to adhere to its plan documents and the

controlling law is reviewed under a deferential abuse of discretion standard.

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Moore v.

CapitalCare, Inc., 2006 U.S. App. LEXIS 22075, *11 (D.C. Cir. Aug. 29, 2006)

("If the administrator/fiduciary has discretion, the Firestone Court has described

the standard of review as 'abuse of discretion' and 'arbitrary and capricious.'  We

have described the standard as one of 'reasonableness'") (citations omitted)).[2]

---

[2]      Plaintiffs assert that, in Wagener v. SBC Pension Benefit Plan, 407 F.3d 395, 402 (D.C. Cir. 2005), the Court held that, if a plan or fiduciary takes an action against a participant or beneficiary that is inconsistent with the terms of the Plan, the plan or fiduciary's position is not given any deference.  Plfs.' Proposed Conclusions of Law ¶ 3.  This is a mischaracterization of Wagener.  The Court there expressly *refused* to adopt that argument, finding that the standard of review did not change the outcome.  Wagener, 407 F.3d at 402. Instead, the controlling rule in the District of Columbia Circuit is that the Plan's decision is reviewed under the deferential abuse of discretion standard.

3.     In 1984, Congress passed the Retirement Equity Act of 1984, 29 U.S.C. § 1001 ("REA"), which amended ERISA's qualified pre-retirement survivor annuity provisions to protect spouses who, under the former version of ERISA, 'may have been entitled to no survivor benefits under the plan even though the participant had accrued significant vested benefits before death.'" Lewis v. Atl. Research Corp., No. CA 98-0070-H, 1999 U.S. Dist. LEXIS 13569, *4 (W.D. Va. Aug. 30, 1999).

4.     Prior to the enactment of REA, Section 205(d) of ERISA permitted retirement plans to provide a qualified joint and survivor annuity to a married participant that was contingent upon the participant and spouse having been married for the 1-year period ending on the date of the participant's death.  This is the "married at death" eligibility requirement that the Annuity Fund had in place.

5.     REA amended Section 205 by changing the "married throughout the 1-year period ending on the date of the participant's death" rule to one allowing eligibility for a survivor annuity to be contingent upon being married "throughout the 1-year period ending on the earlier of the participant's annuity starting date or the date of the participant's death." See 29 U.S.C. § 1055(f)(1).

6.     In order to retain *any* rule requiring a minimum of 1-year of marriage, the Annuity Fund was required to provide that a surviving spouse annuity would not be payable unless the participant and spouse were married to each other for at

least one year on the earlier of either the commencement of the participant's annuity under the plan, or his/her death.

7.    The REA amendment further provided that if a participant married within a year of his annuity starting date, but that marriage occurred at least a year before the participant died, the participant and spouse would be treated as having been married throughout the 1-year period ending on the participant's annuity starting date, for purposes of the "1-year marriage period" (at-death or at-commencement) requirements.  29 U.S.C. § 1055(f)(2).

8.    The REA amendments to ERISA were intended to protect the spouse who was married to a plan participant at the time the participant began receiving benefits under the plan.  The Annuity Fund plan was properly advised by its counsel with respect to these changes required by REA.

9.    Plaintiffs bear the burden of proof of establishing that the Annuity Fund's "married at commencement" amendment had no legal effect, because they seek affirmative relief in this action.  Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 130 n.5 (3d Cir. 1998).

## B.  NALC'S 1985 "Married at Commencement" Eligibility Requirement Does Not Violate ERISA's Anti-Cutback Rule.

### i.  The "married at commencement" eligibility requirement did not reduce Plaintiffs' benefits because before and after the amendment the benefit inurred to Halline and Lucille Overby.

10.  The amount of the surviving spouse annuity remained the same as that provided prior to the "married at commencement" amendment. Thus, Plaintiffs' claim that the amendment violated the anti-cutback rule must be premised upon the change in the eligibility criteria for the surviving spouse.  However, such a claim as applied to Halline and Paulette Overby does not bear up under analysis.

11.  The amendment did not "reduce" Mr. Overby's right to a survivor's annuity benefit of 60% of his annuity, or "eliminate" an "optional form of benefit" for him.  Defs.' Facts ¶ 18.  Mr. Overby's surviving spouse was entitled to receive an annuity equivalent to 60% of his annuity before the amendment, and the very same benefit existed after the amendment.  The only change was the timing of the couple's marriage as it relates to eligibility to receive the surviving spouse benefit at all.  Defs.' Facts ¶¶ 17, 22.

12.  In 1985 when the new eligibility requirement became effective, Mr. Overby was married to Lucille.  Halline and Lucille Overby were completely unaffected by the change because of the fact that they were married, and thus satisfied both the "married at death" and "married at commencement" requirements.  Defs.' Facts ¶¶ 1, 9, 23, 35.

13.    *Every* ERISA anti-cutback case cited by Plaintiffs in their Proposed Conclusions of Law involved a finding of a violation of the anti-cutback rule *because there was an actual reduction in the **value** of the plan or an **elimination of a form** of benefit*, not because of a change in the required timing of a contingency that affected eligibility.

14.    In <u>Nichols v. Asbestos Workers Pension Plan Trustees</u>, 835 F.2d 811 (D.C. Cir. 1987), the proposed amendments were held to violate the anti-cutback rule because they would have repealed an increase in monthly benefits retroactively and mandated recalculation of pensioners' retirement payment at a lower level, cutting their monthly benefit by approximately one-third.  <u>Nichols</u>, 835 F.2d at 883.

15.    Similarly, in <u>Arakelian v. Nat'l W. Life Ins. Co.</u>, 724 F. Supp. 1033 (D.D.C. 1989), the rule imposed a fee on participants, thereby lowering the total amount of benefits.  In <u>Arakelian, unlike here,</u> there was an actual reduction in the amount of the benefit.

16.    In the same vein, in <u>Counts v. Kissack Water and Oil Serv., Inc.</u>, 986 F.2d 1322 (10th Cir. 1993), the amendment at issue eliminated an optional form of benefit (a lump-sum distribution) to which the participant was entitled.  <u>See also</u> <u>Kiefer v. Ceridian Corp.,</u> 976 F. Supp. 829 (D. Minn. 1997) (parties conceded that change in computation methodology resulted in reduction of accrued benefits);

Goodin v. Innovative Tech. Solutions, Inc., 489 F. Supp. 2d 1157 (D. Haw. 2007) (employer's decision, which eliminated all competition for the employees' stock and reduced its value, held to be a reduction in the participants' plan in violation of the anti-cutback rule); Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739, 742-44 (2004) (employer improperly ceased cash payments to participants who had already been receiving such payments); Production & Maint. Employees' Local 504, Laborers' Int'l Union v. Roadmaster Corp., 954 F.2d 1397, 1403 (7th Cir. 1992) (employer's elimination from its benefits calculation of prior pay periods that the participants had already worked held to violate the anti-cutback rule); Frommert v. Conkright, 433 F.3d 254, 268 (2d Cir. 2006) (employer made a change in its benefit plan—the creation of a "phantom account"—that had the effect of drastically reducing the benefit received by its participants).

17.    As shown above, the cases Plaintiffs cite in support of their anti-cutback claim are readily distinguishable because, unlike here, they deal with an actual reduction or elimination of accrued benefits.  In each of the cases, prior to the change or amendment, plaintiff's benefit was X, while after the change or amendment, the benefit was less than X.  This distinction is crucial because it demonstrates how reductions and eliminations fit squarely within the framework of ERISA's anti-cutback rule, whereas changes in the required timing of contingencies that may affect eligibility for a benefit do not.

18.    In this case, prior to the amendment, a surviving spouse was eligible for an annuity equal to 60% of the participant's annuity, and after the amendment the surviving spouse was eligible for an annuity equal to 60% of the participant's annuity.  Defs.' Facts ¶¶ 17, 18, 22, 23.  There was no reduction in accrued benefits and no violation of the anti-cutback provisions.

19.    A determination of whether the "married at commencement" requirement was a cut-back on accrued benefits to Halline and Paulette Overby cannot be made in a vacuum, without regard to the facts of this case.  The fact that Mr. Overby did not marry Paulette before he retired, as he easily could have, does not render the 1985 amendment violative of the anti-cutback rule.  Defs.' Facts ¶¶ 31, 36.

> ii.    *The Annuity Fund plan, both before and after the 1985 "married at commencement" amendment, met Plaintiffs' reasonable expectations because Halline Overby remained married to Lucille Overby.*

20.    "ERISA . . . seek[s] to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits. . . . [W]hen Congress enacted ERISA, it 'wanted to . . . mak[e] sure that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it.'"  <u>Lockheed Corp. v. Spink</u>, 517 U.S. 882, 887 (1996) (<u>quoting</u> <u>Nachman Corp. v. Pension Benefit Guar. Corp.</u>, 446 U.S. 359, 375 (1980)

(citations omitted)).  <u>See also</u> <u>Cent. Laborers' Pension Fund</u>, 541 U.S. at 743 ("There is no doubt about the centrality of ERISA's object of protecting employees' justified expectations of receiving the benefits their employers promise them."); <u>Hall v. AMTRAK</u>, Nos. 03-1764 (GK), 06-1539 (GK), 2008 U.S. Dist. LEXIS 46811, at *36-37 (D.D.C. June 18, 2008) ("The Anti-Cutback Rule is intended to prevent employers from 'pulling the rug out from under' plan participants by eliminating or reducing certain forms of benefits through a plan amendment.") (citing <u>Williams v. Cordis Corp.</u>, 30 F.3d 1429, 1431 (11th Cir. 1994)).

21.    At the time of the amendment, Plaintiffs' reasonable expectations about Mr. Overby's accrued benefits were met.  Prior to the 1985 changes, the only reasonable expectation that Mr. Overby could have had was that his wife, Lucille, was eligible for the survivor's annuity benefit under the "married at death" requirement.  Defs.' Facts ¶¶ 1, 14, 35.  Similarly, because they were still married at the time of the adoption of the "married at commencement" requirement, Mr. Overby's only reasonable expectation was that his wife Lucille was eligible for the survivor's annuity under that requirement.  Defs.' Facts ¶¶ 1, 22, 23, 35.

22.    Mr. Overby could have no reasonable expectation that Paulette would receive any survivor benefit at all unless and until they were married.  They were not married in May of 1985.  Defs.' Facts ¶ 37. Mr. Overby's independent decision

about whether to marry Paulette and when to do so simply cannot be characterized as NALC's "pulling the rug out from under" him.  <u>Williams</u>, 30 F.3d at 1431.

23.     Moreover, following the 1985 "married at commencement" amendment, neither Halline Overby nor Paulette Overby was "left empty-handed" because the accrued benefit remained available to Mr. Overby, as it related to his then-spouse, Lucille.  <u>Lockheed Corp.</u>, 517 U.S. at 887.  Mr. Overby's reasonable expectation was that Lucille Overby was entitled to the surviving spouse benefit under either rule.

24.     Mr. Overby's decision to re-marry after the commencement of his annuity impacted Paulette Overby's claim to the survivor's annuity benefit, a benefit to which she would have been entitled had Plaintiffs married within the eight-year window between the date upon which Mr. Overby could have legally divorced Lucille Overby and the commencement of his NALC annuity.  Defs.' Facts ¶¶ 10-12, 35, 36.

25.     Because Plaintiffs' reasonable expectations at the time of the 1985 amendment were met, NALC did not violate the anti-cutback rule.  <u>Cf. Cent. Laborers' Pension Fund</u>, 541 U.S. at 744 (prior to the amendment at issue, the plaintiff "had worked and accrued retirement benefits under a plan with terms allowing him to supplement retirement income by certain employment, and he was being reasonable if he relied on those terms in planning his retirement").

      *iii.*    *The IRS regulations, 26 C.F.R. § 1.411(d)-4, cannot be relied upon to interpret the validity of the "married at commencement" amendment as it relates to ERISA's anti-cutback rule because the regulation is inapplicable to Plans in existence before 1986.*

26.    The Internal Revenue Service ("IRS") regulation cited by Plaintiffs, 26 C.F.R. 1.411(d)-4, is not controlling in interpreting ERISA's anti-cutback rule in this case. One need look no further than the regulation itself in order to make this determination.

27.    Plaintiffs acknowledge that the IRS had not yet issued the regulatory scheme found in 26 C.F.R. § 1.411(d)-4 when the "married at commencement" amendment was adopted in 1985. Plfs.' Proposed Conclusions of Law ¶ 19. Nonetheless, Plaintiffs assert that the Court should rely on those regulations to interpret the anti-cutback law retroactively to 1985, citing Smiley v. Citibank (N.D.), N.A., 517 U.S. 735 (1996) and discussing Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739 (2004). Plfs.' Proposed Conclusions of Law ¶¶ 19, 23.

28.    This argument is incorrect. Section 1.411(d)-4 specifically sets forth its effective date at sub-part Q&A-9, which is no earlier than January 30, 1986, for any "existing plan" (i.e., a plan adopted prior to August 1, 1986). 26 C.F.R. §§ 1.411(d)-4 A-9(a), (c)(1)-(4).

29.    The Annuity Fund plan and the "married at commencement" amendment were in effect well before January 31, 1985 effective date of the

regulations.  Defs.' Facts ¶¶ 14, 23.  Therefore, the IRS regulations do not apply to the plan and amendment at issue here.  26 C.F.R. §§ 1.411(d)-4, A-9 (c)(2)-(4).

30.  Cent. Laborers' Pension Fund is distinguishable because the offending plan amendment in that case was adopted in 1998, well after any applicable effective date found in 26 C.F.R. § 1.411(d)-4, and, significantly, two years after the plaintiff had retired.  26 C.F.R. § 1.411(d)-4, Q&A-9; Cent. Laborers' Pension Fund, 541 U.S. at 742.

31.  Plaintiffs cite Smiley to support their argument that the IRS regulations, adopted in 1988, can be applied retroactively to the amendment adopted by the Trustees and the Executive Council in 1985.  A cursory review of Smiley establishes that it is not helpful to the analysis in this case.

32.  In Smiley the issue involved the Comptroller of Currency's *ex post* interpretation of a single word in a regulation: "interest."  See Smiley, 517 U.S. at 739-40. (discussing Comptroller regulation that interpreted dispositive issue, the meaning of the word "interest" under 12 U.S.C. § 85).  In contrast, the IRS regulations adopted to guide conduct after REA was passed plainly were intended to guide *prospective* conduct.  26 C.F.R. § 1.411(d)-4 (structuring extensive regulation in the form of "questions" and "answers").

33.  Regulations handed-down after the implementation of a retirement plan and the adoption of an amendment cannot guide the plan administrators at the

time they pass the amendment. Therefore, their decision in doing so should not be judged on the basis of such regulations, either.

      **C.**      **The Documentary Evidence Adduced at Trial Demonstrates That NALC's Amendment of the Annuity Fund Plan Was Properly Adopted Under ERISA.**

34.    In Count II, of their Complaint, Plaintiffs allege that the 1985 amendment was ineffective because, while the NALC Annuity Trust Fund Plan Rules and Regulations provide that the trustees can amend the Plan, subject to approval by the NALC Executive Counsel, "the NALC Annuity Trust Fund trustees and other members of the Executive Council who were present at those meetings, including Plaintiff Halline Overby, state that no amendment to the survivor rule was voted on during the meeting on April 19, 1985, or during the meeting on May 14-16, 1985." Compl. ¶¶ 41-43.

35.    While ERISA requires that all employee benefit plans be "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), the Supreme Court has established a *de minimus* standard for compliance with ERISA, requiring only that the amendments be adopted according to the procedure outlined in the plan and that they be in writing. See Curtiss-Wright v. Schoonejongen, 514 U.S. 73, 85 (1995).

36.    ERISA does not require that an amendment be expressly adopted in formal, complete, and written form. See, e.g., Huber v. Casablanca Indus., Inc.,

916 F.2d 85, 105 (3d Cir. 1990) (holding that amendments to plan were properly adopted where they were "adopted pursuant to resolutions of the Board of Trustees, and *written* in the minutes of the meetings" (emphasis in original)); Normann v. Amphenol Corp., 956 F. Supp. 158, 163 (N.D.N.Y. 1997) ("rejecting argument that ERISA requires that the changes be adopted in formal, complete, and written form" and holding that an amendment that was adopted by resolution on one date, and ratified by the pension committee on a later date, was valid).

37.    More recently, the court in Williams v. Ironworkers Local No. 16 Pension Fund, Civ. No. AMD 04-1417, 2007 U.S. Dist. LEXIS 33113 (D. Md. May 3, 2007) addressed a similar situation.  The plaintiff there alleged that an amendment to a plan, adopted many years before the litigation, was ineffective.  Id. at *9.  The court disagreed, holding that the trustees' adoption of the change in the vesting schedule at a meeting in January, 1976, as reflected in the next month's minutes, was sufficient.  "[T]he record reflects that the action of the Board of Trustees at the January 1976 meeting fully complied with the amendment procedures spelled out in the Fund documents.  Moreover, the change was appropriately recorded in the official minutes of the Board."  Id. at *10.

38.    Here, as in Williams, documentary evidence in the record establishes that both the NALC Board of Trustees and Executive Council approved the "married at commencement" amendment.  Defs.' Facts ¶¶ 17, 22.

39.     Moreover, numerous courts have held that an amendment can be ratified by subsequent acts, as long as the ratification does not retroactively reduce the intervening rights of third parties, such as plan participants.     See, e.g., Depenbrock v. CIGNA, 389 F.3d 78, 83 (3d Cir. 2004) ("The doctrine of ratification provides that an improperly authorized amendment may be ratified *ex post* by subsequent acts.  Moreover, a validly accomplished ratification ordinarily must be given retroactive effect, rendering the ratified action valid as of the original decision date.") (citing Curtiss-Wright, 514 U.S. at 85)).

40.     Here, not only did NALC properly adopt the "married at commencement" amendment, but at least one of its governing bodies subsequently approved the minutes of the meeting in which it considered and adopted the amendment.  Defs.' Facts ¶ 19.

41.     The mere fact that neither party called two of NALC's outside attorneys as witnesses does not entitle Plaintiffs to any missing-witness inference.

**D.     Technical Violations of ERISA Do Not Give Rise to Substantive Remedies.**

42.     In Counts III and IV of the Complaint, Plaintiffs allege that NALC violated ERISA by not complying with its reporting and disclosure requirements. Specifically, in Count III, Plaintiffs allege that Defendants failed to disseminate the Summary of a Material Modification in a timely manner.  Compl. ¶¶ 44-46. Similarly, in Count IV, Plaintiffs allege that Defendants failed to disseminate the

Summary Plan Descriptions in a timely manner and that, when they were disseminated, they were not clear enough for participants to easily understand the provisions.  Compl. ¶¶ 47-55.

43.    Numerous courts have held that technical violations of ERISA's reporting and disclosure requirements do not give rise to a viable cause of action because these technical violations do not afford the plaintiff any substantive rights. Directly on point is <u>Lewandowski v. Occidental Chem. Corp.</u>, 986 F.2d 1006 (6th Cir. 1993), where the plaintiff, like Plaintiffs here, alleged that the plan failed to comply with ERISA's reporting and disclosure requirements, to her detriment. "(P)laintiff's argument is that but for defendant's failure to comply with ERISA reporting and disclosure mechanisms, Mr. Lewandowski would have elected a retirement benefit protective of his wife."  <u>Id.</u> at 1007-08.[3]  Because the decedent participant was not so informed, the plaintiff alleged, he died without electing a survivor annuity benefiting her.  <u>Id.</u>

44.    After carefully reviewing the statutory provisions in ERISA, including § 1132, which provides for remedies, and decisions from several courts, the <u>Lewandowski</u> court held that "nothing in . . . § 1132 as a whole suggests that ERISA would approve of an affirmative damage recovery based merely on a plan

---

[3]      Here Plaintiffs allege that, if they had been properly informed, they "would have known about the new rule and could have been married before Mr. Overby retired so that [Paulette Overby] would be eligible for the survivor annuity even from Defendants' perspective." Plfs.' Proposed Conclusions of Law ¶ 65.

administrator's failure to adhere to proper notification and disclosure procedures." Id. at 1008.  The Lewandowski court reasoned that "ERISA's remedial scheme presents a detailed, reasoned compromise between plan participants' need for adequate disclosure and the disincentives [that] expansive liability for nondisclosure might present to employers considering institution of a retirement plan."  Id. at 1009.  Because "[n]othing in § 1132 suggests that a plan beneficiary should receive a benefit award based on a plan administrator's failure to disclose required information," however, the Lewandowski court held that the plaintiff's "recovery expressly based on defendant's failure to follow ERISA procedures" must be denied.  Id. at 1009-10.

45.    Many other cases hold that a plaintiff cannot base a claim on a technical violation of ERISA's reporting and disclosure requirements.  See, e.g., Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1170 (3d Cir. 1990) ("we hold that defendants' reporting and disclosure violations are irrelevant in determining plaintiffs' entitlements to benefits under the terms of the 1985 plan" because Congress did not provide substantive damages for technical violations in ERISA); Sears v. Union Cent. Life Ins. Co., 222 Fed. Appx. 474, 478-79 (6th Cir. 2007) (holding that the district court was correct in concluding that "'violations of the procedural sections of ERISA do not give rise to claims for substantive damages'"

(numerous citations omitted));[4] <u>Monks v. Keystone Powdered Metal Co.</u>, 10 Fed. Appx. 273, 274 (6th Cir. 2001) (per curiam) (rejecting plaintiff's claim premised on plan's alleged violation of ERISA's notification requirements as not supported by ERISA); <u>Tarr v. State Mut. Life Assur. Co. of Am.</u>, 913 F. Supp. 40, 46 (D. Mass. 1996) ("a failure to comply with the reporting requirements under ERISA does not serve as a basis for substantive relief"); <u>Pancotti v. Boehringer Ingelheim Pharm., Inc.</u>, No. 3:06cv1674 (PCD), 2007 U.S. Dist. LEXIS 51464, at *15 (D. Conn. July 17, 2007) ("No substantive remedies are available for violations of ERISA's procedural requirements." (citations omitted)).

46.     This unbroken line of authority is not surprising: "[t]he six carefully integrated civil enforcement provisions found in § 502(a) of the [ERISA] statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.  This assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'"  <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 146 (1985) (emphasis in original).

---

[4]     According to Plaintiffs, "<u>Lewandowski</u>'s weakness as precedent is revealed by the fact that the Sixth Circuit has never cited it."  Plfs.' Proposed Conclusions of Law ¶ 58.  This assertion is simply wrong.  In holding that procedural violations of ERISA do not give rise to viable claims, the <u>Sears</u> court relied upon <u>Lewandowski</u> and numerous other cases adopting <u>Lewandowski</u>'s reasoning.  <u>Sears</u>, 222 Fed. Appx. at 479.

E.     **The Evidence of NALC's Custom of Mailing and Delivering Plan Booklets Establishes That There was Sufficient Notification.**

47.     Mr. Overby was present at the May 1985 Executive Council meeting, meaning he had actual notice of the amendment from its inception.

48.     Furthermore, ERISA's Section 1024(b)(1) sets out the requirements for how plan administrators must notify participants of material changes in the Plan.    The Secretary of Labor has promulgated regulations interpreting the disclosure requirements of § 1024(b)(1): "the plan administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants, beneficiaries and other specified individuals."    29 C.F.R. § 2520.104b-1(b)(1). The regulations indicate that distribution through first-class mail fulfills the disclosure obligation. Id. ("Material distributed through the mail may be sent by first, second, or third-class mail.").

49.     While the burden to show that notice was afforded rests with the plan administrator, that burden is met when the plan administrator has a regular practice of providing notice. Id.; see also Williams, 2007 U.S. Dist. LEXIS 33113, at *12 (D. Md. May 3, 2007) (holding that evidence showing defendants had a customary habit of providing plan documents to participants was sufficient to discharge burden).

50.     When that is the case, it is the plaintiff who bears the burden of showing that the measures employed by the defendants were insufficient to provide

him with notice.  Custer v. Murphy Oil USA, Inc., 503 F.3d 415, 421 (5th Cir. 2007) ("the plaintiff ultimately bears the burden of demonstrating that [Murphy Oil USA, Inc.] failed to 'use measures reasonably calculated to ensure actual receipt' of the notice").

51.    Here, the evidence shows that NALC both mailed Annuity Trust Fund plan description booklets to participants and hand-delivered them to NALC officers.  Defs.' Facts ¶¶ 25, 26. Plaintiffs have certainly not proven, by a preponderance of the evidence, that the mailing and hand delivery did not occur.

52.    Moreover, the evidence also establishes that Mr. Overby had plan description booklets in his possession at his office.  Defs.' Facts ¶¶ 32, 33.  Indeed, he even handled one in front of his friend and co-worker, Brian Farris, while Mr. Farris reminded him of the "married at commencement" eligibility requirement. Id. ¶¶ 27-30.

53.    Thus, NALC has demonstrated not only its customary habit of delivering notice of plan amendments, but also that Mr. Overby himself received that notice.

54.    There is no requirement under ERISA that the defendants actually produce records to show compliance with the notice provision.  The two cases cited by Plaintiffs that appear to hold otherwise are inapposite, arising under Consolidated Omnibus Budget Reconciliation Act ("COBRA") standards rather

than ERISA.  See Plfs.' Proposed Conclusions of Law ¶ 43 (citing Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723, 726 n.1 (8th Cir. 1995) ("Fowler Trucking did not meet its burden of proving that it gave Stanton the *second COBRA notice*" (emphasis added)); Martin v. Marriott Corp., No. 91-2289, 1992 U.S. Dist. LEXIS 4713, *1 (D.D.C. Apr. 10, 1992) (plaintiffs alleged that Marriott failed "to notify them of their rights to health care continuation coverage *in accordance with COBRA*" (emphasis added))).

**F.**    **Plaintiffs Are Estopped From Claiming That Procedural Deficiencies Render the Adoption of the "Married at Commencement" Requirement Ineffective Because Mr. Overby Was a Voting Member of the Governing Body That Adopted It.**

55.    The documentary evidence establishes that the adoption of the "married at commencement" eligibility requirement was procedurally sound. Defs.' Facts ¶¶ 15-22.  As NALC's Assistant Secretary-Treasurer and a member of its Executive Council at the time of the amendment's adoption, Mr. Overby cannot now be heard to complain that the adoption of the rule was ineffective.  Plfs.' Proposed Conclusions of Law ¶¶ 32-39.  Estoppel may arise from express consent or acquiescence.  Webb v. Gaskins, 121 S.E.2d 564, 571 (N.C. 1961) (citing, inter alia, Lewis v. Wilson, 151 U.S. 551 (1894)) (co-owners of corporation estopped from arguing that sale of corporation's assets should be vacated where co-owners were well-informed of corporation's financial affairs upon consenting to sale).

56.     Here, the evidence establishes that Mr. Overby was present (he, in fact, gave a presentation) at the May 1985 Executive Council meeting at which the "married at commencement" rule was adopted.  Defs.' Facts ¶ 21.  The documents further demonstrate that the Executive Council *unanimously* approved the amendment, meaning that Mr. Overby voted affirmatively.  Id. ¶ 22.

57.     Therefore, during the meeting Mr. Overby was apprised of the same facts and circumstances surrounding the change as any other Executive Council member, and he expressed his consent to that change.  Furthermore, Mr. Overby was a former Trustee of the Annuity Fund, thereby allowing him to become familiar with the Annuity Fund provisions.  Mr. Overby cannot be permitted to assert that the adoption was invalid, for want of proper procedure, when it suits him in litigation twenty-three years after the fact.

58.     Moreover, as an Executive Council member who was present at the meeting, Mr. Overby was in a unique position to object to any procedural deficiencies in the adoption of the "married at commencement" eligibility requirement.  The May 1985 meeting minutes reflect no objection by Mr. Overby; neither does any testimony in the record suggest there was such an objection.

59.     The meeting minutes establish that Mr. Overby affirmatively consented to the change.  Defs.' Facts ¶ 22.

G.    **NALC Committed No Breach of Fiduciary Duty in Disclosing the "Married at Commencement" Requirement Because NALC Distributed Plan Descriptions That Mr. Overby Received.**

60.    Defendants are entitled to judgment on Plaintiffs' breach of fiduciary duty claim because, quite simply, no breach occurred. The "married at commencement" amendment to the Annuity Fund plan was adopted by the Trustees and then by the Executive Council by a vote in which Mr. Overby participated. Notice of the amendment was properly distributed to Mr. Overby, and the amendment was readily understandable. The record is replete with evidence supporting those conclusions.

61.    Plaintiffs' Complaint alleges that a failure by the defendants to disclose the change in the surviving spouse benefit eligibility requirement constitutes a breach of its fiduciary duty under ERISA. Compl. ¶¶ 56-57. Without amending their complaint or even seeking leave to do so, Plaintiffs advance a new theory in their post-trial filings, specifically, that the defendants breached a fiduciary duty by (a) failing to ensure that the amendment could be understood, and (b) failing to investigate, at the Overbys' behest, what transpired at the May 1985 Executive Council meeting. Plfs.' Proposed Conclusions of Law ¶¶ 61, 64; Tr. Vol. 1, 48:22 – 51:1.

62.    The idea that it was a breach of fiduciary duty by one or more of the defendants to fail to properly investigate the Overby's claims, presumably in 2003,

is not pled in the Complaint and was never raised until Plaintiffs grasped for it while attempting to fend off an evidentiary objection at trial. Tr. Vol. 1, 48:22 – 51:1.

63.     It is undisputed that Mr. Overby was one of the elected NALC officials responsible for adopting the "married at commencement" amendment at the May 1985 Executive Council meeting. Defs.' Facts ¶¶ 21, 22. Given that fact, Mr. Overby essentially advances the remarkable claim that he is entitled to relief because he could not understand an amendment that he voted to adopt and about which he did not complain until eighteen years later.

64.     Furthermore, laches bars any such claim, particularly where Mr. Overby had it peculiarly within his own control to avoid the issue of Paulette's eligibility to receive a survivor's annuity. See, e.g., Preston v. Am. Fed'n of Television & Radio Artists Health Fund, No. 90 Civ. 7094 (RJW), 2002 U.S. Dist. LEXIS 8826, at *11-13 (S.D.N.Y. May 16, 2002), aff'd, 2003 U.S. App. LEXIS 7222 (2d Cir. Apr. 16, 2003) (holding ERISA breach of fiduciary duty claims barred as a matter of law where claimants were charged with knowledge of their decedents' claims for life insurance and where their delay contributed to fund's inability to gather documentation for its defense). The law aids the vigilant, not those who sleep. Kazazain v. Bartlett & Bartlett LLP, No. 03 Civ. 7699 (LAP), 2007 U.S. Dist. LEXIS 94243, at *8 (S.D.N.Y. Dec. 19, 2007).

65.    NALC distributed Annuity Trust Fund plan description booklets to its participants and officers, including Mr. Overby, prior to his retirement.  Defs.' Facts ¶¶ 29, 30, 32, 33.  Mr. Overby also had a copy of the booklet in his office. Id. ¶¶ 30, 33.  Therefore, there is substantial evidence that NALC distributed plan booklets, and that Mr. Overby received them.

66.    As for Plaintiffs' allegation that the "married at commencement" amendment was not provided to participants in a way that could be easily understood, no witness, other than Mr. Overby, has testified that he does not or did not understand the amendment as it affects the surviving spouse benefit under the plan.  Simply because Mr. Overby incorrectly read a self-serving interpretation into the language of the amendment does not mean that the requirement itself was incomprehensible.  See Tr. Vol. 3, 48:1 – 50:5; Pfls.' Exs. 26, 31.

67.    The court should not consider Plaintiffs' unpled allegation that it was a breach of fiduciary duty for NALC to fail to investigate what occurred at the 1985 meetings when the Overbys raised a question in 2003 about Paulette's eligibility to receive the survivor's annuity.

68.    In any event, the claim, if permitted, is not cognizable.  A fiduciary's mishandling of an individual participant's benefit claim does not violate any of the fiduciary duties enumerated or contemplated under ERISA because such conduct does not jeopardize the entire plan.  Amalgamated Clothing & Textile Workers

Union v. Murdock, 861 F.2d 1406, 1414 (9th Cir. 1988) (citing Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985)).


## IV.    CONCLUSION

The "married at commencement" amendment to the Annuity Fund plan was not a cut-back in violation of ERISA for Halline and Paulette Overby because at the time of the amendment Lucille Overby was the only spouse entitled to any survivor annuity, regardless of the eligibility requirement in effect.    NALC Trustee and Executive Council meeting minutes establish the validity of the process by which the amendment was adopted, and confirm that Mr. Overby took part in the Executive Council process.    Accordingly, Plaintiffs' assertion that procedural deficiencies invalidate the amendment, deficiencies that Mr. Overby was in a position to remedy at the time he asserts they occurred, is meritless.

NALC regularly provided written notice of Annuity Fund plan changes to its participants, including Mr. Overby, who received that notice and discussed the implications of the "married at commencement" amendment detailed therein prior to his retirement.    ERISA provides no damage remedy to claimants for technical violations of these notice requirements, in any event.

The notice provided to Mr. Overby demonstrates that NALC did not breach a fiduciary duty to the Overbys or to the Annuity Fund.

WHEREFORE, for the foregoing reasons, Defendants the National Association of Letter Carriers, National Association of Letter Carriers Annuity Trust Fund, Board of Trustees of the National Association of Letter Carriers Annuity Trust Fund, and William H. Young are entitled to judgment on all counts pled in Plaintiff's Complaint and all claims raised by Plaintiffs.


Dated: August 29, 2008                    Respectfully submitted,


                                          _____/s/_____

                                          John C. Hayes, Jr. (DCB No. 183582)
                                          Kenneth J. Nichols (DCB No. 486720)
                                          NIXON PEABODY LLP
                                          401 9th Street, NW, Suite 900
                                          Washington, D.C. 20004-2128
                                          (202) 585-8000 (telephone)
                                          (202) 585-8080 (facsimile)

                                          jhayes@nixonpeabody.com
                                          knichols@nixonpeabody.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of August, 2008, I caused a true and correct copy of the foregoing Defendants' Proposed Findings of Fact and Conclusions of Law to be filed with the Court's Electronic Case Filing System, which will send copies to the following counsel of record:

>
> Stephen R. Bruce, Esq.
> Allison C. Pienta, Esq.
> STEPHEN R. BRUCE LAW OFFICES
> 805 15th Street, NW
> Suite 210
> Washington, D.C. 20005

>
> _____/s/_____
> Kenneth J. Nichols

11122799.11